# UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS

## HOUSTON DIVISION

ROBERT W. VAN KIRK,
*Plaintiff,*

Case No. 4:26-cv-02517

Honorable George C. Hanks Jr.

v.

OFFICER M. HERNANDEZ, et al.,
*Defendants.*

. United States Courts
Southern District of Texas
FILED

APR 0 8 2026

Nathan Ochsner, Clerk of Court

## PLAINTIFF'S OPPOSED MOTION FOR PRESERVATION ORDER

Plaintiff Robert W. Van Kirk, proceeding pro se, respectfully moves this Court for an Order directing Defendants City of Houston and Harris County Hospital District d/b/a Harris Health System ("Harris Health") to preserve certain categories of electronic evidence relevant to this action pending the completion of discovery. The evidence in question is held exclusively by Defendants and, absent a court order, faces varying degrees of risk under standard institutional data-retention policies.

## I. INTRODUCTION

This civil rights action turns on the contents of digital records held exclusively by Defendants — body-worn camera footage, electronic health record audit logs, dispatch records, access logs, and security video. Plaintiff does not ask this Court to order any extraordinary relief. He asks only that Defendants be directed to preserve these records in their current form while this case proceeds through its ordinary course.

**Jurisdictional note:** Plaintiff was not arrested for, charged with, or convicted of any crime arising from the August 26, 2024 encounter. No criminal proceedings of any kind are pending against Plaintiff. Plaintiff is the victim and reporting party of the underlying cybercrimes investigation (Case No. 1198816-24). Neither *Heck v. Humphrey*, 512 U.S. 477 (1994), nor the *Younger* abstention doctrine applies to this action.

Plaintiff acknowledges that certain categories of evidence face greater retention risk than others. HPD body-worn camera footage is subject to mandatory ten-year retention under Texas Occupational Code § 1701.661(b), projecting a statutory retention date of August 26, 2034 for the August 2024 encounter; that footage is not at imminent risk of deletion. However, hospital security-camera footage is typically overwritten after 30 to 90 days, meaning footage from Plaintiff's August 26–27, 2024 admission has almost certainly been overwritten absent affirmative preservation steps. Badge and door-access logs are typically purged on rolling schedules measured in months. Detailed EHR audit-trail data may be compressed or aggregated into less granular formats outside ordinary clinical retention windows. These latter categories are at or past their expected routine retention windows.

Plaintiff has been on the record with both Defendants regarding these records for over six months. On August 24, 2025, Plaintiff filed TPIA requests with HPD seeking body-worn camera footage (P121428-082425) and CAD/dispatch records (P121427-082425). On September 3, 2025, Plaintiff served a written Preservation Rider on Harris Health's Privacy and Compliance Office expressly requesting preservation of EHR audit logs, security-camera footage, badge/door access logs, and detention paperwork. Neither Defendant has confirmed that the requested records are being preserved. This Motion asks the Court to formalize what both parties should already be doing: maintaining a litigation hold on the relevant evidence.

## II. FACTUAL BACKGROUND

### A. HPD Evidence

On August 26, 2024, HPD Officer M. Hernandez initiated an Emergency Detention Order ("EDO") against Plaintiff during an encounter at or near the Sonic Drive-In located at 7470 Bellfort Street in Houston. The encounter was recorded on Officer Hernandez's body-worn camera. Associated Computer-Aided Dispatch ("CAD") and 911/dispatcher records document which units were dispatched and what information they received.

Plaintiff filed three related TPIA requests on August 24, 2025: (a) P121428-082425, seeking BWC footage; (b) P121427-082425, seeking CAD/dispatch records; and (c) R259343-082425, seeking 911/CAD/radio data from the Houston Emergency Center. HPD denied the CAD and 911 requests within three days under Texas Government Code § 552.108 but has issued no response at all to the BWC request — no production, no denial, no cost estimate — for over six months. On September 8, 2025, Plaintiff filed a fourth request (P122802-090825) seeking confirmation of whether HPD issued 18 U.S.C. § 2703(f) carrier preservation letters in the underlying cybercrimes case. HPD has not responded to that request either.

