# EXHIBIT 1

*Application for Emergency Detention (Harris Health EHR Version)*

**Prepared By:** Officer M. Hernandez (Badge #8324)

**Purported Date:** August 26, 2024

**EHR Insertion Date (Scanner Datestamp):** February 18, 2025

**Subject:** Robert Van Kirk



## 08/26/2024 - ED in Emergency Center BT (continued)

**Documents (continued)**

---

**Consent Form - Scan on 2/18/2025  7:37 AM: NOTIFICATION OF EMERGENCY DETENTION**

---

Scan (below)

Notification – Emergency Detention        NO. _____

Date: 08/26/2024    Time: 2003 hrs _____

VAN KIRK, ROBERT
MRN:                HAR:
DOB:        /1990 (34 yrs)   Sex: Male
Admit Date: (Not on file)

THE STATE OF TEXAS
FOR THE BEST INTEREST AND PROTECTION OF:
VAN KIRK, Robert  W/M███/1990 _____

### NOTIFICATION OF EMERGENCY DETENTION

Now comes M. HERNANDEZ _____, a peace officer with (name of agency) Houston _____

Police Department _____, of the State of Texas, and states as follows:

1. I have reason to believe and do believe that (name of person to be detained) VAN KIRK,ROBERT _____ evidences mental illness.

2. I have reason to believe and do believe that the above-named person evidences a substantial risk of serious harm to himself/herself or others based upon the following:
THE CONSUMER BELIEFS HE IS UNDER CYBER ATTACK, SOMEONE HAS TOLEN HIS IDENTITY, SOMEONE HAS HACKED HIS PHONE, CONSUMER HAS NOT SLEPT IN DAYS,

CONSUMER CALLED 911 AND BELIEFS THAT 911 CALL TAKER IS NOT REAL, CONSUMER BELIEFS HE IS BEING WIRED TAPPED FOR A CIVIL SITUATION. CONSUMER STATED THAT HE IS DIOGNOSED WITH

DEPRESSION, ANXIETY, AND ADHD AND DID NOT TAKE HIS MEDICATION TODAY.

3. I have reason to believe and do believe that the above risk of harm is imminent unless the above-named person is immediately restrained.

4. My beliefs are based upon the following recent behavior, overt acts, attempts, statements, or threats observed by me or reliably reported to me:
BASED ON THE CONSUMER'S STATEMENT, IT IS MY BELIEF THAT HE IS PARANOID DO TO HIS STATEMENTS AND SHOWING SIGNS OF MENTALL CAPACITY DETERIORATION.

**NO CHARGES**

5. The names, addresses, and relationship to the above-named person of those persons who reported or observed recent behavior, acts, attempts, statements, or threats of the above-named person are (if applicable):
None

For the above reasons, I present this notification to seek temporary admission to the (name of facility) Ben Taub Hospital _____ inpatient mental health facility or hospital facility for the detention of (name of person to be detained) VAN KIRK,ROBERT _____ on an emergency basis.

6. Was the person restrained in any way? Yes☑No☐

M. HERNANDEZ _____ BADGE NO. 8324 _____
PEACE OFFICER'S SIGNATURE

Address: 8300 MYKAWA RD _____    Zip Code: 77048 _____

Telephone: 8323941600 _____

A mental health facility or hospital emergency department may not require a peace officer to execute any form other than this form as a predicate to accepting for temporary admission a person detained under Section 573.001, Texas Health and Safety Code.

# EXHIBIT 2

*Application for Emergency Detention (Harris County Probate Court Version)*

**Source:** Harris County Probate Court No. 3 (Cause No. 360232)

**Officer:** M. Hernandez (Badge #8324)

**Date:** August 26, 2024

# 360232

Notification – Emergency Detention        NO. _____

Date: 08/26/2024     Time: 2003 hrs _____

**THE STATE OF TEXAS**
**FOR THE BEST INTEREST AND PROTECTION OF:**
VAN KIRK, Robert  W/M_____1990 _____

VAN KIRK, ROBERT
MRN: ▮▮▮▮▮   HAR: ▮▮▮▮▮
DOB: ▮▮▮1990 (34 yrs)  Sex: Male
Admit Date: (Not on file)

H
A
R
R
I
S

## NOTIFICATION OF EMERGENCY DETENTION

Now comes  M. HERNANDEZ _____, a peace officer with (name of agency) Houston _____

Police Department _____, of the State of Texas, and states as follows:

1.  I have reason to believe and do believe that (name of person to be detained)
    VAN KIRK.ROBERT _____ evidences mental illness.

2.  I have reason to believe and do believe that the above-named person evidences a substantial risk of serious harm to himself/herself or others based upon the following:

    THE CONSUMER BELIEFS HE IS UNDER CYBER ATTACK, SOMEOME HAS TOLEN HIS IDENTITY, SOMEONE HAS HACKED HIS PHONE, CONSUMER HAS NOT SLEPT IN DAYS,

    CONSUMER CALLED 911 AND BELIEFS THAT 911 CALL TAKER IS NOT REAL, CONSUMER BELIEFS HE IS BEING WIRED TAPPED FOR A CIVIL SITUATION, CONSUMER STATED THAT HE IS DIOGNOSED WITH

    **DEPRESSION, ANXIETY, AND ADHD AND DID NOT TAKE HIS MEDICATION TODAY.**

3.  I have reason to believe and do believe that the above risk of harm is imminent unless the above-named person is immediately restrained.

4.  My beliefs are based upon the following recent behavior, overt acts, attempts, statements, or threats observed by me or reliably reported to me:

    BASED ON THE CONSUMER'S STATEMENT, IT IS MY BELIEF THAT HE IS PARANOID DO TO HIS STATEMENTS AND SHOWING SIGNS OF MENTALL CAPACITY DETERIORATION.

**NO CHARGES**

5.  The names, addresses, and relationship to the above-named person of those persons who reported or observed recent behavior, acts, attempts, statements, or threats of the above-named person are (if applicable):

    None

For the above reasons, I present this notification to seek temporary admission to the (name of facility)
Ben Taub Hospital _____ inpatient mental health facility or hospital facility for the detention of (name of person to be
detained) VAN KIRK,ROBERT _____ on an emergency basis.

6.  Was the person restrained in any way? Yes☒ No☐

    M. HERNANDEZ   BADGE NO. 8324 _____
    **PEACE OFFICER'S SIGNATURE**

    Address:  8300 MYKAWA RD _____     Zip Code: 77048 _____
    Telephone: 8323941600 _____

A mental health facility or hospital emergency department may not require a peace officer to execute any form other than this form as a predicate to accepting for temporary admission a person detained under Section 573.001, Texas Health and Safety Code.

# EXHIBIT 3

*EDO Lossless Native-Vector Signature Comparison*

**Source:** Native-vector forensic extraction from Exhibit 1 and Exhibit 2

EXHIBIT 1: Harris Health EHR Version (Scanner Datestamp 02/18/25) EXHIBIT 2: Harris County Probate Court Version (Authenticated Stamp 360232)

# EXHIBIT A-2: EDO SIGNATURE & TIMESTAMP COMPARISON

Direct, native-vector extractions. Red callout frames independently tailored to neutralize physical document distortion (digital text compression vs. analog scanner stretch).

Coordinates: Exhibit A (x=42.8%, y=75.3%) | Exhibit A-1 (x=49.0%, y=81.0%). Magnification scale locked identically to ensure 1:1 visual parity.

## EXHIBIT A: Harris Health EHR Version (Scanner Datestamp 02/18/25)

detained) VAN KIRK,ROBERT _____ on an emergency ba

6. Was the person restrained in any way? Yes☑ No☐

M. HERNANDEZ ⸺⸺⸺ BAD
PEACE OFFICER'S SIGNATURE

## EXHIBIT A-1: Harris County Probate Court Version (Authenticated Stamp 360232)

detained) VAN KIRK,ROBERT _____ on an emergency b

6. Was the person restrained in any way? Yes☑ No☐

M. HERNANDEZ ⸺⸺⸺ BAD
PEACE OFFICER'S SIGNATURE

8300 MYKAWA RD

# EXHIBIT 4

*HPD Incident Card / Cybercrimes Ticket*

**Incident No.** 1198816-24

**Offense:** Tampering w/ Electronic



HOUSTON POLICE DEPARTMENT

Incident No: 1198816-24

Title: TAMPERING W/ELECTRONIC

Address: 7366 BKACC ST

Date: 8/23/24

Officer's Name: EMERY & ESPOSA

Unit No. 13V12 K

Crime Prevention: www.houstonpolice.org

Report Gang Tips: www.stophoustongangs.org

# EXHIBIT 5

*ED Provider Note, Triage Record, and Initial BARS 4 Baseline (MED001 pp. 4–5)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Pages 4–5

**Date/Time:** August 26–27, 2024

**Authors:** Dr. Cedrick Lubin, MD; RN Natividad Rodriguez; RN Balbir Singh Aneja

**Contents:** ED Provider Note, initial triage assessment, and BARS 4 baseline scoring.


**HARRISHEALTH SYSTEM**

## 08/26/2024 - ED in Emergency Center BT (continued)

**ED Care Timeline (continued)**

| Time | Event | Details | Provider |
|---|---|---|---|
| 19:51:59 | **Allergies Reviewed - Fully Assessed** | | Rodriguez, Natividad, RN |
| 19:52 | **Patient arrived in ED** | | Rodriguez, Natividad, RN |
| 19:53:14 | **Arrival Complaint** | paranoid | |
| 19:53:15 | **ED Triage Notes** | Initial encounter with Robert Van Kirk<br>Verified name, DOB and allergies with patient, Patient presents to EC EDO/under Police packet with C/O Paranoid, bizarre behavior  HPD officer Hernandez 8324 States  "patient is getting worse, Patient HX of depression, ADHD   Patient states took caffeine pills, States is willing to go to a locked unit.  Denies fever/chills, chest pain, SOB, n/v/d, constipation, cough. Pt ambulatory with steady gait. In NAD. Airway intact. Respirations unlabored. Advised patient to report any changes in status or symptoms to RN. Moved to POD F ESI 2 area after patient search and changing into Green Scrubs, 1:1 sitter at bedside for safety.<br><br>No past medical history on file.<br><br>Natividad Rodriguez, RN | Rodriguez, Natividad, RN |
| 19:56 | **Travel Screening** | Have you been in contact with someone who was sick? **No / Unsure** ; Do you have any of the following new or worsening symptoms? **None of these** ; Have you traveled internationally or domestically in the last month? **No** Travel Locations: **Travel history not shown for past encounters** | Rodriguez, Natividad, RN |
| 19:56 | **Pre-arrival notification** | **Trauma Pre-Arrival Notification**<br>Pre-arrival Notification: No | Rodriguez, Natividad, RN |
| 19:56 | **Pre Arrival Info Triage** | **Prehospital Treatment**<br>Ambulance Service: No | Rodriguez, Natividad, RN |
| 19:57 | **Complex Vital Signs** | **Other flowsheet entries**<br>Restart Vitals Timer: Yes | Rodriguez, Natividad, RN |
| 19:57 | **Pain Assessments** | **Other flowsheet entries**<br>Pain Reassess : No | Rodriguez, Natividad, RN |
| 19:57 | **Homicide** | **Homicide Risk**<br>Do you feel like hurting others?: No<br>Did you feel like hurting others within last 7 days?: No | Rodriguez, Natividad, RN |
| 19:57 | **Triage Start** | **Start Triage**<br>Start Triage: Start Triage | Rodriguez, Natividad, RN |

# EXHIBIT 6

*Patient Bill of Rights (Pages 82-85)*

**Source:** Harris Health System Inpatient Records (MED001)

**Page:** 82-85

**Purported Date:** August 26, 2024

**EHR Insertion Date (Scanner Datestamp):** February 18, 2025


**HARRISHEALTH**
**SYSTEM**

Van Kirk, Robert
MRN:▓▓▓▓▓▓ DOB:▓▓/1990 Sex :M
Adm: 8/26/2024 , D/C 8/27/2024
Medicaid #

### 08/26/2024 - ED in Emergency Center BT (continued)

**Documents (continued)**

---

**Consent Form - Scan on 2/18/2025 7:37 AM: PATIENT'S BILL OF RIGHTS**

---

Scan (below)

### Patient's Bill of Rights

When you apply for or receive mental health services in the State of Texas, you have many rights. Your most important rights are listed on these four pages. These rights apply to all persons unless otherwise restricted by law or court order. A judge or lawyer will refer to the actual laws. If you want a copy of the laws these rights come from, you can call the Health Facility Licensure and Certification Division of the Texas Department of Health at 1-888-973-0022.

It is the responsibility of this hospital under law to make sure you have been informed of your rights. But just giving you this information does not mean your rights have been protected. This hospital is required to respect and provide for your rights in order to maintain licensure and do business in this state.

| **Your Right to Know Your Rights** | **Your Right to Make a Complaint** |
|---|---|
| *You have the right*, under the rules by which this hospital is licensed, to be given a copy of these as a patient. If you so desire, a copy should also be given to the person of your choice. If a guardian has been appointed for you or you are under 18 years of age, a copy will also be given to your guardian, parent, or conservator. | *You have the right* to make a complaint and to be told how to contact people who can help you. These people and their addresses and phone numbers are listed below. |
| *You or your parent, managing conservator, or guardian also have the right* to have these rights explained orally and in simple terms and in a way you can understand within 24 hours of being admitted to either a Harris Health hospital or emergency center (e.g., in your language if you are not English-speaking, in sign language if you are hearing impaired, in braille if you are visually impaired, or other appropriate methods). | *You have the right* to be told about Disability Rights Texas when you are admitted and when you are discharged from either a Harris Health hospital or emergency center. Information about how to contact Disability Rights Texas is listed below. |

If you believe any of your rights have been violated or you have other concerns about your care , you may contact one or more of the following:

Health Facility Compliance Group (MC 1979)　　　　　　　　　　　　　　　　　H　1-888-973-0022
Texas Health and Human Services Commission　　VAN KIRK, ROBERT　　　　　A
P.O. Box 149347　　　　　　　　　　　　　　　MRN:▓▓▓ HAR:▓▓▓　　　R
Austin, TX 78714-9347　　　　　　　　　　　　DOB:▓▓▓/1990 (34 yrs) Sex: Male　R
　　　　　　　　　　　　　　　　　　　　　　Admit Date: (Not on file)　　　　I
Disability Rights Texas　　　　　　　　　　　‖‖‖‖‖‖‖‖‖‖‖‖‖　　　S　1-800-252-9108
2222 W. Braker Ln.
Austin, TX 78758

If you have been involuntarily committed and you believe that your attorney did not prepare you case properly or that your attorney failed to represent your point of view to the judge, you may wish to report the attorney's behavior to the Ethics Committee of the State Bar of Texas by writing:

Disciplinary Council
State Bar of Texas
1414 Colorado
P.O. Box 12487
Austin, TX 78711-2487

---

**STATEMENT THAT YOU HAVE RECEIVED THIS FORM AND THAT IT HAS BEEN EXPLAINED**

✓ I certify that I have received a copy of this four-page document prior to admission.
✓ I certify that staff have explained its content to me in a language I understand with 24 hours of admission

Date: 8/26/24 Time: 20:26 AM/PM:

Pt refused to sign
Patient/Other Legally Responsible Person Name (printed)

Emmanuel 19705
Witness Printed Name/Harris Health ID#

21571

---

Patient/Other Legally Responsible Person Name (Signature)　　　Witness Signature　　　280766 [7.19]

# HARRISHEALTH
## SYSTEM

Van Kirk, Robert
MRN:▓▓▓▓▓▓▓  DOB:▓▓/1990  Sex :M
Adm: 8/26/2024 , D/C 8/27/2024
Medicaid #

## 08/26/2024 - ED in Emergency Center BT (continued)

**Documents (continued)**

### Basic Rights for All Patients

Below is a list of patient rights applicable to all patients who receive mental health services, whether voluntarily or involuntarily at a Harris Health System hospital or emergency center.

