United States Courts
Southern District of Texas
FILED

JUL 17 2026

Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ROBERT W. VAN KIRK, *Plaintiff,* | § | |
| | § | Civil Action No. 4:26-cv-02517 |
| *v.* | § | |
| | § | Honorable George C. Hanks, Jr. |
| Officer Hernandez, et al., *Defendants.* | § | |

# PLAINTIFF'S NARROWED RESPONSE TO DOCUMENT 30

## I. ISSUE PRESENTED

The narrow issue is whether an officer has arguable probable cause to seize a cooperative crime reporter for emergency psychiatric detention when the officer's sworn instrument identifies no threat, violent act, attempt at self-harm, weapon, severe emotional distress, or inability to remain at liberty; relies instead on the content of the reporter's statements; lists no witness despite the officer's separate interview of a corroborating eyewitness; and omits an HPD cybercrimes case that the officer personally located during the encounter.

Accepting the pleaded facts as true and drawing reasonable inferences in Plaintiff's favor, the answer is no.

## II. MATERIAL ALLEGATIONS THAT CONTROL AT THIS STAGE

The following allegations are pleaded with particularity:

**1.** Plaintiff voluntarily approached Hernandez to report an ongoing cybercrime. Compl. ¶¶27–28.

2. Plaintiff was cooperative, complied with Hernandez's instructions, possessed no weapon, made no threat, committed no violent act, and expressed no intent to harm himself or anyone else. *Id.* ¶¶28, 35, 39, 51.

3. Plaintiff's mother remained at the scene, observed the encounter, and separately told Hernandez that she had witnessed the spoofed-call events Plaintiff reported. *Id.* ¶¶1, 27, 31, 42.

4. During the encounter, Hernandez located HPD Incident No. 1198816-24, an existing cybercrimes matter concerning the same reported electronic intrusions. Hernandez asked Plaintiff: "Why didn't you tell me you had an open case with Cybercrimes?" *Id.* ¶¶2, 36–37, 43.

5. Hernandez nevertheless executed an Emergency Detention Order. The complete narrative quoted in the Complaint identifies no threat, act of violence, attempt at self-harm, weapon, suicidal ideation, homicidal ideation, severe emotional distress, or inability to function independently. *Id.* ¶¶3–4, 40, 45, 48, 51.

6. Item 4 of the EDO states that Hernandez's belief was "BASED ON THE CONSUMER'S STATEMENT" and labels Plaintiff's crime report "MENTAL CAPACITY DETERIORATION." Item 5 identifies persons who reported or observed relevant behavior as "None." *Id.* ¶40.

7. The EDO omits both the mother whom Hernandez interviewed and the HPD cybercrimes case Hernandez personally located. *Id.* ¶¶41–46.

These allegations are not legal conclusions. They identify the participants, the sequence, the quoted language of the sworn instrument, the omitted witness, the omitted HPD incident number, and the absence of conduct demonstrating a substantial risk of serious harm.

## III. COUNT I CONCERNS ONLY THE INITIAL SEIZURE

Count I seeks damages only from Hernandez for the initial warrantless seizure and transport. It does not seek to impose liability on Hernandez for the later medical decisions, the subsequent probate proceeding, the alleged failure to investigate cybercrime, or any action by hospital personnel. That narrowing answers the City's causation argument before it begins.

Plaintiff's voluntary approach to report a crime does not eliminate the later seizure. The pleaded facts distinguish the consensual beginning of the encounter from the compelled seizure: Plaintiff expressly refused psychiatric transport and commanded Hernandez to "cease and desist"; Hernandez then ordered Plaintiff to the wall, executed the EDO, and placed him in handcuffs for transport. Compl. ¶¶33–35, 51. The relevant Fourth Amendment question is therefore whether the compelled detention that followed the refusal was supported by probable cause.

A mental-health apprehension is a Fourth Amendment seizure and must be supported by probable cause. *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012). The inquiry is what facts Hernandez knew when he seized Plaintiff—not what later clinicians or a later court concluded after the seizure. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964).

Texas law required Hernandez to believe both that Plaintiff had a mental illness and that, because of that illness, Plaintiff presented a substantial risk of serious harm unless immediately restrained. Tex. Health & Safety Code § 573.001(a). That risk may be shown by behavior or by severe emotional distress and deterioration to the extent the person cannot remain at liberty. *Id.* § 573.001(b). Plaintiff does not contend that the statute uses the word "imminent." The issue is whether the pleaded facts gave Hernandez an objectively

reasonable basis to believe that the statutory and constitutional serious-harm threshold was met.