Additionally, Plaintiff surrendered his mother's personal cellular telephone to HPD as evidence in the related cybercrimes investigation (Case No. 1198816-24). HPD has since emailed Plaintiff to arrange the return of the phone. This creates a preservation concern: the phone and any forensic imaging, extraction data, or chain-of-custody documentation HPD generated during its possession are material evidence in this action, as the device independently corroborates the crime reports that

the EDO recharacterized as delusional beliefs. A preservation order will ensure that the complete forensic record is maintained regardless of whether the physical device is returned.

### B. Harris Health Evidence

Plaintiff was involuntarily detained at Ben Taub Hospital's Psychiatric Emergency Center from August 26 to September 6, 2024. The key events during this detention — including the circumstances of admission, the use of a forced chemical restraint, and clinical decisions regarding Plaintiff's reports — are captured in Harris Health's electronic health record ("EHR") system. These events would also have been captured on unit security cameras and badge/door access logs.

On September 3, 2025, Plaintiff submitted a supplemental records request to Harris Health and simultaneously served a written Preservation Rider on Harris Health's Privacy and Compliance Office, expressly requesting preservation of EHR data and metadata (including audit logs), security-camera footage, and badge and door access logs. On September 15, 2025, Harris Health's Privacy Officer denied the Accounting of Disclosures and refused to produce the EHR audit log. The response did not address the Preservation Rider, did not state whether the requested data was being preserved, and did not confirm whether those records continued to exist. Harris Health has never confirmed preservation of any of the categories identified in the Preservation Rider.

### III. LEGAL STANDARD

A party's duty to preserve evidence arises when litigation is pending or reasonably anticipated and the party knows or should know that the evidence may be relevant to the pending or anticipated litigation. Once that duty attaches, the party must

suspend routine destruction policies and implement a litigation hold to ensure that potentially relevant material is preserved. *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 218 (S.D.N.Y. 2003). Courts have inherent authority to issue preservation orders to prevent spoliation and protect the integrity of the judicial process. *Ashton v. Knight Transp., Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011). Furthermore, because the evidence sought consists almost entirely of Electronically Stored Information (ESI), Defendants are under a strict, affirmative duty to take reasonable steps to preserve this data under Federal Rule of Civil Procedure 37(e).

Here, the duty to preserve has plainly attached. Both Defendants have had formal written notice for over six months that Plaintiff seeks these specific categories of records in connection with anticipated and now-pending litigation. The question is not whether the duty exists, but whether a court order is necessary to ensure compliance. Plaintiff submits that it is, given the absence of any confirmation from either Defendant that a litigation hold has been implemented.

## IV. ARGUMENT

This Motion asks the Court for a routine preservation order — the same relief that courts in this District grant regularly at the outset of civil rights cases to ensure that evidence is available when discovery opens. Plaintiff's request is warranted for three reasons.

**A. The evidence is narrowly defined and directly relevant.** Plaintiff seeks preservation of a small, well-defined set of records arising from a single encounter (August 26, 2024) and a single hospital admission (August 26 – September 6, 2024). Each category of evidence goes directly to the core claims in this action:

1. HPD body-worn camera and in-car video for the encounter — relevant to the qualified-immunity and *Franks* analysis, specifically demonstrating intentional omissions that taint the magistrate's deliberations and pierce the independent-intermediary doctrine (*Cuadra v. Houston ISD*, 626 F.3d 808 (5th Cir. 2010); *Poullard v. Jones*, 596 F. Supp. 3d 729 (5th Cir. 2022));

2. CAD/dispatch records for that incident — relevant to establishing what information the officers had before and during the encounter, anchoring *Franks* and bystander liability for reckless disregard of the truth (*Walker v. Stroman*, 33 F.4th 202 (5th Cir. 2022); *Hughes v. Garcia*, 100 F.4th 611 (5th Cir. 2024));

3. HEC telephony records, including 911 call recordings and caller-ID metadata — relevant to corroborating how the encounter was initiated and whether officials acted as the "driving force" behind false reports, exposing non-signing officials to *Franks* liability (*Guerra v. Castillo*, 82 F.4th 278 (5th Cir. 2023); *Melton v. Phillips*, 875 F.3d 256 (5th Cir. 2017) (en banc));

4. The EHR audit log for Plaintiff's admission — relevant to tracking the retrospective documentation blitz, proving who accessed and modified clinical records to manufacture probable cause where none existed;