1. You have all the rights of a citizen of the State of Texas and the United States of America, including the right of *habeas corpus* (to ask a judge if it is legal for you to be kept in the hospital).

2. Unless limited by the law under a special procedure, you have property rights (e.g., the right to acquire, use, and dispose of property), guardianship rights, family rights, religious freedom, the right to register and vote in an election, the right to sue and be sued, the right to enter into contracts, and all the rights relating to licenses, permits, privileges, and benefits under the law.

3. You have the right to be presumed mentally competent unless a court has ruled otherwise.

4. You have the right to a clean and humane environment in which you are protected from harm, have privacy with regard to personal needs, and are treated with respect and dignity.

5. You have the right to appropriate treatment in the least restrictive appropriate setting available. This is a setting that provides you with the highest likelihood for improvement and that is not more restrictive of your physical or social liberties than is necessary for the most effective treatment and for protections against any dangers which you might pose to yourself or others.

6. You have the right to be free from mistreatment, abuse, neglect, and exploitation.

7. You have the right to be informed of those hospital rules and regulations concerning your conduct and course of treatment.

8. You have the right not to be unnecessarily searched unless your physician believes there is a potential danger and orders a search. If you are required to remove any item of clothing, a staff member of the same sex must be present and the search must take place in a private place.

9. You have the right to talk and write to people outside the hospital. You have the right to have visitors in private, make private phone calls, and send and receive sealed and uncensored mail. This right may be limited by your doctor on an individual basis to the extent that the limitation is necessary to your welfare or to protect another person. The reasons for and the duration of the limitation must be written in your medical record, signed, and dated by your doctor, fully explained to you. This limit on your right must be reviewed at least every seven days and if renewed, renewed in writing. *In no case may your right to contact or be contacted by an attorney, the department, the courts, or the state attorney general be limited.*

10. You have the right to have the privacy of your medical records protected and to have your records kept confidential pursuant to state and federal privacy laws and regulations.

11. You have the right to have your family notified before you are discharged or released from a Harris Health hospital or emergency center if you grant Harris Health permission to provide such notification.

12. You have the right to refuse to take part in research without affecting your regular care.

13. You have the right to refuse any of the following:
   ➤ surgical procedures;
   ➤ electroconvulsive therapy (prohibited for minors under the age of 16);
   ➤ unusual medications,
   ➤ behavior therapy;
   ➤ hazardous assessment procedures;
   ➤ audiovisual equipment; and
   ➤ other procedures for which your permission is required by law.

*This right extends to your parent or conservator if you are a minor, or your legal guardian when applicable.*

14. You have the right to withdraw your permission at any time in matters to which you have previously consented.

15. You have the right to refuse to receive psychoactive medication unless:
   ➤ You are having a psychiatric emergency;
   ➤ You are younger than 16 years old or if you are younger than 18 years and have been voluntarily admitted for mental health services, and your parent, managing conservator, or guardian consents to the administration of psychoactive medication on your behalf;
   ➤ Your legally authorized representative consents on your behalf; or
   ➤ A court orders the administration.

16. If you, or your legally authorized representative, consents to the administration of psychoactive medication, you or your representative may revoke that consent.

17. You have the right to be told about the care, procedures, and treatment you will be given; the risks, side effects, and benefits of all medications and treatment you will receive, including those that are unusual or experimental, the other treatments that are available, and what may happen if you refuse the treatment.

18. You have the right not to be given medication you don't need or too much medication, including the right to refuse medication (this right extends to your parent or conservator if you are a minor, or your legal guardian when applicable). However, you may be given appropriate medication if:
   ➤ Your condition or behavior places you or others in immediate danger; or
   ➤ You have been admitted by the court and your doctor determines that medication is required for your treatment and a judicial order authorizing administration of the medication has been obtained.

19. You have the right to receive a list of medication prescribed for you by your physician, including the name, dosage, administration schedule, and the name of the physician who prescribed the medication within four hours of the facility

280766 (7.19)

Printed on 8/29/25  9:03 AM

# HARRISHEALTH
## SYSTEM

Van Kirk, Robert
MRN:████████  DOB:███/1990  Sex :M
Adm:███/2024 , D/C 8/27/2024
Medicaid #

### 08/26/2024 - ED in Emergency Center BT (continued)

**Documents (continued)**

administrator or designee receiving such a request in writing. If there is insufficient time to prepare the list prior to discharge, the list may be mailed within 24 hours after discharge to either the patient or the patient's legal guardian or managing conservator.

20. You have the right to not be physically restrained (restriction of movement of parts of the body by person or device or placement in a locked room alone) unless your doctor orders it and writes it in your medical record. The restraint has to be stopped as soon as possible. In an emergency, you may be restrained for up to one hour before the doctor's order is obtained. If you are restrained, you must be told the reason, how long you will be restrained, and what you have to do to be removed from restraint.

21. You have the right to a periodic review to determine the need for continued treatment.

*If you have questions concerning these rights or a complaint about your care, call the Health Facility Compliance Group of the Texas Health and Human Services Commission at 1-888-973-0022.*

**Voluntary Patients – Special Rights**

1. You have the right to be examined periodically and at regular intervals by your doctor to determine your need for continued treatment.

2. You have the right to request discharge from the hospital. If you want to leave, you need to say so in writing or tell a staff person. If you tell a staff person you want to leave, the staff person must write it down for you. The request must be signed, timed, and dated, and will be made a part of your medical record.

3. You have the right to be discharged from the hospital within four hours of requesting discharge. There are only three reasons why you would not be allowed to go:

> First, if you change your mind and want to stay at the hospital, you can sign a paper that says you do not wish to leave, or you can tell a staff member that you don't want to leave, and the staff member has to write it down for you.

> Second, if you are under 18 years old, and the person who admitted you (your parents, guardian, or conservator) doesn't want you to leave, you may not be able to leave. If you request release, staff must explain to you whether or not you can sign yourself out and why. The hospital must notify the person who does have the authority to sign you out and tell that person that you want to leave. That person must talk to your doctor, and your doctor must document the date, time, and outcome of the conversation in your medical record. This person must state in writing that he or she objects to your discharge.

> Third, you may be detained longer than four hours if your doctor has reason to believe that you might meet the criteria for court-ordered services or emergency detention because:
> • you are likely to cause serious harm to yourself;
> • you are likely to cause serious harm to others; or
> • your condition will continue to deteriorate and you are unable to make an informed decision as to whether or not to stay for treatment.

If your doctor thinks you may meet the criteria for court-ordered services or emergency detention, he or she must examine you in-person within 24 hours of you filing your discharge request. You must be allowed to leave the hospital upon completion of the in-person examination unless your doctor confirms that you meet the criteria for court-ordered services or emergency detention and files an application for court-ordered services or emergency

detention. Even if an application for court-ordered services or emergency detention is filed, you cannot be detained at the hospital beyond 4:00 in the afternoon of the first business day following the in-person examination unless a court-order for services is obtained. Your doctor must note in your medical record and tell you about any plans to file an application for court-ordered treatment or for detaining you for other clinical reasons. If the doctor finds that you are ready to be discharge, you should be discharged without further delay.

4. You have the right to not have an application for court ordered services filed while you are receiving voluntary services at the hospital unless your physician determines that you meet the criteria for court-ordered services as outlined in §572.005 of the Texas Health and Safety Code and:

> You request discharge (see number 2 above);

> Your doctor believes you that you meet the criteria for court-ordered mental health services and:
>> o You are absent without authorization;
>> o Your doctor believes you are unable to consent to appropriate and necessary treatment; or
>> o You refuse to consent to necessary and appropriate treatment recommended by your doctor and your doctor states in the certificate of medical examination that:
>>> ▪ There is no reasonable alternative treatment; and
>>> ▪ You will not benefit from continued inpatient care without the recommended treatment.

Your doctor must note in your medical record and tell you about any plans to file an application for court-ordered treatment or for detaining you for other clinical reasons. If the doctor finds that you are ready to be discharge, you should be discharged without further delay.

*Note: The law is written to ensure that people who do not need treatment are not committed. The Texas Health and Safety Code says that any person who intentionally causes or helps another person cause the unjust commitment of a person to a mental hospital is guilty of a crime punishable by a fine of up to $5,000 and/or imprisonment in county jail for up to one year.*

5. You or the individual filing a request for discharge on your behalf have the right to be notified that the that you or the person filing the request on your behalf will have complete responsibility for your care after you are discharged.

6. If your physician determines that you need continuing care after discharge, your physician will prepare a continuing care plan for you in accordance with the requirements of Section 574.081 of the Texas Health and Safety Code.

7. You have the right to not be transferred to a mental health facility in another state for voluntary mental health services unless transportation to that facility is authorized by a court order.

**Emergency Detention – Special Rights for People Brought to the Hospital Against Their Will**

1. You have the right to be told:
> where you are;
> why you are being held; and
> that you might be held for a longer time if a judge decides that you need treatment.

280766 (7.19)

# HARRISHEALTH
## SYSTEM

Van Kirk, Robert
MRN:█████████ DOB:████/1990 Sex :M
Adm: 8/26/2024 , D/C 8/27/2024
Medicaid #

### 08/26/2024 - ED in Emergency Center BT (continued)

**Documents (continued)**

2. You have the right to call a lawyer. The people talking to you must help you call a lawyer if you ask.

3. You have the right to be seen by a doctor within 12 hours after being transported to Harris Health for emergency detention. You will not be allowed to leave if the doctor believes that:

- You have a mental illness;
- You may seriously harm yourself or others;
- The risk of this happening is imminent unless you are restrained; and
- Emergency detention is the least restrictive mean of restraint.

If the doctor decides you don't meet all of these criteria, you must be allowed to leave. A decision concerning whether you must stay must be made within 48 hours, except that on weekends and legal holidays, the decision may be delayed until 4:00 in the afternoon on the first regular workday. The decision may also be delayed and your detention may continue for an additional 24 hours in the event of an extreme weather emergency or disaster and upon a written order from the court.

4. If the doctor decides that you don't need to stay here, the hospital will arrange for you to be taken back to where you were picked up if you want to return, or to your home in Texas, or to another suitable place within reasonable distance.

5. You have the right to be told that anything you say or do may be used in proceeding for further detention.

6. You have the right to have an opportunity to communicate with a family member or another individual who has an interest in your welfare and wellbeing.

VAN KIRK, ROBERT
MRN:████████ HAR:████████
DOB:███ 1990 (34 yrs)  Sex: Male
Admit Date: (Not on file)

H
A
R
R
I
S

280766 (7.19)

# EXHIBIT 7

*HPD TPIA Denial — CAD Records*

**Source:** Houston Public Information Act Response (P121427-082425)

**Date:** August 27, 2025

**Agency:** Houston Police Department

**Contents:** Denial of CAD dispatch records under Texas Gov't Code § 552.108 ("active investigation" exemption).

 **Gmail**

Robert Van Kirk <robertwaynevankirk@gmail.com>

## Public Information Act Request :: P121427-082425

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Sun, Aug 24, 2025 at 12:43 PM



Dear Robert Van Kirk:

Thank you for your interest in public records of Houston Police Department. Your request has been received and is being processed in accordance with Chapter 552 of Texas Government Code, the Public Information Act. Your request was received in this office on 8/24/2025 and given the reference number P121427-082425 for tracking purposes.

**Records Requested:** Please produce all Computer-Aided Dispatch (CAD) and related records for the Houston Police Department response on August 26, 2024, between 12:00 PM and 8:00 PM CDT, at or near the Sonic Drive-In located at 7470 Bellfort Street (intersection of Bellfort Street and Telephone Road), Houston, TX 77061. The involved party is Robert W. Van Kirk. Specifically, I request: 1. Full CAD event history for any calls for service at this location in that window, including all timestamps, unit assignments, officer arrival/clear times, call-taker notes, and disposition/clearance codes. 2. Incident and offense reports generated for the same event(s), including any supplemental narratives. 3. Dispatcher and call-taker remarks associated with the CAD entries. 4. Unit response details including which units were assigned, en route, on scene, and cleared. 5. Any Mobile Data Terminal (MDT) messages linked to these CAD events. 6. Any property/evidence log entries tied to this incident. If the incident is linked to HPD Case Number 1198816-24, please include all records under that case as well. Notes: - Electronic delivery is preferred (PDF for narratives, CSV/XLSX if CAD exports are available). - If any portion of the records are not held directly by HPD (e.g., vendor or contractor systems), please identify the custodian so the request may be properly directed. - Because many CAD/dispatch records may be subject to short retention cycles, please ensure a preservation hold is applied while this request is pending. - If costs are expected to exceed $150, please provide an itemized estimate for approval before proceeding.

Your request will be forwarded to the relevant Houston Police Department department(s) to locate the information you seek and to determine the volume and any costs associated with satisfying your request. You will be contacted about the availability and/or provided with copies of the records in question. PLEASE NOTE: The Chapter 552 of Texas Government Code, the Public Information Act does not require a governmental body to create new information, to do legal research, or to answer questions.

You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed. Again, thank you for using the Houston Public Information Request Center.

Houston Police Department

To monitor the progress or update this request please log into the Houston Public Information Request Center

*Powered by*

**GovQA**

 Gmail

Robert Van Kirk <robertwaynevankirk@gmail.com>

## [Records Center] Police Department Public Information :: P121427-082425

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Wed, Aug 27, 2025 at 4:38 PM

--- Please respond above this line ---



Dear Robert Van Kirk,

The Houston Police Department has reviewed its files, since the case is still open, and since you have agreed to all exceptions, we are NOT releasing any information under section 552.108 regarding the 911 information you have requested pertaining to incident #121581524.