The EDO quoted in the Complaint gives the answer at the pleading stage. It identifies no threat, violence, weapon, self-harm statement, attempt, severe emotional distress, or inability to remain at liberty. Compl. ¶¶40, 45, 51. Its factual narrative identifies the content of Plaintiff's report, disclosed diagnoses, a missed medication dose, and alleged lack of sleep. *Id.* ¶40. It then states that Hernandez's conclusion was "BASED ON THE CONSUMER'S STATEMENT." *Id.* Plaintiff also disputes the City's assertion that every factual statement in the EDO is undisputed: Plaintiff does not recall stating that he had not slept "in days." *Id.* ¶47.

Count I is not a claim that Hernandez had a constitutional duty to investigate or solve the reported cybercrime. It is a claim that he lacked probable cause to seize the reporter. Even if Hernandez doubted Plaintiff's report, the Fourth Amendment required facts supporting a serious-harm risk; a disputed crime report, without more, is not itself such a fact.

## IV. THE PLEADED OMISSIONS GO TO THE ONLY FACTUAL BASIS HERNANDEZ USED

The City says Plaintiff does not dispute the literal truth of the words Hernandez recorded. Doc. 30 at 18. That misses the claim. A probable-cause presentation can be materially misleading through an affirmative false statement or through an omission made deliberately or with reckless disregard for the truth when the omitted fact is material to probable cause. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *Winfrey v. Rogers*, 901 F.3d 483, 494–95 (5th Cir. 2018).

Count I identifies two concrete omissions from the sworn EDO:

- **The corroborating eyewitness.** Hernandez separately interviewed Plaintiff's mother, who corroborated the spoofed-call events; yet the EDO lists relevant witnesses as "None." Compl. ¶¶40, 42.
- **The existing HPD case.** Hernandez personally located Incident No. 1198816-24 and questioned Plaintiff about the open Cybercrimes matter; yet the EDO omitted HPD's prior documentation of the same electronic-intrusion reports. *Id.* ¶¶36–37, 43.

The City characterizes the mother as not having witnessed the conduct selected for the EDO. Doc. 30 at 18. But that assumes the conclusion at issue: that the content of Plaintiff's report could be treated as evidence of deterioration while the witness who corroborated the reported events could be omitted. The mother observed Plaintiff's statements and behavior, was interviewed by Hernandez, and corroborated the events that gave those statements their context. Compl. ¶¶1, 27, 31, 42. Likewise, the open HPD case did not compel Hernandez to accept every reported technical conclusion. It did establish that HPD had already documented a related cybercrime report before Hernandez treated the same subject matter as evidence of deterioration.

Those omissions are material precisely because Hernandez used the content of Plaintiff's speech as the primary justification for detention. Including the witness, the existing HPD case, and the absence of threatening or dangerous conduct plausibly changes whether the EDO established a substantial risk of serious harm. Section 573.001(b) permits that risk to be shown either by behavior or by severe emotional distress and deterioration rendering a person unable to remain at liberty. The pleaded EDO identifies neither: it records no dangerous behavior and no facts showing Plaintiff could not remain at liberty, only conclusions drawn from the content of his report, diagnoses, sleep, and medication history.

At minimum, materiality and state of mind cannot be resolved against Plaintiff under Rule 12.

## V. LATER PROCEEDINGS DO NOT RESOLVE THE INITIAL-SEIZURE CLAIM

The City relies on later medical assessments and a later probate-court finding. Doc. 30 at 18–19. Those events may bear on later confinement, but they cannot add facts to Hernandez's knowledge at the moment he seized Plaintiff. *Beck*, 379 U.S. at 91. Plaintiff has narrowed the claim to avoid seeking damages from Hernandez for the later medical and probate decisions.

The independent-intermediary doctrine likewise does not resolve the initial-seizure claim on these pleadings. Plaintiff alleges that the EDO supplied to downstream decision-makers omitted a corroborating witness and an HPD case Hernandez personally located, while supplying a conclusory deterioration narrative. Compl. ¶¶40–46, 226–28. Under *Winfrey*, an intermediary breaks causation only where relevant information was not withheld. 901 F. 3d at 496. The pleaded taint issue therefore cannot be resolved against Plaintiff at Rule 12. In all events, a later decision does not transform a seizure unsupported by probable cause at inception into a reasonable one.