5. The Accounting of Disclosures — relevant to what entities received Plaintiff's records and under what authority;

6. Security-camera footage from the Psychiatric Emergency Center, if preserved — relevant to Plaintiff's demeanor and the circumstances of the forced chemical restraint, addressing deliberate indifference and reasonable accommodation (*Balle v. Nueces County*, 952 F.3d 552 (5th Cir. 2020); *Hainze v. Richards*, 207 F.3d 795 (5th Cir. 2000));

**7.** Badge and door-access logs — relevant to who entered the unit and when during the events at issue;

**8.** The Probate Court Emergency Detention Order metadata and transmission logs — relevant to the authenticity, timing, and chain of custody concerning the document's post-hoc insertion into Plaintiff's medical record, further demonstrating the suppression of exculpatory evidence (*Rich v. Palko*, 920 F.3d 288 (5th Cir. 2019)); and

**9.** All physical evidence and forensic records currently (or formerly) in HPD's custody in connection with Case No. 1198816-24 — relevant to corroborating the crime reports underlying the encounter and proving the suppression of the active HPD forensic investigation by the defendants.

**B. Neither Defendant has confirmed that a litigation hold is in place.** Despite over six months of formal written notice — TPIA requests to HPD and a Preservation Rider to Harris Health — neither Defendant has produced the requested records or confirmed that they are being preserved. HPD has defaulted entirely on two TPIA requests while selectively responding to others. Plaintiff's August 24, 2025 TPIA request for BWC footage (P121428-082425) has been pending for over seven months with a portal status of "Assigned" and no response of any kind — not even a denial (Verified Compl. Ex. 6). Plaintiff's September 8, 2025 TPIA request (P122802-090825) specifically asked HPD to confirm whether it transmitted any § 2703(f) preservation notices to third-party providers for Case No. 1198816-24. That request has been pending for over six months with a portal status of "Waiting on Division" and no response (Verified Compl. Ex. 7). Harris Health denied the audit log and Accounting of Disclosures requests and did not address the Preservation Rider at all. The absence of

any confirmation of preservation, combined with the fact that several categories of evidence (badge/door logs, granular EHR audit entries, and security footage) are at or past their expected retention windows, warrants a court order formalizing the obligation.

**C. The burden of preservation is minimal.** HPD and Harris Health are institutional defendants with established records-management systems. Plaintiff does not ask that they create new records or undertake expensive collection efforts. He asks only that they identify the categories of records described below — which they have already been asked to locate for public-records and patient-records purposes — and suspend any routine deletion or compression pending the completion of discovery. This is the standard litigation-hold obligation that attaches to every litigant in every case; Plaintiff simply asks the Court to formalize it.

**D. Confirmation of preservation status for potentially overwritten evidence.** Plaintiff served a Preservation Rider on Harris Health on September 3, 2025, expressly requesting preservation of security-camera footage from the Psychiatric Emergency Center. Harris Health has never confirmed whether that footage was preserved. Given that standard hospital security footage is typically overwritten after 30 to 90 days, Plaintiff respectfully requests that the Court direct Harris Health to confirm, on the record, the current status of that footage.

Plaintiff acknowledges that the September 2025 Preservation Rider was sent outside the standard 30-90-day CCTV overwrite window. However, the August 27, 2024 forced physical and chemical restraint of Plaintiff triggered mandatory internal incident reporting and regulatory compliance obligations under CMS Conditions of

Participation (42 C.F.R. § 482.13). Harris Health was therefore under an independent institutional obligation to sequester and preserve footage of the restraint event contemporaneously, regardless of when the Preservation Rider was received.

If the footage no longer exists, Harris Health should be directed to confirm in writing to Plaintiff and the Court whether the footage was overwritten in the ordinary course of business, the approximate date of its destruction, and whether it was ever sequestered pursuant to internal restraint-reporting policies. This will establish the factual record necessary to evaluate any future spoliation issues.

## V. REQUESTED RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an Order directing Defendants to preserve the following categories of evidence—including, but not limited to, the specific items listed below—pending further order of the Court:

**A. To be preserved by the City of Houston / HPD:**

1. All body-worn camera and in-car/dash video, including all associated metadata, recorded by any HPD officer who responded to, was dispatched to, or was present at or near 7470 Bellfort Street, Houston, Texas, between 12:00 PM and 11:59 PM CDT on August 26, 2024, that concern or involve Plaintiff, the reports of crimes made by Plaintiff, or the seizure and detention of Plaintiff, including but not limited to all footage responsive to TPIA Request P121428-082425 and footage from Officer M. Hernandez (Badge 8324).