Sincerely,

Joe R. Zapata
HPD Open Records Unit

To monitor the progress or update this request please log into the Houston Public Information Request Center

Powered by
 **GovQA**

# EXHIBIT 8

*HPD TPIA Denial — 911 Audio Records*

**Source:** Houston Public Information Act Response (R259343-082425)

**Date:** September 1, 2025

**Agency:** Houston Emergency Center

**Contents:** Denial of 911 audio records.

 Gmail

Robert Van Kirk <robertwaynevankirk@gmail.com>

## Public Information Act Request :: R259343-082425

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Sun, Aug 24, 2025 at 10:37 AM



Dear Robert Van Kirk:

Thank you for your interest in public records of City of Houston. Your request has been received and is being processed in accordance with Chapter 552 of Texas Government Code, the Public Information Act. Your request was received in this office on 8/24/2025 and given the reference number R259343-082425 for tracking purposes.

**Records Requested:** TIME-SENSITIVE — retention risk approaching Please acknowledge as soon as possible on Monday that responsive records are on preservation hold and that this request is being processed without delay. The most probably date of the incident is August 26th, 2024 meaning that records may be irretrievably lost on Tuesday. Subject: HEC 911/CAD/Radio records — Aug 26, 2024 (±1 day) — Sonic 7470 Bellfort & Garden Villas — MDNs (832) 707-9903, (832) 317-8310 Please produce the following Houston Emergency Center records for Aug 26, 2024, with a search window of Aug 25–27, 2024, covering my calls and related activity near William P. Hobby Airport (HOU) and at Sonic, 7470 Bellfort St, Houston, TX: CAD Event History (full incident timeline and associated entries). Telephony/call-routing metadata for 911 calls and callbacks (ANI/ALI, trunk/queue notes, transfers, ring/answer/disposition codes). 911 audio recordings for my outbound 911 call(s) and any inbound "911/Emergency Services"-labeled callbacks within the same sequence (if retained). Radio/dispatcher logs for call-taking and dispatch, including talkgroup/time stamps and unit assignments. AVL/GPS unit location traces for dispatched units covering the same events (if retained). If any audio is past retention, please confirm in writing and produce all remaining metadata (CAD, telephony, radio logs) and the applicable retention citation. Identifiers to aid your search: Phone numbers: (832) 707-9903 (primary) and (832) 317-8310 (related); inbound callbacks labeled "911/Emergency Services" were not present in the handset log. Locations: Sonic 7470 Bellfort St; Garden Villas / Telephone Rd & Airport Blvd (HOU perimeter). Please cross-reference any associated unit activity. Production & handling: Preservation: This written request triggers preservation—please suspend routine deletion/rotation of potentially responsive records while this request (and any appeal) is pending. Format: Produce in electronic/native format where possible (CSV/JSON/XLSX for structured data; WAV/MP3 for audio). Segregability/index: Release all reasonably segregable portions; for any withholds, provide a brief description and legal basis. Contractor-held records: If responsive data is held by a vendor/contractor, please retrieve and produce it as agency records. Fees & priority (to avoid delays): I authorize costs up to $200 without further approval. If the estimate will exceed $200, please (a) proceed immediately with items 1–4 within that budget (CAD, telephony metadata, radio logs, and any audio still retained) and (b) send an itemized estimate for the remaining items (including AVL/GPS) for my prompt decision.

Your request will be forwarded to the relevant City of Houston department(s) to locate the information you seek and to determine the volume and any costs associated with satisfying your request. You will be contacted about the availability and/or provided with copies of the records in question. PLEASE NOTE: The Chapter 552 of Texas Government Code, the Public Information Act does not require a governmental body to create new information, to do legal research, or to answer questions.

You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed. Again, thank you for using the Houston Public Information Request Center.

City of Houston

To monitor the progress or update this request please log into the Houston Public Information Request Center

*Powered by*
 GovQA

 Gmail

Robert Van Kirk <robertwaynevankirk@gmail.com>

## [Records Center] Houston Emergency Center :: R259343-082425

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Mon, Sep 1, 2025 at 1:35 PM

--- Please respond above this line ---



Dear Robert Van Kirk,

The Houston Emergency Center and the Houston Police Department has reviewed its files, since the case is still open, and since you have agreed to all exceptions, we are NOT releasing any information under section 552.108 regarding the 911 information you have requested pertaining to incident #1198816-24.

Sincerely,

Joe R. Zapata
HPD Open Records Unit

To monitor the progress or update this request please log into the Houston Public Information Request Center



# EXHIBIT 9

*HPD TPIA Statutory Default — Body-Worn Camera*

**Source:** Houston Public Information Act Response (P121428-082425)

**Date:** August 24, 2025

**Agency:** Houston Police Department

**Contents:** Statutory default — no response within 10 business days for body-worn camera footage request.

 Gmail

Robert Van Kirk <robertwaynevankirk@gmail.com>

## Public Information Act Request :: P121428-082425

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Sun, Aug 24, 2025 at 12:52 PM



Dear Robert Van Kirk:

Thank you for your interest in public records of Houston Police Department. Your request has been received and is being processed in accordance with Chapter 552 of Texas Government Code, the Public Information Act. Your request was received in this office on 8/24/2025 and given the reference number P121428-082425 for tracking purposes.

**Records Requested:** Pursuant to Tex. Occ. Code §1701.661, I request the following Body-Worn Camera (BWC) and In-Car Video recordings from the Houston Police Department: Incident: Police response involving Robert W. Van Kirk Date: August 26, 2024 Time: Between 12:00 PM and 8:00 PM CDT Location: near Sonic Drive-In, 7470 Bellfort, Houston, TX 77061 (Bellfort Ave & Telephone Rd) Requested records: 1. All BWC video/audio recorded by HPD officers who responded to this incident during the above window at this location. 2. All in-car/dash camera video/audio from HPD vehicles that responded to or were present on scene during the same timeframe. 3. Metadata for each responsive recording, including officer name, badge number, unit/car identifier, start and end timestamps, and file identifiers. 4. Any roster or assignment sheet that maps which officers/units were dispatched and equipped with BWC for this event. Notes: - I am the subject of the incident and consent to release of recordings depicting me. - Please produce the files in native digital format (MP4 or equivalent) via secure portal/download. - If redactions are necessary for third-party privacy, please redact and release rather than withhold. - If any recordings are retained or stored by contractors on behalf of HPD, they are considered HPD records and should be retrieved and produced. - Because BWC and MVR recordings may be subject to limited retention if not linked to a case, please ensure a preservation hold is applied for all responsive media while this request is pending. - If costs are expected to exceed $150, please provide an itemized estimate for approval before proceeding.

Your request will be forwarded to the relevant Houston Police Department department(s) to locate the information you seek and to determine the volume and any costs associated with satisfying your request. You will be contacted about the availability and/or provided with copies of the records in question. PLEASE NOTE: The Chapter 552 of Texas Government Code, the Public Information Act does not require a governmental body to create new information, to do legal research, or to answer questions.

You can monitor the progress of your request at the link below and you'll receive an email when your request has been completed. Again, thank you for using the Houston Public Information Request Center.

Houston Police Department

To monitor the progress or update this request please log into the Houston Public Information Request Center

Powered by

GovQA

# EXHIBIT 10

*HPD TPIA Statutory Default — Evidence Preservation*

**From:** Houston Public Information Request Center houstontx@govqa.us

**To:** robertwaynevankirk@gmail.com

**Date:** Monday, September 8, 2025, 7:40 AM CDT

**Subject:** Public Information Act Request :: P122802-090825

 **Gmail**

Robert Van Kirk <robertwaynevankirk@gmail.com>

## Public Information Act Request :: P122802-090825

**Houston Public Information Request Center** <houstontx@govqa.us>
To: "robertwaynevankirk@gmail.com" <robertwaynevankirk@gmail.com>

Mon, Sep 8, 2025 at 7:40 AM



Dear Robert Van Kirk:

Thank you for your interest in public records of Houston Police Department. Your request has been received and is being processed in accordance with Chapter 552 of Texas Government Code, the Public Information Act. Your request was received in this office on 9/8/2025 and given the reference number P122802-090825 for tracking purposes.

**Records Requested:** NARROW §2703(f) PRESERVATION CONFIRMATION — HPD Case #1198816-24 (08/19/2024–Present) I request records sufficient to confirm or refute whether HPD transmitted any preservation request(s) under 18 U.S.C. §2703(f) to outside providers for HPD Case #1198816-24, between 08/19/2024 and the present. Providers (as requested by me): • T-Mobile USA, Inc. (Account ▓▓1670; MDN 832-836-3962) • Cellco Partnership d/b/a Verizon Wireless — Consumer (VSAT) (Account ▓▓8522; MDNs 832-707-9903 [corrected primary], 832-317-8310 [alternate during provisioning]) • Verizon Wireless — Business (GLERT) (Business Account ▓▓1934; primary line 832-428-2882) • Google LLC (LERS) • Samsung Electronics America, Inc. (Legal/Security) • Microsoft Corporation (Law Enforcement Portal / LCA) • TeamViewer (TeamViewer US, Inc. and/or TeamViewer Germany GmbH) For each provider, please produce (or, if content is withheld, produce a metadata summary): Whether HPD sent any §2703(f) preservation notice(s) tied to Case #1198816-24; Date/time sent, method (portal/email/fax), sending HPD custodian, recipient address/portal ticket, and any tracking/confirmation ID; Any acknowledgment/receipt from the provider (date/time and reference number); Any internal HPD log entries/tickets showing the preservation was created/submitted/queued/declined (system name, date/time, custodian); If no notices were sent, any records reflecting a decision not to send and the stated reason, or else a "no records" certification. Scoping/Redactions: I am not seeking investigative substance—only ministerial/transmittal metadata confirming whether notices were sent and when. If notice content is withheld, please still produce cover pages/receipts/metadata and provide an index of withheld items with specific statutory exemptions. Custodians/Systems (non-exclusive): HPD Cyber Crimes Division (CFC); HPD Legal; Records; assigned Detective/Analyst; any LE portals used for §2703(f) (e.g., T-Mobile LER, Verizon VSAT/GLERT, Google LERS, Microsoft LE Portal, Samsung Legal/Security, TeamViewer channels). Context for indexing: I emailed HPD Cyber Crimes requesting §2703(f) preservation for T-Mobile, Samsung, Google, and Verizon (consumer) for Case #1198816-24; Verizon business and Microsoft are also listed in my supplemental statement/preservation index. This request seeks HPD's transmissions/receipts, if any. I consent to mandatory redactions (e.g., §552.101, common-law privacy, third-party proprietary). I do not consent to discretionary withholding under §§552.103, 552.108, 552.111, or 552.107 for ministerial/transmittal metadata (dates/times, sender/recipient, portal/ticket IDs, acknowledgments). If HPD contends such metadata is exempt, please seek an Attorney General ruling and produce a redaction index.

# EXHIBIT 11

*Detective Chaney Email — 'No Detective Assigned' Admission*

**Source:** Email correspondence between HPD Detective Jacorey D. Chaney and Plaintiff

**Date:** August 22, 2025

**Agency:** Houston Police Department

**Contents:** Detective Chaney confirms no detective has been assigned to Incident No. 1198816-24 nineteen months after evidence submission, and claims preservation requests were issued for TeamViewer logs.

 Gmail                                                    Robert Van Kirk <robertwaynevankirk@gmail.com>

**[#54503557], Urgent Data Preservation Request – TeamViewer and Sentry Logs (HPD Cyber Investigation Case #1198816-24)**

**Chaney, Jacorey D.** <Jacorey.Chaney@houstonpolice.org>                    Fri, Aug 22, 2025 at 6:39 AM
To: Robert Van Kirk <robertwaynevankirk@gmail.com>

Good Morning, the preservation request was sent out on August 05, 2025, and there was acknowledgement that the evidence would be preserved. Again, your case is not assigned, and I am not the Detective Assigned to your case. All evidence that you have will need to be held for your assigned Detective. I sent the preservation request to Teamviewer due to the time restraint, but any other legal request can be completed once your case is assigned to a Detective.

Best regards,

Det. Jacorey D Chaney
Houston Police Department
Property & Financial Crimes
Cybercrimes Unit
Security+
Off: 713-308-0988
Cell: 281-757-5102

 

**From:** Robert Van Kirk <robertwaynevankirk@gmail.com>
**Sent:** Thursday, August 21, 2025 3:36 PM
[Quoted text hidden]

[Quoted text hidden]

# EXHIBIT 12

*HPD Refusing Physical Evidence*

**From:** Sgt. T. Torres (HPD Cyber Crimes)

**To:** Robert Van Kirk

**Date:** July/August 2025

M Gmail                                                                    Robert Van Kirk <robertwaynevankirk@gmail.com>

**PHONE TAKEN AS EVIDENCE**

**Torres, Claudia E. - HPD** <Claudia.Torres@houstontx.gov>                              Wed, Mar 18, 2026 at 1:31 PM
To: "ROBERTWAYNEVANKIRK@GMAIL.COM" <ROBERTWAYNEVANKIRK@gmail.com>

Good afternoon Mr. Robert Van Kirk:

After several phone calls and voice mails. I am writing this email to let you know that we are not taking phones as evidence. And you need to
come to the 1200 Travis and pick up the phone you left with me.
Please come at your earliest convenience.

Thank you,


*Claudia Torres*
*Administrative Associate*
*Property & F.C.U.*
*713-308-2588*
*Claudia.Torres@Houstontx.gov*

# Gmail

Robert Van Kirk <robertwaynevankirk@gmail.com>

---

**PHONE TAKEN AS EVIDENCE**

---

**Robert Van Kirk** <robertwaynevankirk@gmail.com>
To: "Torres, Claudia E. - HPD" <Claudia.Torres@houstontx.gov>
Cc: DistrictAttorneyVictimServices@dao.hctx.net
Bcc: Robert Van Kirk <robertwaynevankirk@gmail.com>, "Mom <3" <cvk@swbell.net>

Thu, Mar 19, 2026 at 12:38 PM

Ms. Torres,

Thank you for your email. I apologize for missing your earlier calls. I've been sick and in bed recently.

As the victim in HPD Case #1198816-24, I want to ensure the following is clearly documented:

**1.** On March 16th, 2026, I personally surrendered the following items to HPD's Cybercrimes Division at 1200 Travis Street:

- My mother's Samsung Galaxy S24 Ultra, the device from which $74,370.88 in Bitcoin was stolen on July 20, 2025
- Detailed technical forensic reports documenting evidence of device compromise
- A USB drive containing a complete extraction of the phone's filesystem (to the extent such an extraction can be performed without root user privileges)

I provided these materials specifically to assist in the investigation and to minimize the forensic work the division would need to perform independently.

**2.** These items were accepted by HPD personnel and taken into the department's custody.

**3.** On September 9, 2025, I previously attempted to surrender a second device, Wayne Van Kirk's Samsung Galaxy S23 FE, to HPD's Cybercrimes Division. That device was refused, with the explanation that the division lacked the capacity to investigate phone malware.