## VI. QUALIFIED IMMUNITY CANNOT BE DECIDED AGAINST THE PLEADED FACTS

By August 2024, it was clearly established that a mental-health seizure required probable cause. *Cantrell*, 666 F.3d at 923. It was also clearly established that a sworn probable-cause

instrument may not be deliberately or recklessly stripped of material facts. *Winfrey*, 901 F. 3d at 494–96; *Hughes v. Garcia*, 100 F.4th 611, 619–20 (5th Cir. 2024). The issue is not whether a reasonable officer may make a reasonable mistake. The issue is whether the Court may deem reasonable, on a motion to dismiss, an officer's alleged omission of information he personally verified while relying on the uncorroborated appearance of the same speech.

The answer is no. The complaint alleges a cooperative, unarmed reporter; no threat, violence, weapon, self-harm statement, or inability to function; a corroborating witness whom Hernandez interviewed; and an existing HPD cybercrimes matter Hernandez personally located. Compl. ¶¶27–51. Those allegations plausibly state a Fourth Amendment violation and do not permit qualified immunity at the pleading stage.

## VII. THE FILED EXPEDITED-DISCOVERY MOTION CONFIRMS THE NEED FOR A LIMITED FACTUAL RECORD, IF THE COURT REQUIRES ONE

Before the present motions, Plaintiff filed Document 11 seeking narrowly limited early production of the BWC footage, CAD/radio records, and the HPD EDO file. That request identified the BWC and CAD evidence as the objective records most likely to show the mother's interview, the responding officers, and the relevant HPD system activity. Plaintiff cites Document 11 only to show that he promptly sought those narrowly defined records; he does not treat the motion itself as proof of the facts asserted here.

Plaintiff does not ask the Court to decide the present Rule 12 motion by weighing unproduced records or to defer the qualified-immunity ruling for discovery. Count I stands on the pleaded facts. The limited point is that the objective records bearing on the alleged

omissions are within the City's control and Plaintiff timely sought their preservation and limited production through the proper procedural channels.

## VIII. PLAINTIFF'S NARROWING RESOLVES THE REMAINING PORTIONS OF DOCUMENT 30

Plaintiff does not oppose dismissal, without prejudice, of:

**1.** Counts II through IX;

**2.** all claims against the City of Houston;

**3.** all claims against the unidentified John Doe officers;

**4.** all requests for prospective injunctive or declaratory relief; and

**5.** any request to hold Hernandez responsible for acts independently committed by hospital personnel after the initial seizure.

Plaintiff proceeds only against Hernandez for damages arising from the allegedly unreasonable initial seizure pleaded in Count I. This narrowing removes the City's standing, TPIA, ADA, municipal-liability, conspiracy, and downstream institutional-causation arguments from the remaining merits dispute.

## IX. ALTERNATIVE REQUEST FOR LEAVE

If the Court concludes that Count I requires additional specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice. Rule 15 favors decisions on the merits, particularly where a *pro se* litigant can cure a perceived pleading deficiency by providing a more definite statement. Plaintiff's voluntary narrowing substantially reduces the action and would permit any amendment to address one claim against one defendant.

## X. CONCLUSION

Plaintiff respectfully requests that the Court:

**1.** deny Document 30 as to Count I's Fourth Amendment unreasonable-seizure claim against Officer Hernandez;

**2.** dismiss without prejudice Counts II through IX, the City of Houston, and the John Doe officers;

**3.** limit the remaining action to damages against Hernandez for the initial seizure; and

**4.** alternatively grant leave to amend Count I if the Court identifies a curable deficiency.

Respectfully submitted,

Dated: July 17, 2026

/s/ **ROBERT W. VAN KIRK**
*Plaintiff, Pro Se*
7366 Brace St., Houston, TX 77061
(832) 428-2882
robertwaynevankirk@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 17, 2026, a true and correct copy of the foregoing document was served on all parties of record via the Court's CM/ECF electronic filing system, or by certified U.S. mail where CM/ECF service was unavailable.

/s/ **ROBERT W. VAN KIRK**