2. All Computer-Aided Dispatch ("CAD") records, call-taker notes, dispatcher remarks, unit assignment and status logs, radio communications recordings, and related metadata for any call for service, incident, or officer activity at or near 7470

Bellfort Street, Houston, Texas, between 12:00 PM and 11:59 PM CDT on August 26, 2024, that concern or involve Plaintiff, the reports of crimes made by Plaintiff, or the seizure and detention of Plaintiff.

3. All Houston Emergency Center ("HEC") telephony records, including 911 call recordings, caller-ID metadata (ANI/ALI), call routing logs, Phase II E911 location data, and all contractor-held location data and metadata (e.g., RapidSOS, NGS911 transcripts/logs), and any records reflecting inbound or outbound calls associated with the Plaintiff's telephone number or the incident location on August 26, 2024. HPD denied TPIA request R259343-082425 for these records under Texas Government Code § 552.108, asserting that they are part of an active, ongoing criminal investigation. Records claimed as part of an active investigation must be preserved.

4. All HPD Records Management System ("RMS") entries, incident and offense reports, supplements, notes, and all other related records, metadata, and documentation referencing Plaintiff, HPD Incident No. 121581524, and HPD Cybercrimes Case No. 1198816-24.

5. All physical evidence currently or formerly in HPD's possession in connection with Case No. 1198816-24 ("Tampering w/ Electronic"), including but not limited to all electronic devices, cellular telephones, computers, and storage media surrendered by Plaintiff or his family members to the HPD Cybercrimes Division, together with any and all forensic images, analysis reports, extraction data, chain-of-custody documentation, and property-room records generated during HPD's possession. HPD shall retain possession of any and all such physical devices and shall not return, alter, or destroy any such device or forensic record without further order of this Court.

6. All internal and inter-agency communications (including emails, text messages, CAD instant messages, and Microsoft Teams chats) between HPD Officer M. Hernandez (or any HPD personnel), the HPD Mental Health Division ("MHMD") back-office, and personnel at Harris Health System regarding the drafting, transmission, correction, or post-hoc modification of the Application for Emergency Detention Order and the associated Probate Court Order.

7. All copies of 18 U.S.C. § 2703(f) preservation requests, search warrants, subpoenas, or orders for disclosure of stored wire or electronic communications sent by HPD to third-party service providers (including but not limited to Google, T-Mobile, Verizon, Microsoft, and Teamviewer) in connection with HPD Cybercrimes Case No. 1198816-24, together with all data, responses, and confirmation of receipt received from such providers.

**B. To be preserved by Harris Health:**

1. The complete Electronic Health Record ("EHR") and all related administrative, clinical, and billing records for Plaintiff's admission at Ben Taub Hospital and related transfer to Houston Behavioral Healthcare Hospital from approximately August 26, 2024 to September 6, 2024, including but not limited to all physician orders, nursing notes, restraint and seclusion records, medication-administration records, and Probate Court documentation.

2. The complete, raw EHR access and audit log (audit trail) for Plaintiff's record for the period August 26, 2024 through at least December 31, 2025, capturing all access, view, create, modify, print, export, and disclosure events with associated user IDs, timestamps, and terminal identifiers.

**3.** A complete Accounting of Disclosures for Plaintiff's protected health information covering the same period, including all disclosures to the Harris County Probate Court, Precinct 1 Constable, HPD, HBHH, and any other law-enforcement or judicial entities.

**4.** All security-camera video footage from the Ben Taub Psychiatric Emergency Center between 19:00 on August 26, 2024 and 08:00 on August 27, 2024, if such footage was preserved in response to Plaintiff's September 3, 2025 Preservation Rider, pursuant to internal restraint-reporting policies under 42 C.F.R. § 482.13, or otherwise remains in Defendant's possession. If such footage no longer exists, Harris Health shall confirm in writing to Plaintiff and the Court (i) whether the footage was overwritten in the ordinary course of business, (ii) the approximate date of its destruction, and (iii) whether it was ever sequestered pursuant to internal restraint-reporting policies.