**4.** Your email now states a different reason: that HPD is simply "not taking phones as evidence."

I have to be honest; I do not understand what is happening here. My elderly mother had $74,000 stolen from her. I identified the suspects. I provided forensic evidence. I did the technical analysis myself so HPD wouldn't have to. I provided blockchain transaction records so that HPD could trace exactly where the money went. I handed over three sworn reports with ready-made preservation targets for six service providers: account numbers, device serial numbers, and date windows that can be copied directly into subpoenas. I have done everything short of making the arrest myself.

HPD has had a forensic disk image of my compromised laptop and my father's PC's original unencrypted drive, sitting in its property room since August 2024. A TeamViewer session ID on that drive which survived anti-forensic log scrubbing links directly to the

person who initiated the unauthorized remote access. That evidence has been available to any detective who cared to look at it for nineteen months.

In that time, no detective has been assigned. Nothing has been examined. HPD has not even confirmed whether the evidence preservation letters I requested were sent, a costless step that takes minutes and prevents service providers from routinely deleting records that could identify the perpetrators. I filed a public records request for confirmation. No response.

And now, rather than investigate a $74,000 felony with identified suspects and ready-made evidence, HPD wants me to come pick up the phone.

The Houston Forensic Science Center routinely performs mobile device examinations for criminal investigations. I am at a loss to understand why a victim who has done this much work to help the police is being turned away.

That said, if HPD's position is that its multi-million-dollar forensic laboratory is unable to investigate phone malware, very well. I am actively working to involve the FBI through the Internet Crime Complaint Center and other federal channels. It would be helpful if HPD could retain the phone so that the chain of custody remains intact for federal investigators. Returning the evidence to me and then having the FBI request it back from a civilian would be an unnecessary and avoidable complication for everyone involved.

I have attached the three sworn reports I submitted to the Cybercrimes Division so that the District Attorney's office may review them directly.

As the victim, I formally object to the release, return, or destruction of this evidence. The premature disposition of this phone would compromise the integrity of an active criminal investigation and could prevent the Harris County District Attorney's Office from conducting a full review for prosecution.

I respectfully ask that HPD preserve this evidence in its original condition until this criminal matter is fully resolved.

Please provide written confirmation that this objection has been received. I would appreciate all future communications regarding this matter being in writing, so that I can maintain accurate records.

Respectfully,

Robert W. Van Kirk

Victim

HPD Case #1198816-24

(832) 428-2882

robertwaynevankirk@gmail.com

[Quoted text hidden]

---

**5 attachments**

Supplemental-Police-Report.pdf
4331K

Notice-of-Finanical-Crime.pdf
965K

Affadavit-of-Carolyn-Van-Kirk.pdf
140K

Affadavit-of-Nikandro-Pacheco.pdf
115K

Supplemental-Police-Report-Corrections.pdf
598K

# EXHIBIT 13

*Forensic File Recovery — TeamViewer Enterprise Session Artifacts*

**Capture Date:** 09/15/24 12:23 PM

This exhibit presents forensic evidence recovered from Plaintiff's father's compromised device via Recuva (v1.51.1116), establishing that commercially licensed TeamViewer Enterprise remote-access software was illicitly installed and bound to an unauthorized console — with attackers actively overwriting log files to destroy the evidence trail.

**Recovered `session.json` Contents (Verbatim):**

```
{"init":true,"sid":"5087706b-
cc1a-436d-8499-53b769dfa7a5","status":"ok","errors":0,
 "started":"2024-08-14T13:19:40.341Z","duration":0,
 "attrs":
{"release":"teamviewer_windows@15.55.3+65211090fce","environment":null}}
```

- **Session ID:** 5087706b-cc1a-436d-8499-53b769dfa7a5 — globally unique identifier assigned by TeamViewer GmbH, linking this session to the originating account, IP address, and device hardware identifiers.

- **Timestamp:** 2024-08-14T13:19:40.341Z — August 14, 2024, 1:19 PM UTC. This unauthorized session was initiated **twelve days before** Officer Hernandez dismissed Plaintiff's crime report as a psychiatric delusion and executed the Emergency Detention Order (August 26, 2024).

- **Software Version:** teamviewer_windows@15.55.3 (build 65211090fce) — identifies the exact TeamViewer Enterprise client version used by the unauthorized accessor.

A routine administrative subpoena to TeamViewer GmbH for this Session ID would positively identify the perpetrator's originating IP address and account credentials, including the credit card used to purchase the enterprise license. HPD possesses this Session ID and has not issued the subpoena.

## Part A — Recovered Files (Intact)

| File | Size | Modified | State | Notes |
|---|---|---|---|---|
| __sentry-event | 302 B | 8/14/24 06:19 | Excellent | No overwritten clusters |
| __sentry-event | 351 B | 1/9/24 13:09 | Excellent | No overwritten clusters |
| Preferences~RF125a3.TMP | 557 KB | 9/11/24 05:19 | Excellent | No overwritten clusters |
| Preferences~RFa112.TMP | 557 KB | 9/11/24 04:53 | Excellent | No overwritten clusters |
| **session.json** | **213 B** | **8/14/24 06:19** | **Excellent** | **Critical TeamViewer session identity** |

## Part B — Anti-Forensic Log Scrubbing (Destroyed Cache Fragments)

All files below were permanently overwritten by the TeamViewer application's own log-rotation mechanism — a recognized anti-forensics technique designed to scrub session metadata.

| Fragment | Type | Modified | State | Overwritten By |
|---|---|---|---|---|
| 0000000000020F9F | — | 7/26/24 09:21 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 1FCBE13061223A... | Firefox cache | 7/26/24 12:21 | Poor | D:\ProgramData\USOShared\Logs\System\UpdateSessionOrchestration... |
| 26953 | Firefox cache | 8/15/24 08:11 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 30222B28859EB... | Firefox cache | 8/15/24 07:52 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| 72A6818153400... | Firefox cache | 8/13/24 14:38 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 831C3253D38B... | Firefox cache | 7/27/24 07:11 | Poor | D:\Windows\System32\MRT.exe |
| 93f290be57999... | — | 8/14/24 05:58 | Poor | D:\Windows\SystemTemp\_EDFF6D5C-...\MoUxCore |
| B4B54469719D... | Firefox cache | 7/27/24 09:19 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| B883718A84F6... | Firefox cache | 8/14/24 16:26 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| C17CB53B1697... | Firefox cache | 7/27/24 06:28 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| CB344BB0F644... | Firefox cache | 8/14/24 16:05 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| D57440EF87EE... | Firefox cache | 8/14/24 09:25 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| EE34B17C7A3E... | Firefox cache | 8/14/24 09:23 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| FB71397F1F16... | Firefox cache | 7/27/24 06:27 | Poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 1119 | Firefox cache | 8/15/24 07:57 | Very poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| 12680 | Firefox cache | 8/15/24 08:00 | Very poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile.log |
| 18615 | Firefox cache | 8/15/24 08:21 | Very poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 19078 | Firefox cache | 7/28/24 05:39 | Very poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |
| 28B23A... | Firefox cache | 7/27/24 02:38 | Very poor | D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log |

Windows (D:)

Scan | ▾    🔍 D:\*    ❎ ▾    Options

| Filename | Path | Last Modified | Size | State | Comment |
|---|---|---|---|---|---|
| entry-event | D:\Users\Administrator\AppData\Local\TeamViewer\Logs\ErrorReports\21bef773-c063-4e6b-13f9-dad5f5e0969f.run\ | 8/14/2024 06:19 | 302 bytes | Excellent | No overwritten clusters detected. |
| entry-event | D:\Users\Administrator\AppData\Local\TeamViewer\Logs\ErrorReports\be092584-a44b-4b40-3e51-4d03e1a27442.run\ | 1/9/2024 13:09 | 351 bytes | Excellent | No overwritten clusters detected. |
| Preferences~RF125a3.TMP | D:\Users\Administrator\AppData\Local\Microsoft\Edge Dev\User Data\Default\ | 9/11/2024 05:19 | 557 KB | Excellent | No overwritten clusters detected. |
| Preferences~RFa112.TMP | D:\Users\Administrator\AppData\Local\Microsoft\Edge Dev\User Data\Default\ | 9/11/2024 04:53 | 557 KB | Excellent | No overwritten clusters detected. |
| session.json | D:\Users\Administrator\AppData\Local\TeamViewer\Logs\ErrorReports\21bef773-c063-4e6b-13f9-dad5f5e0969f.run\ | 8/14/2024 06:19 | 213 bytes | Excellent | No overwritten clusters detected. |
| 000000000020F9F | D:\$Extend\$RmMetadata\$Txf\ | 7/26/2024 09:21 | 533 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 1FCBE13061223A3060204F0BAB... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/26/2024 12:21 | 1,774 KB | Poor | This file is overwritten with "D:\ProgramData\USOShared\Logs\System\UpdateSessionOrchestration.d2d7f4fd-80e3-46a... |
| 26953 | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\doomed\ | 8/15/2024 08:11 | 9 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 30282B28859EB3659C7C654ADB... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/15/2024 07:52 | 83 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| 77A5318153400C0E887033E9DC... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/13/2024 14:38 | 11 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 81C3253D38B515497FF8863BC... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 07:11 | 124 KB | Poor | This file is overwritten with "D:\Windows\System32\MRT.exe" |
| 90290be5799938e82e92ac572d... | D:\Windows\SoftwareDistribution\Download\ | 8/14/2024 05:58 | 56,450 KB | Poor | This file is overwritten with "D:\Windows\SystemTemp\_EDFF6D5C-2912-4DAE-B764-03058E0E67DA\System\MoUxCore\ |
| B4B54469719D07D8918911B08D... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 09:19 | 1,443 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| B883718A84F60F533FCA28A2C2... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 16:26 | 66 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| C17CB53816974C42778BFF58AE... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:28 | 17 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| CB5448B0F644F42A108A4A07A... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 16:05 | 9 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| F2440EF87EED3BA69D0B416A... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 09:25 | 23 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| FE34B17C7A3E89457B63729396... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 09:23 | 10 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| FB21397F1629A21E31DE6A6B8... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:27 | 16 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| index.bundle | D:\Program Files\WindowsApps\Deleted\FACEBOOK.317180B0BB486_2150.13.211.0_x64__8xx8rvfyw5nnt64d095f0-8373-4ee1-acf4-2dcefec2c469\app\resources\zeratul-rn\ | 7/27/2024 10:41 | 7,650 KB | Poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Microsoft\Edge Dev\User Data\Edge Wallet\127.18C |
| Newtonsoft.Json.dll | D:\?\ | 3/8/2023 08:09 | 695 KB | Poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\ci |
| Service20240810.log | D:\ProgramData\Intel\DSA\Logs\Service\ | 8/10/2024 18:51 | 7,061 KB | Poor | This file is overwritten with "D:\Google\DriveFS\Logs\startup_trace_2024-09-11T11_ |
| typosquatting_list.pb | D:\Windows\WinSxS\Temp\InFlight\6d5b07d849eeda01310200009c33e459\amd64_microsoft-hyper-v-vstack-vmms_31bf3856ad364e35_10.0.22621.3810_none_16518853daa30e48\r\ | 8/13/2024 00:03 | 609 KB | Poor | This file is overwritten with "D:\ProgramData\Dell.UserMode\AlienFXSubAgent SubAgent\S-1-5-21-1361031500-1602573 |
| vmms.exe | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\doomed\ | 6/26/2024 09:43 | 2,499 KB | Poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| 1119 | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\doomed\ | 8/15/2024 07:57 | 9 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| 12480 | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\doomed\ | 8/15/2024 08:00 | 8 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Microsoft\Edge Dev\User Data\Default\Preferences |
| 15815 | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\doomed\ | 8/15/2024 08:21 | 2,237 KB | Very poor | |
| 49978 | D:\?\ | 7/28/2024 05:39 | 218 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 1823ACEA16CCCD9D89B9F6B... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 02:38 | 37 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 276D6EC4E0DF80B21F2408CBC... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:26 | 1,054 KB | Very poor | This file is overwritten with "D:\Windows\ServiceProfiles\NetworkService\AppData\Local\Microsoft\Windows\DeliveryC |
| 28D0D44C306B287F63142A3332... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/26/2024 11:44 | 14 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 36EFF5868A03405558AA2250CF... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 17:01 | 8 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 381145E60737B49F4E08B5304B3... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/13/2024 14:08 | 14 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 4234746B6AE0DE3DAD6A22040... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/13/2024 15:41 | 86 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| 52DB6D706604DAA45BD6489D6... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 09:23 | 12 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 591375677E0703491F4C9E10BF3... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/15/2024 07:57 | 20 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile.log" |
| 5EC3F08A733995CCA882B4A497... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 6/17/2024 08:46 | 16 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 651D85EB0EFE14FEE1B5DA3B... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:28 | 596 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Roaming\Mozilla\Firefox\Profiles\sso65ay0.default-releas |
| 7DCAE155E9E6468D3826B06F8B9... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:28 | 13 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 844663045076854019EB79648B... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 09:23 | 10 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| 889D9AC6F236556248038FCF69C... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 6/17/2024 09:10 | 484 KB | Very poor | This file is overwritten with "D:\Program Files\Teamviewer\outlook\TeamViewerMeetingAddinShim.dll" |
| 9CB84490B8E79899860656C787... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 7/27/2024 06:27 | 12 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| A3366E27B3FC8D83E91BF197215... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 09:23 | 72 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| General.dll | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\wow64_microsoft-windows-a...ence-mitigations-c3_31bf3856ad364e35_10.0.22621.1_none_780eaec41a6990b5\ | 5/6/2022 22:20 | 2,404 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\LocalLow\Intel\ShaderCache\1e1b30db48324800397b225f |
| appserverai.dll | D:\?\amd64_microsoft-windows-s..stack-termsrv-extra_31bf3856ad364e35_10.0.22621.3801_none_f28b3c20bb6aca11\ | 5/24/2024 20:58 | 145 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| caches.sqlite-shm | D:\?\cache\ | 7/28/2024 00:55 | 32 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| CDD4E5966B85EB5076221C504F... | D:\Users\Administrator\AppData\Local\Mozilla\Firefox\Profiles\sso65ay0.default-release\cache2\entries\ | 8/14/2024 17:01 | 10 KB | Very poor | This file is overwritten with "D:\Program Files\TeamViewer\TeamViewer15_Logfile_OLD.log" |
| d2dl.dll | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\amd64_microsoft-windows-d2d_31bf3856ad364e35_10.0.22621.1_none_0932b2784faf2971\ | 5/6/2022 22:19 | 5,949 KB | Very poor | This file is overwritten with "D:\ProgramData\Intel\DSA\Logs\Service\Service20240814.log |
| d3d12SDKLayers.dll | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\amd64_microsoft-windows-directx-d3d12sdklayers_31bf3856ad364e35_10.0.22621.1_none_433af0384fbfdcff5\ | 5/6/2022 13:47 | 5,296 KB | Very poor | This file is overwritten with "D:\Windows\WinSxS\amd64_microsoft-windows-p..s-developer-library_31bf3856ad364e35 |
| DXCap.exe | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\amd64_microsoft-windows-directx-graphics-tools_31bf3856ad364e35_10.0.22621.1_none_9ba994da844fc765\ | 5/6/2022 13:39 | 895 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Microsoft\Office\SolutionPackages\f70524a59b483| |
| edgehtml.dll | D:\Windows\WinSxS\Temp\InFlight\50e6b2e3e16bda016a030000402ca84e\wow64_microsoft-windows-ie-htmlrendering_31bf3856ad364e35_11.0.22621.3007_none_41603132fb75c814\ | 1/9/2024 12:37 | 19,893 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Google\Chrome\User Data\Default\Cache\Cache_E |
| ExplorerFrame.dll | D:\Windows\WinSxS\Temp\InFlight\50e6b2e3e16bda016a030000402ca84e\wow64_microsoft-windows-explorerframe_31bf3856ad364e35_10.0.22621.3007_none_ace2140723a8bbe9\ | 1/9/2024 12:36 | 1,928 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Microsoft\Edge\User Data\Default\Local Extension |
| FaceDetectorResources.dll | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\amd64_dual_hellopface.inf_31bf3856ad364e35_10.0.22621.1_none_9cd3bc14fc68a320\ | 5/6/2022 13:30 | 17,203 KB | Very poor | This file is overwritten with "D:\Users\Robert\AppData\Local\Microsoft\OneDrive\logs\ListSync\Business1\microsoftNu |
| SettingSync.exe | D:\Windows\WinSxS\Temp\InFlight\a7b26f0576dfda016d0300005c61148e\amd64_microsoft-windows-ieframe_31bf3856ad364e35_11.0.22621.3672_none_8831754a53348d28\ | 5/30/2024 08:07 | 480 KB | Very poor | This file is overwritten with "D:\Program Files\Microsoft OneDrive\24.146.0721.0003\LogImages\RNResources\resource |
| VUPKDIC.DLL | D:\Windows\WinSxS\Temp\InFlight\64e8d15da2b2da01f2030000449306c\wow64_microsoft-windows-d..njifinderdictionary_31bf3856ad364e35_10.0.22621.2506_none_3045d03565d1f719\ | 1/9/2024 12:37 | 545 KB | Very poor | This file is overwritten with "D:\Windows\WinSxS\amd64_microsoft-windows-userdeviceregistration_31bf3856ad364e35 |
| LockApp.exe | D:\Windows\WinSxS\Temp\InFlight\dfad2e28095fda01650400009c15e855\amd64_microsoft-windows-lockapp.appxmain_31bf3856ad364e35_10.0.22621.1_none_4905de3cc7b00ba1\ | 5/6/2022 22:19 | 3,109 KB | Very poor | This file is overwritten with "D:\Program Files\WindowsApps\microsoft.windowscommunicationsapps_16005.14326.22| |
| mmce_office.dll | D:\?\ | 6/30/2024 13:00 | 5,920 KB | Very poor | This file is overwritten with "D:\Program Files (x86)\Microsoft\EdgeCore\129.0.2766.0\Locales\ga.pak" |
| mmce_office.dll | D:\?\ | 5/6/2022 22:19 | 132 KB | Very poor | This file is overwritten with "D:\Users\Administrator\AppData\Local\Microsoft\Edge Dev\User Data\Default\Preferences |
| mprapi.dll | D:\Windows\WinSxS\Temp\InFlight\d525f99ce5a6da0173020000501698c1\amd64_microsoft-windows-mprapi_31bf3856ad364e35_10.0.22621.3672_none_75a250a046c2cb78\ | 5/6/2022 22:19 | 764 KB | Very poor | This file is overwritten with "D:\Program Files\WindowsApps\microsoft.windows.photos_2024.11070.31001.0_x64__8wek |
| scms.dll | D:\Windows\WinSxS\Temp\InFlight\6d6b07d849eeda01310200009c33e459\amd64_microsoft-windows-icm-base_31bf3856ad364e35_10.0.22621.3672_none_029edf0c0504253b\ | 5/30/2024 08:06 | 261,544 KB | Very poor | This file is overwritten with "D:\Program Files\WindowsApps\Microsoft.Windows.Photos_2024.11070.31001.0_x64__8wek |
| msedge.dll | D:\Windows\WinSxS\Temp\InFlight\b0808903f874da01e3010000b40b281d\amd64_microsoft-edge-webview_31bf3856ad364e35_10.0.22621.3007_none_72fe7b4806349259\ | 1/9/2024 12:36 | | | |