**5.** All electronic badge-reader and door-access logs for the Ben Taub Psychiatric Emergency Center covering the same timeframe identified in paragraph B. 4.

**6.** All internal communications, external emails to or from HPD personnel, upload logs, scanning metadata, document-version histories, and EHR audit trails specifically concerning the receipt, processing, scanning, and insertion of the Probate Court Emergency Detention Order related to Plaintiff's August 26, 2024 admission.

**7.** All internal telephony records, call logs, switchboard metadata, and system logs from the Ben Taub Psychiatric Emergency Center for the period August 26 to September 6, 2024, reflecting all inbound and outbound call attempts initiated by or directed to Plaintiff, including any records of blocked, restricted, or intercepted calls.

**8.** All internal IT department logs, network activity logs, VPN access logs, and ticketing system entries (e.g., ServiceNow, Jira) specifically related to the "cleanup," scanning, or retroactive insertion of EDO-related physical documents into Plaintiff's Epic EHR on February 18, 2025.

### C. Protective Order

Plaintiff acknowledges that some of the material identified above may contain sensitive medical or law-enforcement information. Plaintiff proposes that all such materials be subject to a standard protective order limiting their use to this litigation and governing any filing under seal as required by local rules. Plaintiff is prepared to submit a proposed form of protective order for the Court's consideration.

## VI. CONCLUSION

Plaintiff does not seek to burden Defendants with broad discovery at this stage of the case. He seeks only a routine preservation order ensuring that a narrow set of digital records — tied to a single police encounter and a single hospital admission — are maintained in their current form while this case proceeds. Both Defendants have been on formal written notice of the need to preserve these records for over six months. This Motion asks the Court to formalize that obligation.

Respectfully submitted,

Dated: April 8, 2026

*Robert W. Van Kirk*

**ROBERT W. VAN KIRK**
*Plaintiff, Pro Se*
7366 Brace St., Houston, TX 77061
(832) 428-2882
robertwaynevankirk@gmail.com

## CERTIFICATE OF CONFERENCE

Pursuant to S.D. Tex. Local Rule 7.1(D) and Judge Hanks's Court Procedures Section 6(C)(2), I certify that I have made multiple good-faith attempts to confer with the institutional Defendants prior to seeking Court intervention. Specifically, I acknowledged to opposing counsel that they may still be formally assigning this matter, but emphasized that preservation of evidence is uniquely urgent because Harris Health had previously ignored a formal, written preservation demand served on September 3, 2025. My attempts to secure a stipulated preservation approach included: (1) Emails to both the City of Houston and Harris Health general counsel on March 30, 2026, attaching advance drafts of this motion; (2) Follow-up emails on April 3, 2026, providing further rationale regarding spoliation risks and holding open my availability to confer via phone or email through 5:00 PM on April 6, 2026; and (3) Written conferral with Defendant Officer M. Hernandez concurrent with service on April 8, 2026. Because Defendants have declined to respond, acknowledge their preservation duties, or agree to a stipulated order despite these accommodations, this motion is submitted to the Court as opposed.

Robert W. Van Kirk

**ROBERT W. VAN KIRK**

## CERTIFICATE OF SERVICE

I hereby certify that on April 8, 2026, a true and correct copy of the foregoing document was served on the following parties by the methods indicated:

• **Defendant City of Houston** — via U.S. first-class mail to the City of Houston Legal Department, 900 Bagby Street, 4th Floor, Houston, Texas 77002.

• **Defendant Harris County Hospital District d/b/a Harris Health System** — via U.S. first-class mail to the Harris Health System Legal Department, 4800 Fournace Place, Bellaire, Texas 77401.

• **Defendant Officer M. Hernandez (Badge No. 8324)** — via U.S. first-class mail addressed to the Houston Police Department Southeast Patrol Station, 8300 Mykawa Road, Houston, Texas 77048.

Because no Defendant has entered an appearance or designated counsel of record on the Court's CM/ECF system as of the date of this filing, CM/ECF electronic service is unavailable. The remaining individual Defendants (Officer John Doe, Valeria M. Contreras, M.D., and Jasmine Balbir Singh Aneja, R.N.) have not yet been served with the Original Complaint and Summons.

*Robert W. Van Kirk*
**ROBERT W. VAN KIRK**