very completed in 0.09 second. Total recovered 5 file(s): fully recovered 5 file(s), partly recovered 0 file(s).

Recover
Check for updat

12:23 PM
9/15/202

No preview available

Preview  Info  Header

# EXHIBIT 14

*Recovered TeamViewer Session File (session.json) — Unauthorized Remote Access Artifact*

**Source:** Forensic recovery from Plaintiff's father's device (Recuva scan, Exhibit 13)

**Date of Session:** August 14, 2024, 13:19:40 UTC (12 days prior to Plaintiff's detention)

**Contents:** TeamViewer session.json metadata file documenting an unauthorized remote access session, including a globally unique Session ID (sid: 5087706b-cc1a-436d-8499-53b769dfa7a5) traceable to the originating account via TeamViewer GmbH server logs.

[See attached native session.json artifact]

# EXHIBIT 15

*Sworn Court Affidavits — Monique Jones, LMSW (B29 Application + B31 Affidavit)*

**Document 1:** B29 Application for Temporary Mental Health Services

**Document 2:** B31 Affidavit of Applicant

**Filed With:** Harris County Probate Court Mental Health No. 4 (Case No. i360232)

**Date:** August 27, 2024

**Applicant:** Monique Jones, LMSW (Clinical Case Management, Ben Taub Hospital)

NO. **360232**



THE STATE OF TEXAS
FOR THE BEST INTEREST
AND PROTECTION OF
R.V.K/██████1990/34YO/W/M

### APPLICATION FOR TEMPORARY MENTAL HEALTH SERVICES

Now comes **Monique Jones, LMSW** an adult person, hereinafter called "Applicant" and respectfully presents this application for Court-Ordered Temporary Mental Health Services and in support thereof respectfully shows unto the Court based upon information and belief the following:

1. That **Robert Van Kirk** hereinafter referred to as the "Proposed Patient", is a resident of/or may be found in Harris County of this State, at **Ben Taub Hospital**, in the city of Houston, Harris County, Texas.
2. That the Proposed Patient is/is not charged with a criminal offense.
3. That the Proposed Patient is mentally ill; and as a result of such mental illness the Proposed Patient:

   ☐ is likely to cause serious harm to himself;
   ☒ is likely to cause serious harm to others; or is
   ☒ (i) is suffering severe and abnormal mental, emotional or physical distress;
   (ii) is experiencing substantial mental or physical deterioration of his ability to function independently, except for reasons of indigence, to provide for the proposed patient basic needs; including food, clothing, health, or safety; and
   (iii) is not able to make a retinal and informed decision as to whether to submit to treatment.

   Such harm may be demonstrated either by the person's behavior or by evidence of severe emotional distress and deterioration in his mental condition to the extent that the person cannot remain at liberty.

4. That for the Proposed Patient's own welfare and protection or for the protection of others he/she requires court-ordered temporary mental health services.
5. That the Proposed Patient present a substantial risk of serious physical harm, if not immediately restrained.
6. Attached hereto and made a part of this application is the affidavit of applicant setting forth the specific facts which support this application based upon specific recent behavior, over acts, attempts, or threats.

SIGNED this 27 day of August 2024.

_____

VAN KIRK, ROBERT
MRN: ██████
DOB: ████1990 (34 yrs)  HAR: ████████
Service Date: 8/26/24   Sex: Male

H
A
R
R
I
S

STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared **Monique Jones, LMSW** known to me to be the person whose name is subscribed to the foregoing, and who being by me first duly sworn, on his/her oath made the above and foregoing statements for the purpose therein expressed evidencing the same by his/her signature, to certify which I have affixed my hand and seal of office, this the 27 day of August, 2024.



_____
Notary Public in and for the State of Texas
Revision LKC1/9/2019

TALIA HORN
NOTARY PUBLIC, STATE OF TEXAS
DI 134901463
COMM. EXP. 05-14-2028

# 360232

B31 Affidavit – Application for Temporary or Extended Mental Health Services – Sec 32.

NO._____



THE STATE OF TEXAS
FOR THE BEST INTEREST
AND PROTECTION OF

**Van Kirk, Robert**▨▨▨**/1990/34yo/W/M**

## AFFIDAVIT OF APPLICANT

Before me the undersigned authority personally appeared **Monique Jones, LMSW**, known to me to be the person whose signature appears below, who, after being duly sworn by me, upon his/her oath stated as follows:

My name is **Monique Jones, LMSW**. That my address is **1504 Taub Loop Houston, TX 77030**.

That on or about the **27** day of **August**, **2024**. I saw the proposed patient do the following:

**Patient was brought in by police for emergency psychiatric treatment by police. Patient appears to be delusional and believes that he is being cyber hacked for his identity. Patient appears to be paranoid with rapid speech and constant wondering eyes. Patient attempted to elope from the psychiatric unit. .**

That on or about the **27** day of **August**, **2024**. I heard the proposed patient say as follows:

**Patient stated during this writer's assessment, "Someone is using my electronic devices to steal my identity and you are not doing anything." "This is not a real hospital this has been put together, by the people trying to take my identity.".**

That I have had the opportunity to watch the proposed patient recently, and I have seen him/her act as follows:

**Patient was witnessed to be a danger to himself, attempting elope from the locked unit. Patient believes that persons on the other end of the phone are impersonating to be 911 operators and his parents..**

I understand that should sufficient probable cause not exist to restrain the Proposed Patient until the time of trial, he/she will be released pending final hearing.

SIGNED this **27** day of **August**, 20 **24** .

_____
Applicant

| VAN KIRK, ROBERT | | H |
|---|---|---|
| MRN: ▨▨ HAR: ▨▨ | | A |
| DOB: ▨▨1990 (34 yrs) Sex: Male | | R |
| Service Date: 8/26/24 | | R |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ | | I |
| | | S |

STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared **Monique Jones, LMSW** known to me to be the person whose name is subscribed to the foregoing, and who being by me first duly sworn, on his/her oath made the above and foregoing statements for the purpose therein expressed evidencing the same by his/her signature, to certify which I have affixed my hand and seal of office, this the **27** day of **August**, 20 **24** .

_____
Notary Public in and for the State of Texas

*Revision LKC12/28/2018*



TALIA HORN
NOTARY PUBLIC, STATE OF TEXAS
ID 134901463
COMM EXP. 05-14-2028

# EXHIBIT 16

*Sworn Certificate of Medical Examination (F25) — Dr. Valeria Contreras*

**Document:** F25 Certificate of Medical Examination with OPC — Temporary

**Filed With:** Harris County Probate Court Mental Health No. 4 (Case No. i360232)

**Date:** August 27, 2024

**Examining Physician:** Valeria Contreras, MD (Ben Taub General Hospital)

F25 Certificate of Medical Examination with OPC - Temporary - Section 33 **560232**

NO._____



THE STATE OF TEXAS
FOR THE BEST INTEREST
AND PROTECTION OF
Van Kirk, Robert WM  1990

## CERTIFICATE OF MEDICAL EXAMINATION

I, the undersigned, a physician as defined in the Texas Health and Safety Code, Section 571.003(18), do hereby certify as follows that:

1. My name is Valeria Contreras MD
2. My address is Ben Taub General Hospital 1504 Taub Loop Houston, TX 77030
3. This patient was warned by me as to the nonconfidential nature of this examination.
4. I examined Robert Van Kirk _____ (hereinafter referred to as Patient)
   on the 21 day of August, 2024
5. Patient's address is Ben Taub General Hospital
6. Patient has been under my care for 1 day 8/27/24
7. The treatment, if any, given by me or administered at my direction to Patient is as follows:
   Hospitalization, Antipsychotic medication
8. My diagnosis of the physical and mental condition of Patient based upon reasonable medical probability is:
   Psychiatric or Substance Use Diagnosis:
   Unspecified psychotic disorder
   Personality Disorder and Intellectual Diagnosis:
   Deferred
   Medical Diagnosis:
   None
9. I am of the opinion that Patient is mentally ill and as indicated by an "X" below as a result of that mental illness the examined person is:
   - ☐ likely to cause serious harm to himself;
   - ☒ likely to cause serious harm to others: or is
   - ☒ (i) suffering severe and abnormal mental, emotional, or physical distress;
     (ii) experiencing substantial mental or physical deterioration of his ability to function independently, except for reasons of indigence, to provide for the proposed patient's basic needs; including food, clothing, health, or safety; and
     (iii) not able to make a rational and informed decision as to whether to submit to treatment.
   Furthermore, the detailed factual basis of such opinion is as follows:
   He is extremely paranoid, believes hospital staff has kidnapped him, required emergency medication, kicked nurse.
10. I am of the opinion that the Patient, because of his/her mental illness, presents a substantial risk of serious harm to self or others if not immediately restrained; that the detailed basis for such as follows:
    He is aggressive due to severe paranoia, kicked a nurse and believes hospital has kidnapped him.
11. Emergency detention is the least restrictive means by which the necessary restraint may be effected, that the facts which form the basis for my medical opinion as to Patient's imminent risk of harm unless immediately restrained are:
    He exhibits poor insight and judgment due to active psychosis leading to aggressive behavior.

SIGNED this 27 day of August, 2024.

_____
Examining Physician

VAN KIRK, ROBERT
MRN: ███████  HAR: ███████
DOB: ███ 1990 (34 yrs)  Sex: Male
Service Date: 8/26/24

H
A
R
R
I
S

STATE OF TEXAS
COUNTY OF HARRIS

Before me, the undersigned authority, on this day personally appeared Valeria Contreras MD known to me to be the person whose name is subscribed to the foregoing, and who being by me first duly sworn, on his/her oath made the above and foregoing statements for the purpose therein expressed evidencing the same by his/her signature, to certify which I have affixed my hand and seal of office, this the 27 day of August, 2024.

_____
Notary Public in and for the State of Texas

TALIA HORN
NOTARY PUBLIC, STATE OF TEXAS
D# 134901463
COMM. EXP. 05-14-2028

Revision LKC20190109

# EXHIBIT 17

*ED Care Timeline: BARS Assessment, Nursing Narrative, and B52 Chemical Restraint Records (MED001 pp. 32–33)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Pages 32–33

**Date/Time:** August 27, 2024, 03:34–03:58 AM

**Authors:** RN Balbir Singh Aneja (Crisis Intervention); Dr. Valeria Contreras; RN Jessica Hamblin; R. Bendy (Sitter/Observer)

**Contents:** BARS assessment (Score: 6, "not aggressive"), B52 chemical restraint order, and nursing narrative for the period immediately preceding and following forced medication.



## 08/26/2024 - ED in Emergency Center BT (continued)

### ED Care Timeline (continued)

| Time | Event | Details | Author |
|---|---|---|---|
| 03:34 | CCM Intervention | **Psychosocial counseling**<br>Mental Health: Mental health warrant / EDO (SW consulted for a behavioral health assessment) | Jones, Monique |
| 03:36:50 | Remove Attending | Mackey, Joy M, MD removed as Attending | Mackey, Joy M, MD |
| 03:45 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Unit hallway<br>Patient behavior: Talking with staff<br>Change in behavior: N/A | Bendy, Reginald Lee |
| 03:46 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 1.02 | Epic, Batchuser |
| 03:47:39 | Orders Placed | Medications - haloperidol lactate (HALDOL) injection 5 mg; LORazepam (ATIVAN) 2 mg/mL injection 2 mg; diphenhydrAMINE (BENADRYL) 50 mg/mL injection 50 mg | Contreras, Valeria M, MD |
| 03:48 | ED Notes | (see table below) | Balbir Singh Aneja, Jasmine, RN |

| | 08/27/24 0348 |
|---|---|
| **BARS Assessment** | |
| Is this patient able to follow commands | No |
| Patient behaviors (BARS 1-5) | SA;PV;PF;PAC;BIO;RES;VERTW;PTVER;A (Patient is paranoid, agitated and anxious) |
| Patient behaviors (BARS 6-7) | PTCD;PTNR;PTECA;PTUPT;PTALEDOWC (Patient is insisting on leaving, says that nothing here is real and he is being kidnapped) |
| BARS Score | BARS 6 |
| Intervention(s) | Consider activating a crisis;Medications;Reviewed Medical Status;Decrease Stimuli;Therapeutic communication;Assessed for oral/IM/IV |

Patient pacing on the unit, is restless, paranoid and in distress. States that he does not believe this is a real hospital. Does not believe that the phone on the wall is real. Patient does not believe that the doctors and nurses are real. Patient wants to see the staff's driver's license so he can confirm our "real identity". Patient says he was kidnapped and he is never going to see his family again. Patient was allowed to make a phone call by turning the phone on but patient attempted to call 811, then 911 and then his father and says it doesn't go to voicemail. Patient is extremely paranoid. Unable to reason with the patient. Wants to see the police in the hospital, wants us to pull up the website. Patient is not redirectable at this time. Although he is not aggressive. Emergent medications ordered. Patient did walk into his room but required


**HARRISHEALTH SYSTEM**

## 08/26/2024 - ED in Emergency Center BT (continued)

### ED Care Timeline (continued)

physical hold to medicate him. Spent some time after he was medicated but patient perseverates on being killed and injected with poison and being kidnapped. Patient agreed to stay in bed. Left patient in the care of the primary RN.

Jasmine Balbir Singh Aneja MSN, BSN, PMH-BC, RN
Crisis Intervention Program - Registered Nurse
*3-7930/*3-7928/ *3-7940

| Time | Event | Details | Provider |
|------|-------|---------|----------|
| 03:48 | **BARS Assessment** | **BARS Assessment** <br> Is this patient able to follow commands: No <br> Patient behaviors (BARS 1-5): Signs of overt (physical or verbal) activity; Patient verbalizes feeling annoyed, irritable, frustrated; Patient feels loss of control related to treatment decisions; Pacing; Boisterous; Restlessness; Verbalizes obsessive thoughts or worry; Patient verbalizes wanting to leave; Awake <br> Patient behaviors (BARS 6-7): Patient does not calm down with clear instructions; Patient is not redirectable; Patient is Extremely or continuously active; Patient unable or unwilling to participate in treatment; Patient attempting to leave with EDO or without capacity <br> BARS Score: BARS 6 <br> Intervention(s): Consider activating a crisis; Medications; Reviewed Medical Status; Decrease Stimuli; Therapeutic communication; Assessed for oral/IM/IV | Balbir Singh Aneja, Jasmine, RN |
| 03:50:37 | **Orders Acknowledged** | New - haloperidol lactate (HALDOL) injection 5 mg; LORazepam (ATIVAN) 2 mg/mL injection 2 mg; diphenhydrAMINE (BENADRYL) 50 mg/mL injection 50 mg | Hamblin, Jessica L, RN |
| 03:58 | **EC Psychotropic Med Documentation** | Given - diphenhydrAMINE (BENADRYL) 50 mg/mL injection 50 mg | Hamblin, Jessica L, RN |
| 03:58 | **EC Psychotropic Med Documentation** | Given - haloperidol lactate (HALDOL) injection 5 mg | Hamblin, Jessica L, RN |
| 03:58 | **EC Psychotropic Med Documentation** | Given - LORazepam (ATIVAN) 2 mg/mL injection 2 mg | Hamblin, Jessica L, RN |
| 03:58 | **EC Psychotropic Assessment Complete** | | Hamblin, Jessica L, RN |
| 03:58 | **Medication Given** | haloperidol lactate (HALDOL) injection 5 mg - Dose: **5 mg** ; Route: **Intramuscular** ; Site: **Left Lateral Thigh** ; Scheduled Time: **0348** | Hamblin, Jessica L, RN |
| 03:58 | **Medication Given** | LORazepam (ATIVAN) 2 mg/mL injection 2 mg - Dose: **2 mg** ; Route: **Intramuscular** ; Site: **Left Lateral Thigh** ; Scheduled Time: **0348** | Hamblin, Jessica L, RN |
| 03:58 | **Medication Given** | diphenhydrAMINE (BENADRYL) 50 mg/mL injection 50 mg - Dose: **50 mg** ; Route: **Intramuscular** ; Site: **Left Lateral Thigh** ; Scheduled Time: **0348** | Hamblin, Jessica L, RN |

# EXHIBIT 18

*Initial Intake Assessment, BARS 5 Baseline, and Nursing Narrative (MED001 p. 18)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Page 18

**Date/Time:** August 26, 2024, 21:15 PM

**Author:** Balbir Singh Aneja, MSN, BSN, PMH-BC, RN (Crisis Intervention Program)

**Contents:** Initial intake nursing assessment, BARS 5 baseline score, and documentation of Plaintiff's request to contact his attorney.



**08/26/2024 - ED in Emergency Center BT (continued)**

ED Care Timeline (continued)

| | |
|---|---|
| Is this patient able to follow commands | Yes |
| Patient behaviors (BARS 1-5) | SA;CI;PV;PF;RES;BIZBAH;A;PWO |
| Intervention(s) | Reviewed Medical Status;Decrease Stimuli;Therapeutic communication;Diversional Activities (Patient is restless, anxious and expressed frustration with the wait times. Patient with pressured speech. Is very hard to interrupt. Patient is paranoid and delusional. Is perseverative on the fact that his computers and phones have been hacked. States he was at verizon all day taking care of it. Patient states he was at Sonic and told the cashier and also reported to the cops that he is unable to call the emergency services as his business associates area jamming his cell tower. Patient states he was asking his mother to keep driving and not go home and she called the police. States he has been compliant with his meds. Does endorse that he took caffeine pills because he did not feel safe to go to sleep. States he recently moved from Arizona and is staying with his parents. Is hesitant to sign his bill of rights. Wants to call his lawyer. Is convinced that the police officer was not "the right person" to talk to. Reassured the patient. Educated him on his legal status and plan of care. Patient is still anxious but verbally redirectable. Sitter at the door. |

Jasmine Balbir Singh Aneja MSN, BSN, PMH-BC, RN
Crisis Intervention Program - Registered Nurse
*3-7930/*3-7928/ *3-7940

| | | | |
|---|---|---|---|
| 21:15 | **Predictive Model Scores** | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 1.67 | Epic, Batchuser |
| 21:15 | **Custom Formula Data** | **BARS Assessment**<br>BARS Score:  BARS 5 | Balbir Singh Aneja, Jasmine, RN |

# EXHIBIT 19

*Psychiatric Diagnosis, Mother's Independent Corroboration, and 'Folie à Deux'*
*Dismissal (MED001 pp. 57, 40)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Pages 57 and 40

**Date/Time:** August 27, 2024

**Author:** Valeria Contreras, MD

**Contents:** Clinical note documenting psychiatric diagnosis, F25 authorization, Plaintiff's mother's independent corroboration of the cyberattack, and Dr. Contreras's "? folie à deux" notation entered in response to that corroboration.



| | | | |
|---|---|---|---|
| | | Van | |
| | MRN: ▮▮▮▮ | DOB: XX/XX/1990 | Sex.:M |
| | Adm: | /C 8/27/2024 | |
| | Medicaid # | | |

## 08/26/2024 - ED in Emergency Center BT (continued)

### ED Care Timeline (continued)

| Time | Event | Details | Provider |
|---|---|---|---|
| 06:39:51 | Charting Complete | | Mackey, Joy M, MD |
| 06:40:27 | Orders Discontinued | Continuous 1:1 Supervision (08/26/24 2001) | Contreras, Valeria M, MD |
| 06:45 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: N/A | Bendy, Reginald Lee |
| 06:46 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 0.45 | Epic, Batchuser |
| 07:00 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: No | Ononiwu, Chuka |
| 07:01 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 0.45 | Epic, Batchuser |
| 07:05 | Psych Comment | **Other flowsheet entries**<br>Other: mom bringing CPAP, ?folie a deux | Contreras, Valeria M, MD |
| 07:08:13 | Orders Acknowledged | Discontinued - Continuous 1:1 Supervision | Hamblin, Jessica L, RN |
| 07:08:19 | Handoff Transfer | **Handoff**<br>Report Given To: M Sebastian Rn<br>Report Received From: Hamblin RN | Hamblin, Jessica L, RN |
| 07:15 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 0.45 | Epic, Batchuser |
| 07:15 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: No | Scranton, Ericka Yvette |
| 07:20:26 | Remove Nurse | Hamblin, Jessica L, RN removed as Registered Nurse | Hamblin, Jessica L, RN |
| 07:20:26 | Assign Nurse | Sebastian, Meenu, RN assigned as Registered Nurse | Hamblin, Jessica L, RN |
| 07:22 | Psych Comment | **Other flowsheet entries**<br>T/M/E/D: T; E<br>Psych Dispo: HCPC, HBH | Contreras, Valeria M, MD |
| 07:24 | ED Notes | (see note below) | Delphin, Kristen Marie, RN |

| ROUTINE ROUNDS BEST: KRISTEN/ JOSE | 08/27/24 0724 |
|---|---|
| **Crisis Intervention** | |
| Contact Initiated | Rounds |
| Objective | Other (Comment)<br>Patient is resting quietly with eyes closed, appears asleep. Respirations even and unlabored. |
| Problem identification / Action taken | Other (Comment)<br>No distress noted. |

# EXHIBIT 20

*Sitter Handoff Checklist — 'No Elopement Attempt' (MED001 p. 49)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Page 49

**Date/Time:** August 27, 2024, 18:19 PM

**Author:** Ononiwu, Chuka (Sitter)



## 08/26/2024 - ED in Emergency Center BT (continued)

### ED Care Timeline (continued)

| Time | Type | Details | Provider |
|---|---|---|---|
| 18:03:12 | Interfaced Flowsheet Data | **Vitals**<br>BP: 108/84<br>Temp: 97.5 °F (36.4 °C)<br>Resp: 16<br>SpO2: 99 %<br>**Vitals**<br>MAP (mmHg) Non-Invasive: 91 mmHg | Scranton, Ericka Yvette |
| 18:03:12 | Complex Vital Signs | **Other flowsheet entries**<br>Restart Vitals Timer: Yes | Ononiwu, Chuka |
| 18:03:12 | Triage Vitals | **Triage Vitals**<br>Pulse: 92 | Ononiwu, Chuka |
| 18:03:12 | Custom Formula Data | **Other flowsheet entries**<br>Duration of Labor: 0 hr 0 min | Ononiwu, Chuka |
| 18:15 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: No | Ononiwu, Chuka |
| 18:16 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 1.02 | Epic, Batchuser |
| 18:19 | Sitter Handoff | **Sitter Handoff**<br>Has there been an elopement attempt?: No<br>Has there been a suicide attempt?: No<br>Have the belongings been inventoried, secured and documented in Epic?: Yes<br>Safe Environment Verified: Yes<br>Sitter #1: ERIKA,CHUKA<br>Sitter #2: REGGIE,WOODS<br>Has the patient Bill of Rights been completed?: Yes | Ononiwu, Chuka |
| 18:30 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: No | Ononiwu, Chuka |
| 18:31 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 1.02 | Epic, Batchuser |
| 18:45 | Predictive Model Scores | **Other flowsheet entries**<br>Early Detection of Sepsis Score: 1.02 | Epic, Batchuser |
| 18:45 | Patient Interventions | **Special Observation Checklist**<br>Staff action: Observed / checked<br>Location: Room<br>Patient behavior: Lying down<br>Change in behavior: No | Ononiwu, Chuka |

# EXHIBIT 21

*Clinical Note and Addendum — Dr. Valeria Contreras*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Page 57

**Date/Time:** August 27, 2024

**Author:** Valeria Contreras, MD

[See attached 1-page document]



**08/26/2024 - ED in Emergency Center BT (continued)**

Clinical Notes (continued)

**DSM V Dx**: Unspecified psychotic d/o
R/o Stimulant induced

**GAF**: 25

**Plan**:
-Pt medically cleared
-F25 completed for involuntary psychiatric hospitalization
-SW completed affidavit for EDO
-Pt unwilling to consent for psychotropic medication at this time

**Signature**:
Valeria Contreras, MD, 38576

Legend:
SI=suicidal ideation
SA=suicide attempt
HI=homicidal ideation
AH=auditory hallucinations
IOR=ideas for reference
VH=visual hallucinations
RTIS=responding to internal stimuli
SIMD=substance induced mood disorder
SIPD=substance induced psychotic disorder
SIAD=substance induced anxiety disorder
GMC=general medical condition
2/2=secondary to
UTA= Unable to assess
WNL = Within normal limits
PTSD = post traumatic stress disorder
GAD = generalized anxiety disorder
MDD = major depressive disorder
BPD = Borderline personality disorder

Addendum:

I received a call from pt's mother this morning regarding patient. She had been notified by police that he was brought to the hospital. She states that pt has been stressed out recently because of an issue that started at his job. She states he was kicked off the board of the company and that since pt and his parents have been dealing with a cyber attack with perceived intention of seeking information in order to fully oust pt from the company. She states she and her husband have also had issues with their phones and internet at their home and they got new phones just recently because of this. She provided their new phone numbers as 832-687-5042 (hers) and 832-687-5078 (pt's father). She states that pt uses a CPAP machine to sleep with due to sleep apnea and that she will bring it with her as she plans to come visit pt today. She states no other physical health problems that she is aware of.

Transfer center notified of update of use of CPAP to inform receiving facilities.

# EXHIBIT 22

*Social Work Assessment — Monique Jones, LMSW (MED001 p. 59)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Page 59

**Date/Time:** August 27, 2024, 03:34–03:43 AM

**Author:** Monique Jones, LMSW 189770 (Clinical Case Management, Emergency Department)

**Contents:** Social work assessment note documenting Plaintiff's crime report and Jones's decision to execute the B31 affidavit for involuntary commitment.



Van Kirk, Robert
MRN: ▮▮▮▮▮    DOB: ▮▮/1990  Sex :M
Adm: 8/26/2024 , D/C 8/27/2024
Medicaid #

## 08/26/2024 - ED in Emergency Center BT (continued)

**Clinical Notes (continued)**

| Chaplaincy Assessment (Emotional Needs) | |
|---|---|
| Emotional Needs | Anxiety |
| **Chaplaincy Assessment (Spiritual Needs)** | |
| Patient Expressing | Discouragment |
| **Chaplaincy Assessment (Relational Needs)** | |
| Relational Needs | Lack of trust in care team |
| **Chaplaincy Interventions** | |
| Emotional Needs | Non-anxious, non-judgmental presence provided |
| **Summary** | |
| Emotional resources of patient | 3 |
| Spiritual resources of patient | 3 |
| Relational resources of patient | 3 |
| Emotional resources of significant other | N/A |
| Spiritual resources of significant other | N/A |
| Relational resources for signigicant other | N/A |

Electronically signed by Scott, Demiko at 8/26/2024  9:33 PM

**Jones, Monique at 8/27/2024 0335**

| | **08/27/24 0334** |
|---|---|
| **Psychosocial counseling** | |
| Mental Health | Mental health warrant / EDO *(SW consulted for a behavioral health assessment)* |

SWCM greeted patient and identified using name and DOB. SW consulted for a behavioral health assessment. SW arrived at bedside patient states, "I'm confused why no one has called cyber security yet" Patient reports that he is being hacked on all of his electronic devices to have his identity stolen. Patient states that he was working with some business partners and they were working with some investors that may have an interest in taking his identity. Patient has rapid speech with constant roaming eyes throughout the entire assessment. Patient appears to be paranoid, SW will complete an affidavit for acute involuntary hospitalization.

Monique Jones, LMSW 189770
Clinical Case Management
Emergency Department
EXT. 39724/39725/39720

Electronically signed by Jones, Monique at 8/27/2024  3:43 AM

---

# EXHIBIT 23

*Laboratory Results — CBC and Comprehensive Metabolic Panel (MED001 p. 23)*

**Source:** Ben Taub Hospital Inpatient Records (MED001), Page 23

**Date/Time:** Collected August 26, 2024, 22:45; Final Results August 27, 2024, 00:04

**Lab:** Harris Health System (Ben Taub Hospital)

**Contents:** CBC and Comprehensive Metabolic Panel. All values within normal limits. Basis for Dr. Mackey's 01:41 AM medical clearance ("Labs reassuring will medically clear").



## 08/26/2024 - ED in Emergency Center BT (continued)

### ED Care Timeline (continued)

| | | | |
|---|---|---|---|
| 23:57:25 | **CBC/Diff Resulted** | **Abnormal Result** Collected: **8/26/2024 22:45** Last updated: **8/26/2024 23:57** Status: **Final result** WBC: **7.2 10\*3/uL** [Ref Range: 4.5 - 12.0] RBC: **4.84 10\*6/uL** [Ref Range: 4.60 - 6.20] Hemoglobin: **15.2 g/dL** [Ref Range: 14.0 - 18.0] Hematocrit: **44.2 %** [Ref Range: 40.0 - 54.0] MCV: **91.3 fL** [Ref Range: 82.0 - 92.0] MCH: **31.4 pg** ^ [Ref Range: 27.0 - 31.0] MCHC: **34.4 g/dL** [Ref Range: 32.0 - 36.0] RDW: **41.8 fL** [Ref Range: 35.1 - 43.9] Platelet: **277 10\*3/uL** [Ref Range: 150 - 400] Mean Platelet Volume: **10.6 fL** [Ref Range: 9.4 - 12.4] Percent NRBC: **0.0 %** [Ref Range: 0.0 - 0.0] Neutrophil: **71.6 %** ^ [Ref Range: 34.0 - 67.9] Lymphs: **19.6 %** ⌄ [Ref Range: 21.8 - 50.0] Monocytes: **7.5 %** [Ref Range: 5.3 - 12.0] Eos: **0.4 %** ⌄ [Ref Range: 0.8 - 5.0] Basos: **0.8 %** [Ref Range: 0.2 - 1.2] Immature Granulocytes: **0.1 %** [Ref Range: 0.0 - 0.5] Neutrophils (Absolute): **5.17 10\*3/uL** [Ref Range: 1.78 - 5.36] Lymphs (Absolute): **1.42 10\*3/uL** [Ref Range: 1.32 - 3.57] Monocytes(Absolute): **0.54 10\*3/uL** [Ref Range: 0.30 - 0.82] Eos (Absolute): **0.03 10\*3/uL** ⌄ [Ref Range: 0.04 - 0.54] Baso (Absolute): **0.06 10\*3/uL** [Ref Range: 0.01 - 0.08] Immature Grans (Abs): **0.01 10\*3/uL** [Ref Range: 0.00 - 0.03] Absolute NRBC: **0.00 10\*3/uL** [Ref Range: 0.00 - 0.11] | Lab, Background User |

| 8/27/2024 | Event | Details | User |
|---|---|---|---|
| 00:00 | **Predictive Model Scores** | **Other flowsheet entries** Early Detection of Sepsis Score: 1.05 | Epic, Batchuser |
| 00:00 | **Patient Interventions** | **Special Observation Checklist** Staff action: Observed / checked Location: Room Observation Status: Group Continuous Supervision Patient behavior: Sitting Change in behavior: No | Lawal, Yetunde A |
| 00:04:39 | **Lab Resulted** | (Final result) COMPREHENSIVE METABOLIC PANEL | Lab, Background User |
| 00:04:39 | **Comprehensive Metabolic Panel Resulted** | Collected: **8/26/2024 22:45** Last updated: **8/27/2024 00:04** Status: **Final result** Sodium: **138 mmol/L** [Ref Range: 136 - 145] Potassium: **4.3 mmol/L** [Ref Range: 3.5 - 5.1] Chloride: **101 mmol/L** [Ref Range: 98 - 107] CO2: **27 mmol/L** [Ref Range: 21 - 31] Glucose: **90 mg/dL** [Ref Range: 70 - 110] Calcium: **9.4 mg/dL** [Ref Range: 8.6 - 10.3] Urea Nitrogen: **12 mg/dL** [Ref Range: 7 - 25] Creatinine: **0.9 mg/dL** [Ref Range: 0.7 - 1.3] eGFR: **115 mL/min/1.73 m2** [Ref Range: >=90] Alkaline Phosphatase: **80 U/L** [Ref Range: 34 - 104] ALT: **23 U/L** [Ref Range: 7 - 52] AST: **20 U/L** [Ref Range: 13 - 39] Bilirubin, Total: **0.6 mg/dL** [Ref Range: 0.2 - 1.2] Total Protein: **7.0 g/dL** [Ref Range: 6.0 - 8.3] Albumin: **4.5 g/dL** [Ref Range: 4.2 - 5.5] Anion Gap: **10 mmol/L** [Ref Range: 5 - 16] | Lab, Background User |
| 00:15 | **Patient Interventions** | **Special Observation Checklist** Staff action: Observed / checked Location: Room Observation Status: Group Continuous Supervision Patient behavior: Sitting Change in behavior: No | Lawal, Yetunde A |
| 00:30 | **Predictive Model Scores** | **Other flowsheet entries** Early Detection of Sepsis Score: 1.05 | Epic, Batchuser |
| 00:30 | **Patient Interventions** | **Special Observation Checklist** Staff action: Observed / checked Location: Unit hallway Observation Status: Group Continuous Supervision Patient behavior: Sitting Change in behavior: No | Lawal, Yetunde A |

# EXHIBIT 24

*Detective Chaney Deflects Telephony Crime Report to 'Local Police Station'*

**Source:** Email correspondence between Plaintiff and HPD Detective Jacorey D. Chaney

**Date:** August 11, 2025

**Agency:** Houston Police Department

**Contents:** Detective Chaney refers Plaintiff's federal telecommunications crime report to the "local police station," declining to investigate.

 Gmail                                    **Robert Van Kirk <robertwaynevankirk@gmail.com>**

## [#54503557], Urgent Data Preservation Request – TeamViewer and Sentry Logs (HPD Cyber Investigation Case #1198816-24)

**Chaney, Jacorey D.** <Jacorey.Chaney@houstonpolice.org>                Mon, Aug 11, 2025 at 12:41 PM
To: Robert Van Kirk <robertwaynevankirk@gmail.com>

Good Afternoon, I do not have a email address for the property room, but the phone number is 832-394-4000. If you would like to file a separate incident report, please go to your local police station or contact the non-emergency number at 713-884-3131, so your report can be taken.

Best regards,

Det. Jacorey D Chaney
Houston Police Department
Property & Financial Crimes
Cybercrimes Unit
Security+
Off: 713-308-0988
Cell: 281-757-5102



**From:** Robert Van Kirk <robertwaynevankirk@gmail.com>
**Sent:** Monday, August 11, 2025 11:32 AM
[Quoted text hidden]

[Quoted text hidden]

 Gmail    **Robert Van Kirk <robertwaynevankirk@gmail.com>**

---

## [#54503557], Urgent Data Preservation Request – TeamViewer and Sentry Logs (HPD Cyber Investigation Case #1198816-24)

---

**Robert Van Kirk** <robertwaynevankirk@gmail.com>    Mon, Aug 11, 2025 at 11:32 AM
To: "Chaney, Jacorey D." <Jacorey.Chaney@houstonpolice.org>

Hi Det. Chaney,

Is there an email I can contact the department that has my data at specifically?

Also I have attached an additional police report I would like to file, and my mother and Nikandro Pacheco are also planning on submitting their independent reports soon as well.

Robert Van Kirk
[Quoted text hidden]

---

 **Verizon-Police-Report.pdf**
85K

# EXHIBIT 25

*Houston Police Department General Order 500-12: Response to Mental Health Incidents*

**Issuer:** Houston Police Department (Chief Art Acevedo)

**Date of Issue:** January 28, 2021

**Relevance:** Establishes mandatory policy for mental health responses, including the requirement to use the "least coercive measures" and the mandate to "thoroughly investigate all reported crimes... regardless of any history of or reported mental illness" (§3). Serves as the baseline for the *Monell* failure-to-train and ratification claims.

| General Order | ISSUE DATE: | NO. |
|---|---|---|
| **Houston Police Department** ⛨ | January 28, 2021 | **500-12** |
| | REFERENCE: Supersedes all prior conflicting Circulars and Directives, and General Order 500-12, dated March 21, 2014. | |

## SUBJECT: RESPONSE TO MENTAL HEALTH INCIDENTS

### POLICY

Incidents involving persons displaying symptoms of a mental health crisis may be volatile and unpredictable. In all emergencies stemming from a mental health crisis, department employees shall utilize the least coercive measures to secure the welfare of all those concerned, unite consumers with needed services, and divert them from the criminal justice system whenever appropriate. Employees shall be professional and respond humanely to individuals in a mental health crisis.

Whenever reasonably possible, the department will utilize Crisis Intervention Trained (CIT) officers to respond to incidents or calls for service involving persons displaying symptoms of a mental health crisis. For safety purposes, and when resources allow, two officers shall be dispatched to incidents when available information indicates the involvement of persons who are exhibiting symptoms of a mental health crisis.

This General Order applies to only classified employees and Emergency Communications Division employees.

### DEFINITIONS

***Crisis Intervention Response Team (CIRT).*** A team comprised of a uniformed *CIT* officer partnered with a licensed mental health professional to respond to persons exhibiting a *mental health crisis.*

***Crisis Intervention Trained (CIT) Officer.*** An officer who has successfully completed the Texas Commission on Law Enforcement (TCOLE) 40-hour Mental Health Officer or TCOLE 40-hour *CIT* course.

***Medical Condition.*** For the purposes of this General Order, a *medical condition* is a physical injury, illness, or condition other than a psychological disorder or *mental illness.*

***Mental Health Crisis.*** A condition in which a person is a substantial risk of harm to themselves or others due to a *mental illness.* A substantial risk may be demonstrated by the person's behavior, or by evidence of severe emotional distress and deterioration of the person's mental condition.

***Mental Illness.*** An illness, disease, or condition, other than epilepsy, dementia, substance abuse, or intellectual disability, that substantially impairs a person's thought, perception of reality, emotional process, or judgment, or grossly impairs behavior as demonstrated by recent disturbed behavior. A person with mental illness may not be denied admission or commitment to a mental health facility because the person also suffers from epilepsy, dementia, substance abuse, or intellectual disability.

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #2 |

**Notification of Emergency Detention (NED).** For the purpose of this General Order, a *NED*, which is also referred to as an Emergency Detention Order (EDO), is a standard notification form that allows a Texas peace officer to detain a person who is mentally ill for psychological evaluation because the person is an immediate threat to self or another person. This form, which is available on the department's Intranet Portal, does not require notarization. The *NED* only guarantees an evaluation will be done; it does not guarantee any form of treatment.

## 1  AUTHORITY TO APPREHEND

The authority to apprehend a person in a *mental health crisis* by using the *Notification of Emergency Detention (NED)* is granted by the Texas Health and Safety Code, Section 573.001. A peace officer, without a warrant, may take a person into custody, regardless of age, if the officer has reason to believe and does believe both of the following apply:

a.  The person is a person with *mental illness* and because of that *mental illness* there is a substantial risk of serious harm to the person or others unless the person is immediately restrained, and;

b.  The officer believes that there is not sufficient time to obtain a warrant before taking the person into custody.

A "substantial risk of serious harm to the person or others" may be demonstrated by either of the following:

c.  The person's specific recent behavior, overt acts, attempts, or threats.

d.  Evidence of severe emotional distress and deterioration in the person's mental condition to the extent that the person cannot remain at liberty.

Officers may form the belief that the person meets the above criteria for apprehension based on either of the following:

e.  Information from a credible person.

f.  Conduct of the person or the circumstances under which the person is found.

## 2  PERSONS EXHIBITING A MENTAL HEALTH CRISIS WITHOUT CRIMINAL CHARGES

Officers who take into custody any person exhibiting a *mental health crisis* shall follow the procedures outlined in General Order 500-02, **Handling and Transporting Prisoners and Other Persons.**

If a person who is believed to be in a *mental health crisis* is in need of emergency mental health treatment and the District Attorney's Office does not accept Class B or higher charges, then the officer shall take the person into custody without a warrant. When a person is apprehended under a *NED*, consent of the person is not required. Officers who take a person into custody in this manner shall immediately inform the person in simple, non-technical terms the reason for and location of the detention, that a staff member of the facility shall inform the person of the person's

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #3 |

rights within 24 hours after the person is admitted to a facility, and that the detention could result in a longer period of involuntary commitment.

Officers shall first attempt to utilize the Neuropsychiatric Center (NPC) if there are no co-existing *medical conditions.* If the NPC is on diversion, officers may utilize the services of any hospital with a dedicated emergency department, or, if eligible, the VA Medical Center. A private psychiatric facility may also be utilized if officers have confirmed there is a bed available and the person has an accepted health insurance.

If a person exhibiting a *mental health crisis* also has a co-existing *medical condition* that requires treatment by a medical facility, the person shall be taken directly to a hospital with a dedicated emergency department.

Upon arrival at the appropriate mental health facility, the officer shall complete the *NED* and provide it to the medical staff. Once the person has been accepted by facility staff under emergency detention, the officer shall complete an incident report and return to duty. Officers should be aware that the person shall undergo a preliminary examination by the facility and shall be admitted under emergency detention only if the examining physician believes that the person meets the criteria discussed in Section 1 of this General Order and that emergency detention is the least restrictive means by which the necessary restraint may be accomplished. Officers should be aware that the person shall be released by the facility if the above criteria are not met or within 48 hours, whichever occurs first. Officers shall not file Class C misdemeanor charges if the person is admitted to a treatment facility.

If officers have knowledge that the person taken into custody under a *NED* has been declared a ward by a probate court, the officer shall notify the applicable probate court as soon as practicable.

## Persons Not in Need of Emergency Mental Health Treatment

If a person undergoes preliminary examination by the facility while the officer is present and it is determined that the person is not eligible for emergency detention, the officer shall transport the person back to the location of the person's apprehension, the person's local residence, or another suitable location. The officer shall not transport the person if the person objects to the transportation or if the person wants to voluntarily seek admission for mental health treatment. Any person 16 years of age or older may voluntarily request admission for inpatient mental health treatment. The officer shall not transport the person to a second facility for a second mental health examination.

## Juveniles Exhibiting Mental Health Crisis

In addition to the requirements above, officer shall contact a Juvenile Division supervisor for guidance and to coordinate all juvenile dispositions per General Order 500-06, **Disposition of Arrested Juveniles** when dealing with juveniles exhibiting *mental health crisis.*

When taking a juvenile into custody for emergency detention, officers shall first attempt to utilize the NPC. If the NPC is on diversion, officers may utilize the services of Texas Children's Hospital or any hospital with a dedicated emergency department. Whenever possible, a parent or guardian should accompany the juvenile to the treatment facility. If a person is under the age of 18 and his or her behavior meets the elements for emergency detention under Chapter 573 of

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #4 |
|---|---|---|

the Health and Safety Code, consent of the person or a parent or a guardian is not required. Nevertheless, officers should obtain parental consent whenever possible before transporting a person under the age of 18 for emergency mental health treatment.

A parent or guardian may voluntarily sign the juvenile in for treatment. A private psychiatric facility may also be used if officers have confirmed there is a bed available and if the juvenile has an accepted health insurance.

### Juveniles Not in Need of Emergency Mental Health Treatment

If a person under the age of 18 is transported to NPC or another treatment facility for psychiatric evaluation, but is found not to be in need of immediate mental health treatment, hospital staff will not be able to provide voluntary treatment to juveniles 15 years of age or under without parental consent. For this reason, the officer shall remain with the juvenile until a parent or guardian is contacted and arrives. A person 16 years of age or older may consent to voluntary treatment, with or without the consent of a parent or guardian.

If a parent or guardian of a person under the age of 18 cannot be located, the officer shall contact the Statewide Intake Division of Child Protective Services (CPS) and the Special Victims Division for further instructions. Officers shall list the CPS case number and the name of the person taking the report in the incident report. Because each situation involving a juvenile is different, officers should adhere to the requests of the NPC or other facility staff when releasing custody of a juvenile, with authorization from the Juvenile Division supervisor.

### 3   PERSONS EXHIBITING A MENTAL HEALTH CRISIS WITH CRIMINAL CHARGES

Officers shall thoroughly investigate all reported crimes, including crimes of family violence, regardless of any history of or reported *mental illness*. Officers shall be reminded that only a court of proper jurisdiction may determine the mental competency of a suspect charged with a criminal offense.

When the District Attorney's Office accepts charges (Class B misdemeanor or higher) against an adult who is exhibiting a *mental health crisis*, the officer shall not transport the suspect to the NPC. The officer shall do the following:

a. Follow the procedures outlined in General Order 500-07, **Filing Proper Charges** and General Order 500-02, **Handling and Transporting Prisoners and Other Persons.**

b. Notify the concerned division.

c. Upon arrival at the jail, inform jail personnel that the prisoner is exhibiting a *mental health crisis* and secure the prisoner in accordance with jail procedures. Officers are responsible for the direct care, custody, and control of a prisoner until the prisoner is accepted by jail personnel.

d. Complete the jail booking process required by the jail facility as outlined in General Order 500-08, **Required Booking Information and Procedures.**

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #5 |
|---|---|---|

## Charges Filed Against Juveniles Exhibiting Mental Health Crisis

When the District Attorney's Office accepts charges (Class B misdemeanor or higher) against a juvenile who is exhibiting a *mental health crisis*, the officer shall transport the juvenile suspect to the Juvenile Division for expedited processing. The transporting officer shall then transport the juvenile to the NPC for a mental health evaluation.

If the NPC determines that the juvenile does not require emergency mental health treatment, the officer will receive a *Brief Psychiatric Assessment Form* completed by the NPC personnel documenting any treatment and the release of the juvenile. The officer shall then inform the Juvenile Division of the NPC's mental health determination and transport the juvenile to Harris County Juvenile Probation (HCJP).

If the NPC determines the juvenile requires emergency mental health treatment, the officer shall complete a *NED* for the juvenile suspect, inform the NPC personnel that the juvenile suspect has pending charges, and advise the Juvenile Division. Juvenile Division personnel will contact HCJP and confirm if the juvenile should be transported to HCJP after the juvenile has received treatment or be released to a parent or guardian. Juvenile Division personnel shall advise the officer so that the officer can inform the NPC that the juvenile will be released to a parent, guardian, or be held and taken to HCJP when released from the NPC.

In either circumstance, the arresting officer shall complete the incident report and charges. If the juvenile is to be left in the custody of the NPC, then the first line in the charges shall state "Juvenile is at the NPC under a *NED* for mental health treatment."

## 4   CRISIS INTERVENTION RESPONSE TEAM (CIRT)

Officers requiring the assistance of a *CIRT* unit at a scene shall follow the procedures described in General Order 600-01, **Response Management**. *CIRT* units are not to be utilized as "wagon units" for *mental health crisis* calls. *CIT* patrol officers shall continue to be the first responders to *mental health crisis* calls when possible.

## 5   JAIL DIVERSION

Officers may consider jail diversion services through the Mental Health Diversion Center when an officer believes that symptoms of *mental illness* are a contributing factor to the offense and the individual does *not* pose a public safety threat. Officers may divert non-violent, low-level misdemeanor offenders who are *not* in crisis and *not* a danger to themselves or others to the Mental Health Diversion Center instead of filing charges or writing a citation.

To be eligible for jail diversion, the suspect must be 18 years of age or older and must agree to go to the Diversion Center. Driving while intoxicated (DWI), assault (including domestic violence), and weapons offenses are not eligible for consideration for jail diversion. The officer shall determine, based on the totality of the facts, whether or not the suspect would be appropriate for jail diversion. The officer shall consider the following when determining the totality of the facts:

a. The complainant's decision to press charges on the suspect or utilize jail diversion services.

b. The District Attorney's decision to press charges on the suspect or utilize jail diversion services.

c. The suspect does not have a violent criminal history.

d. The suspect is not a sex offender, does not have open warrants, or a pending detainer from Immigration and Customs Enforcement.

e. Whether the suspect has previously participated in the jail diversion program without a good faith effort to seek voluntary assistance.

If an officer needs additional information (e.g., mental health history, diagnosis) to help determine if jail diversion is appropriate, they may consult with the Joint Processing Center (JPC) Triage Diversion Desk to inquire about the person's mental health history, if available.

## 6   DOCUMENTATION

### Incident Report

Officers shall complete an original incident report for any incident in which a person is exhibiting a *mental health crisis*. Officers shall articulate in the narrative of their incident report why they believe the person is mentally ill and why the person is a substantial risk of serious harm to self or others. Substantial risk shall be supported based on specific recent behaviors, overt acts of self-harm, attempts to harm others, severe emotional distress and deterioration in the person's mental health condition, or threats observed by the officer or reliably reported from a credible person. Additionally, evidence of severe emotional distress and deterioration should be thoroughly documented, if used as a basis for determining substantial risk. Officers should avoid using only generic or vague statements such as "consumer was a danger to self and others" or "consumer needed psychiatric treatment." Such statements do not adequately detail the justification for the apprehension by an officer without a warrant, as required by the Texas Health and Safety Code, Chapter 573.

The title of the incident report shall always be listed by the highest criminal offense and "*Investigation - Mental Illness*" shall be listed as a secondary title. If a criminal offense was *not* reported, the incident report shall be titled "*Investigation - Mental Illness.*"

If a person is reported to have committed a criminal offense, regardless of whether or not charges are filed, the person shall be listed as a suspect and the offense shall be thoroughly investigated per General Order 600-27, **Preliminary and Follow-Up Investigations.** If the person is not reported to have committed an offense and is being handled for only mental health purposes, the individual shall be listed as a complainant.

Officers shall document all license information pertaining to individuals who hold a License to Carry (LTC), Private Security Armed Registration, or Peace Officer License. Officers shall include the LTC license number, Private Security license number, or Peace Officer Personal Identification Number (PID) in the report narrative. This documentation should also list the company or employing agency of the individual.

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #7 |
| --- | --- | --- |

Officers shall properly document items (e.g., knives, rope, pill bottles) located at a mental health scene within the narrative of the incident report and contact the appropriate concerned division for guidance, but shall *not* tag the items as evidence under the Mental Health Division (MHD).

If the incident involves a completed suicide or an attempted suicide that may cause the death of an individual, officers shall contact the Homicide Division for guidance and authorization to tag the items. Officers are reminded to follow the guidelines of General Order 700-01, **Property and Evidence Control Regulations**, and consult with the concerned investigative division to receive their authorization to tag firearms or property that may have evidentiary value due to involvement in a criminal investigation.

## Notification of Emergency Detention (NED)

In accordance with the Texas Health and Safety Code, Section 573.002, the *NED* must contain specific and detailed information that shows that the substantial risk of harm is imminent unless the person is immediately restrained. The *NED* must contain:

a. A statement that the officer has reason to believe and does believe that the person shows signs of *mental illness* and is a substantial risk of serious harm to self or others;

b. A description of the risk of harm;

c. A statement that the officer has reason to believe and does believe that the risk of harm is imminent unless the person is immediately restrained;

d. A description of the person's recent behavior, acts, attempts, or threats observed by the officer or reported by a credible person to the officer; *and*

e. If applicable, the name of the credible person, address, and relationship to the apprehended person, who reported or observed the behavior, acts, attempts, or threats.

For any incident resulting in a *NED*, officers shall document the name of the mental health facility or hospital where the person is to be evaluated, the name of the person who accepted the *NED*, and, if applicable, the Medical Record Number (MRN) in the incident report. Officers shall request a copy of the *NED* from facility personnel, then scan and upload the copy of the *NED* into the incident report via Intellinetics.

## 7    SEIZURE OF FIREARMS FROM PERSONS EXHIBITING MENTAL HEALTH CRISIS

### No Criminal Charges

Pursuant to Texas Health and Safety Code, Section 573.001(h), officers are authorized to seize firearms *only* when the following criteria are established:

a. The person is exhibiting a *mental health crisis*, taken into custody for a *NED* as specified in section 1, *Authority to Apprehend*;

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #8 |
| --- | --- | --- |

b. Upon detention the person is in possession of the firearm; **and**

c. A criminal offense involving the use of the firearm has **not** been committed.

Firearms that were not within the person's immediate possession at the time of the person's detention cannot be legally seized (e.g., firearms stored in a bedroom closet). The MHD shall **not** authorize the seizure of firearms that do not meet the above criteria.

Officers shall obtain authorization to tag such firearms from an MHD *CIRT* supervisor. If unable to contact an MHD *CIRT* supervisor, officers shall contact a jail HPD supervisor for authorization. Officers shall tag the seized firearm in the Property Division. Seized firearms and other firearm components (e.g., magazines, ammunition) shall be entered into the property tab in ARS utilizing the involvement code "MHF." The required forms can be accessed on the department's Intranet Portal.

Officers who seize a firearm from a person taken into custody shall comply with the requirements of the CCP, Article 18.191, and immediately provide the person with the following:

d. A written copy of the receipt for the firearm (*Receipt and Notice of Rights for Seized Firearms*).

e. A written notice of the procedure for the return of a firearm.

Officers shall upload copies of the seizure forms along with a copy of the *NED* into the incident report via Intellinetics. Officers shall put the original *Receipt and the Notice of Rights for Seized Firearms* form, along with a copy of the *NED*, in the MHD Drop Box at the Property Division. The seized firearms shall be tagged in the Property Room following the procedures outlined in General Order 700-01, **Property and Evidence Control Regulations.**

### Firearms Related to a Criminal Offense

Firearms used in the commission of a crime (e.g., Aggravated Assault with a Deadly Weapon, Deadly Conduct, Places Weapons Prohibited, Unlawful Possession of Firearm) shall be treated as evidence and shall not be seized under the CCP, Article 18.191. Instead, officers shall follow the guidelines of General Order 700-01, **Property and Evidence Control Regulations,** and consult with the concerned investigative division to tag firearms with evidentiary value.

## 8  PREMISE HISTORY PROCEDURES

If there is reason to believe that the mental health related information indicates a possible risk to the safety of responding officers, the mentally ill person, or another person at the location, then a premise history request shall be completed. Premise histories shall not be placed on a location solely because a person who resides at that location suffers from *mental illness*.

Officers can access the *Premise History Request* form on the department's Intranet Portal and email it to HPD.CIT@Houstonpolice.org. Officers and supervisors shall not contact the

| General Order #500-12 | ISSUE DATE: January 28, 2021 | PAGE: #9 |
|---|---|---|

Emergency Communications Division (ECD) to request that a mental health premise history be placed on a location.

The MHD shall authorize, enter, and maintain all mental health related premise history entries.

Art Acevedo
**Chief of Police**