**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ROBERT W. VAN KIRK,** | § | |
| | § | |
| **PLAINTIFF *pro se*,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **OFFICER M. HERNANDEZ, in his individual capacity; OFFICER JOHN DOE, in his individual capacity; THE CITY OF HOUSTON; HARRIS COUNTY HOSPITAL DISTRICT d/b/a HARRIS HEALTH SYSTEM / BEN TAUB HOSPITAL; VALERIE M. CONTRERAS, M.D., in her individual capacity, and JASMINE BALBIR SINGH ANEJA, R.N., in her individual capacity,** | § § § § § § § § § § § | **CIVIL ACTION NO. 4:26-CV-02517** |
| | § | |
| **DEFENDANTS.** | § | |

**HARRIS HEALTH AND MONIQUE JONES'S**
**MOTION TO DISMISS PLAINTIFF ROBERT VAN KIRK'S COMPLAINT**

# TABLE OF CONTENTS


TABLE OF CONTENTS ..... II

TABLE OF AUTHORITIES ..... IV

I. SUMMARY OF ARGUMENT ..... 1

II. ABOUT THE PLEADED FACTS ..... 1

A. Emergency Detention under the Texas Mental Health Code ..... 2

III. PLEADED FACTS ..... 3

A. Van Kirk's Emergency Detention Begins. ..... 3

B. Van Kirk Receives Care at Harris Health. ..... 4

C. Attempted Phone Calls. ..... 4

D. Deteriorating Behavior. ..... 5

E. Van Kirk Kicks a Nurse During Medical Administration. ..... 5

F. Submissions to the Probate Court. ..... 6

G. Van Kirk's Post-Detention Review of His Medical Record. ..... 6

H. Van Kirk's Claims. ..... 7

IV. LEGAL STANDARDS ..... 7

A. Rule 12(b)(1) ..... 7

B. Rule 12(b)(6) ..... 8

V. ARGUMENT ..... 9

A. Van Kirk Lacks Standing to Assert Claims Against Jones (12(b)(1)) ............. 9

i. Van Kirk Lacks Standing to Assert a Claim Against Jones. .......................... 10

B. Van Kirk Lacks Standing to Assert *Monell* Claims Against Harris Health (12(b)(1)) ........................................................................................................ 11

i. *Monell* Liability Generally. .............................................................. 11

ii. Van Kirk Lacks Standing to Assert his *Monell* Theories. .............................. 12

C. Van Kirk Does Not Plead Facts Underlying Any Alleged Customs (12(b)(6)) 14

D. The Alleged Customs Do Not Implicate Constitutional Rights (12(b)(6)) ..... 17

E. Jones Is Entitled to Qualified Immunity (12(b)(6)) ....................................... 19

VI. CONCLUSION ........................................................................................ 20

CERTIFICATE OF SERVICE ........................................................................ 22

# TABLE OF AUTHORITIES

**Cases**

*Sullivan v. County of Hunt, Texas*
106 F. App'x 215 (5th Cir. 2004) ............ 18
*Angulo v. Brown*,
978 F.3d 942 (5th Cir. 2020)............ 20
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............ 9
*Baker v. McCollan*,
443 U.S. 137 (1979) ............ 19
*Banks v. Herbrich*,
90 F.4th 407 (5th Cir. 2024)............ 20
*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............ 9
*Bennett v. Spear*,
520 U.S. 154 (1997) ............ 10
*Christiana Trust v. Riddle*,
911 F.3d 799 (5th Cir. 2018)............ 2
*City of Dallas v. Saucedo-Falls*,
268 S.W.3d 653 (Tex. App.—Dallas 2008, pet. denied) ............ 12
*Davis v. Fed. Election Comm'n*,
554 U.S. 724 (2008) ............ 10
*Does #1-7 v. Abbott*,
345 F. Supp. 3d 763 (N.D. Tex. 2018)............ 10
*Ferrer v. Chevron Corp.*,
484 F.3d 776 (5th Cir. 2007)............ 9
*Graham v. Connor*,
490 U.S. 386 (1989) ............ 12
*Greenwald v. Murrill*,
No. 24-30661, 2026 WL 500139 (5th Cir. Feb. 23, 2026) ............ 11
*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) ............ 20
*In re Great Lakes Dredge & Dock Co.*,
624 F.3d 201 (5th Cir. 2010)............ 8
*Jennings v. Patton*,
644 F.3d 297 (5th Cir. 2011)............ 20
*Johnson v. Treen*,
759 F.2d 1236 (5th Cir. 1985)............ 19
*Leal v. McHugh*,
731 F.3d 405 (5th Cir. 2013)............ 9

*Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*,
507 U.S. 163 (1993) .......... 2
*Little v. KPMG LLP*,
575 F.3d 533 (5th Cir. 2009) .......... 10
*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 10
*Manuel v. City of Joliet, Ill.*,
137 S. Ct. 911 (2017) .......... 12
*Monell v. Dep't of Social Servs. of City of N.Y.*,
436 U.S. 658 (1978) .......... 12
*Okon v. Harris Cty. Hosp. Dist.*,
426 F. App'x 312 (5th Cir. 2011) .......... 13
*Pearson v. Callahan*,
555 U.S. 223 (2009) .......... 20
*Peterson v. City of Ft. Worth*,
588 F.3d 838 (5th Cir. 2009) .......... 18
*Pineda v. City of Houston*,
291 F.3d 325 (5th Cir. 2002) .......... 15
*Piotrowski v. City of Houston*,
237 F.3d 567 (5th Cir. 2001) .......... 13
*Plotkin v. IP Axess Inc.*,
407 F.3d 690 (5th Cir. 2005) .......... 9
*Ramming v. United States*,
281 F.3d 158 (5th Cir. 2001) .......... 8
*Turner v Houma Mun. Fire & Police Civ. Serv. Bd.*,
229 F.3d 478 (5th Cir. 2000) .......... 20
*Varnado v. Lynaugh*,
920 F.2d 320 (5th Cir. 1991) .......... 19
*Victoria W. v. Larpenter*,
369 F.3d 475 (5th Cir. 2004) .......... 12
*Wade v. Montgomery Cnty., Tex.*,
No. 4:17-CV-1040, 2019 WL 5653878 (S.D. Tex. Sept. 30, 2019) .......... 13
*Walker v. Beaumont ISD*,
938 F.3d 724 (5th Cir. 2019) .......... 8
*Wilkinson v. Dallas/Ft. Worth Int'l Airport Bd.*,
54 S.W.3d 1 (Tex. App.—Dallas 2001, pet. denied) .......... 12
*World Wide Street Preachers Fellowship v. Town of Columbia*,
591 F.3d 747 (5th Cir. 2009) .......... 15

**Statutes**

42 U.S.C. § 1983 .......... 1, 7, 12
TEX. HEALTH & SAFETY CODE § 573.001 .......... 2

TEX. HEALTH & SAFETY CODE § 573.002(a) ........ 20
TEX. HEALTH & SAFETY CODE § 573.012 ........ 2
TEX. HEALTH & SAFETY CODE § 573.021(b) ........ 3
TEX. HEALTH & SAFETY CODE § 573.025(a)(2) ........ 18
TEX. HEALTH & SAFETY CODE § 574.022 ........ 11
TEX. HEALTH & SAFETY CODE § 574.024 ........ 21
TEX. HEALTH & SAFETY CODE § 574.025 ........ 11
TEX. HEALTH & SAFETY CODE § 573.025(b)(1) ........ 18

**Rules**

FED. R. CIV. P. 8(a)(2) ........ 9
FRCP 12(b)(1) ........ 8
Rule 12 ........ 8, 22
Rule 12(b)(6) ........ 9

**Regulations**

26 TEX. ADMIN. CODE § 320.61(a) ........ 16
42 C.F.R. § 460.114 ........ 16

**Other Authorities**

DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 827 (Am. Psychiatric Assoc. 5th ed. 2013) ........ 16

Defendants Harris County Hospital District d/b/a Harris Health ("Harris Health") and Monique Jones, Licensed Clinical Social Worker ("Jones") (collectively, "Defendants") file this motion to dismiss (the "Motion") the "Verified Second Complaint for Violation of Civil Rights (42 U.S.C. § 1983 & ADA Title II)" [ECF No. 45] (the "SAC") filed by Plaintiff Robert Van Kirk and would respectfully show the following:

## I. SUMMARY OF ARGUMENT

1. Van Kirk is suing Harris Health and a social worker for alleged civil-rights violations relating to his medical care. In August 2024, a police officer emergently detained Van Kirk and took him to Ben Taub Hospital for a mental-health evaluation. Van Kirk was treated at Ben Taub for approximately 24 hours before being transferred to Houston Behavioral Hospital.

2. Van Kirk now brings a federal lawsuit against Harris Health and social-worker Monique Jones seeking to elevate his confusing and unfounded assertions into constitutional claims. He fails to plead claims upon which relief can be granted, and with respect to Jones he cannot overcome her qualified immunity. All of his claims must therefore be dismissed.

## II. ABOUT THE PLEADED FACTS

3. The Court must take Van Kirk's allegations as true, but need not adopt the unwarranted inferences in the SAC. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Christiana Trust v. Riddle*, 911 F.3d 799, 802 (5th Cir. 2018).

4. Also, attached to the SAC are several exhibits, included several excerpts from Van Kirk's personal medical record. *See, e.g.*, Ex. 5, ECF No. 21-1 at 9. References to his Harris Health medical record are interwoven throughout the SAC and serve as the foundation for all of his claims. As a result, the Court may consider his complete Harris Health medical record—a true and correct copy of which is attached to ECF No. 28 as Exhibit A—in adjudicating this Motion.

**A. Emergency Detention under the Texas Mental Health Code**

5. A short outline of Texas's emergency detention statutes will help contextualize the allegations in the SAC.

6. The Texas Mental Health Code allows police officers to emergently detain individuals who officers believe are a danger to themselves or others due to a mental illness. TEX. HEALTH & SAFETY CODE § 573.001. Once emergently detained, an individual is transported to a hospital so that they may be examined and, if necessary, treated. *Id.* § 573.001(d). The detaining police officer must complete a document titled "Notification of Emergency Detention" (NED) and present it to hospital staff. *Id.* § 573.002. At Harris Health, the NED (which Van Kirk confusingly calls an "EDO"[1]) is scanned and placed in the patient's medical record.

7. Physicians then have approximately 48 hours to determine whether the emergently detained person merits further detention. TEX. HEALTH & SAFETY CODE

[1] "Emergency detention orders" do exist, but they are issued in response to an application for emergency detention, not in response to an officer's *notice* of emergency detention. *See* TEX. HEALTH & SAFETY CODE § 573.012.

§ 573.021(b). If a physician determines that a person is not a danger to themselves or others, the person's detention ends. *Id.* § 573.023. But if a person is still a danger, a physician will ask the local county probate court to order that the person receive further court-ordered mental-health treatment. *Id.* §§ 573.023(b), 574.001, 574.021 (describing an order for protective custody). If further treatment is ordered, the patient will usually be transferred to a local mental hospital under a temporary "order of protective custody" rather than remain at an acute-care hospital like Ben Taub. *See id.* § 574.023.

8. At Harris Health, which operates two acute-care hospitals, Ben Taub and LBJ, this emergency-detention process plays out multiple times a day, every day.

## III. PLEADED FACTS

### A. Van Kirk's Emergency Detention Begins.

9. On August 26, 2024, a Houston Police Department officer took Van Kirk to Ben Taub and presented hospital staff with an NED alleging the following:

> The consumer beliefs [sic] he is under cyber attack, someone has tolen [sic] his identity, someone has hacked his phone, consumer has not slept in days. Consumer called 911 and beliefs [sic] that 911 call taker is not real. Consumer beliefs [sic] he is being wired [sic] tapped for a civil situation. Consumer stated that he is diagnosed [sic] with depression, anxiety, and ADHD and did not take his medication today.

SAC, ¶ 40.[2] The NED further specified that the officer believed Vam Kirk to be "paranoid do [sic] to his statements and showing signs of mentall [sic] capacity deterioration." *Id.* As Texas law requires, the NED was signed by the officer and dated August 26, 2024 at

[2] Henceforth, unadorned paragraph references are to paragraphs in the SAC.

8:03 p.m. SAC, Ex. 1 at 2. While Van Kirk alleges that the NED was absent from his medical record, it was in fact scanned into his medical record. *Id.*; Ex. A at 4.

**B. Van Kirk Receives Care at Harris Health.**

10. Van Kirk arrived at Ben Taub at 7:52 p.m. on August 26, 2024. Exhibit A at 29. He was admitted to Ben Taub at 8:11 p.m., a few minutes after his NED was executed. *Id.*; ¶ 53. He was placed under suicide precautions, including a "1:1 sitter at bedside for safety." *See, e.g.*, Ex. A at 34; ¶ 57.

11. He was evaluated and treated for several hours until he was transferred to Houston Behavior Health. He evinced paranoia, including taking caffeine pills for fear of sleeping. ¶¶ 62–63. Jones, a social worker who assessed Van Kirk, observed that he had "rapid speech with constant roaming eyes throughout the entire assessment. [He] appear[ed] to be paranoid, . . . ." ¶ 73.

12. Van Kirk also repeatedly doubted whether his care providers were legitimate. He claimed that there was "no interior signage identifying the specific facility or building he was in," and that staff did not provide him a way to verify that he was actually at Ben Taub. *See, e.g.*, ¶¶ 79 & 84. He further objected that he "possessed no means to verify that the individuals detaining him were licensed medical providers." ¶ 99.

**C. Attempted Phone Calls.**

13. At 9:15 p.m., a nurse noted that Van Kirk wanted to call his lawyer. ¶ 68. Around 3:48 a.m. on August 27, he was allowed to use the phone. ¶ 79. But instead of calling an attorney, he made three calls: one to 811, the next to 911, and the final one to his father. ¶¶ 80–83. He claims none of these calls went through or were blocked. ¶ 83.

**D. Deteriorating Behavior.**

14. Several care providers noted that Van Kirk was attempting or insisting on leaving the hospital despite being under emergency detention. A nurse noted that Van Kirk "wanted to leave" the hospital at 2:20 a.m. ¶ 78. Another nurse indicated that he was "threatening to elope." ¶ 90. Around 3:48 am, a nurse checked a behavior code in Van Kirk's chart to reflect that he was "attempting to leave" or "PTALEDOWC." ¶ 87. She also stated that she was "unable to reason with" Van Kirk and that he was "not redirectable." ¶ 106.

15. At 3:30 a.m., a nurse noted that Van Kirk was "extremely agitated and paranoid; states that this is not a real hospital; demanding to leave; becoming loud and disruptive." Exhibit A at 37.

**E. Van Kirk Kicks a Nurse During Medical Administration.**

16. Around 3:50 a.m. a provider determined that it was necessary to administer Haloperidol, Lorazepam, and Diphenhydramine to Van Kirk because "he [was] acutely paranoid, believes staff has kidnapped him and threatening to elope despite being on EDO." Ex. A at 102. He was also noted to be "pacing on the units, is restless, paranoid and in distress." Ex. A at 62.

17. At 3:58 a.m., care providers initiated a physical hold of Van Kirk to administer the drugs. ¶ 112. He admits that "in resisting the restraint, Plaintiff's leg broke free momentarily, resulting in contact between the side of his leg and the thigh area of one of the staff members." ¶ 115.

### F. Submissions to the Probate Court.

18. Afterward, Van Kirk's doctor and Jones petitioned the Harris County Probate Court for court-ordered treatment of Van Kirk. Jones submitted an affidavit stating that Van Kirk "appear[ed] to be delusional and believe[d] that he is being cyber hacked for his identity. Patient appear[ed] to be paranoid with rapid speech and constant wander eyes. Patient attempted to elope from the psychiatric unit." ¶ 137. She reported that Van Kirk said that Ben Taub was "not a real hospital" and was instead concocted by "people trying to take [his] identity." *Id.* She also noted that he "believe[d] that persons on the other end of the phone are impersonating 911 operators and his parents." *Id.*

19. In her own submission to the Probate Court, Dr. Contreras made similar observations. She diagnosed Van Kirk with "unspecified psychotic [disorder], [ruled out] stimulant induced" and said that Van Kirk lacked the ability "to function in almost all areas." ¶¶ 126 & 129. She specifically noted that Van Kirk had "kicked a nurse and believe[d] [the] hospitals ha[d] kidnapped him." ¶ 126.

20. Van Kirk was later transferred to Houston Behavioral Healthcare Hospital at 7:58 p.m. on August 27, 2024. Exhibit A at 29 (under the heading "Discharge Information"); & 41 ("transferred to [Houston Behavioral Hospital] via Constables"). He thus spent 24 hours, not 11 days, at Ben Taub. *Id.*

### G. Van Kirk's Post-Detention Review of His Medical Record.

21. Van Kirk faults Harris Health for merely maintaining a paper copy of his NED and not scanning it into his medical record until sometime later. ¶ 160. He does not deny that he was emergently detained on August 26, 2024, that Harris Health possessed a

copy of the NED, or that his emergency detention at Harris Health was supported with an NED. *See id.* Underscoring this point, he includes a contemporaneous copy of the NED at Exhibit 2, and another copy is in his medical record as reflected in Exhibit 1, which was uploaded to his chart in August 2024. Ex. A – Medical Record at 142.

**H. Van Kirk's Claims.**

22. Van Kirk is alleging *Monell* claims against Harris Health under 42 U.S.C. § 1983 because on account of two "workflows" that Van Kirk contends were deliberately indifferent to his constitutional rights. These workflows were: "(a) Emergency-Medication and Restraint Workflow"; and (b) "Detention-Document and Operational-Record Workflow." ¶¶ 228–233.[3]

23. Against Jones, Van Kirk alleges a Fourth Amendment violation on the theory that she fabricated her affidavit supporting further, court-ordered mental-health care because the affidavit said that he was *attempting* to elope instead of specifying that he was merely *threatening* to elope. *See* ¶ 224.

## IV. LEGAL STANDARDS

**A. Rule 12(b)(1)**

24. "Under FRCP 12(b)(1), a party may challenge the subject matter jurisdiction of the court to hear a case." *Walker v. Beaumont ISD*, 938 F.3d 724, 734 (5th Cir. 2019). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam).

[3] Confusingly, while the SAC brings claims based on these two "workflows," it also includes allegations about three "customs." SAC 194–203. Defendants examine all of these allegations in the context of § 1983.

"Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Walker*, 938 F.3d at 734.

25. When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack first. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 209 (5th Cir. 2010) (citing *Ramming*, 281 F.3d at 161).

**B. Rule 12(b)(6)**

26. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6).

27. A complaint must set forth facts that, if accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

28. Mere "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "an unadorned, the-defendant-unlawfully-harmed-me accusation" will not do. *Id.*; *Iqbal*, 556 U.S. at 678. Further, courts do not accept as true "'conclusory

allegations, unwarranted factual inferences, or legal conclusions.'" *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

29. "Determining whether the plausibility standard has been met is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 679).

## V. ARGUMENT

### A. Van Kirk Lacks Standing to Assert Claims Against Jones (12(b)(1))

30. "[T]he requirement that a claimant have 'standing is an essential and unchanging part of the case-or-controversy requirement of Article III.'" *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing requires three elements: (1) an injury-in-fact that is concrete and actual or imminent, not hypothetical; (2) a fairly traceable causal link between the injury and the defendant's actions; and (3) that the injury will likely be redressed by a favorable decision. *See, e.g.*, *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009).

31. Element (2) is called "traceability." "For traceability to exist, there must be a causal connection between the injury and the conduct complaint of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Does #1-7 v. Abbott*, 345 F. Supp. 3d 763, 773 (N.D. Tex. 2018) (internal quotation omitted).

i. <u>Van Kirk Lacks Standing to Assert a Claim Against Jones.</u>

32. Van Kirk's entire theory of liability against Jones is based on her statement—made in the affidavit she submitted to support an application for a protective custody order for Van Kirk—that he "attempted to elope" from the hospital. ¶ 224. And Van Kirk's criticism of this statement is narrow: he says he only made verbal threats of eloping, not physical attempts, and thus the statement in Jones's affidavit is technically incorrect. *See* ¶ 140.

33. Setting aside the fact that Van Kirk's medical record is in tension with claims (an issue discussed below), his legal theory has a traceability problem. Jones said several other things in her affidavit that Van Kirk does not dispute, including that he was paranoid and claiming the hospital was fake. ¶ 137. Dr. Contreras submitted her own affidavit attesting to his serious paranoia. ¶ 146. The County Probate Court independently reviewed all of these materials and issued an order for protective custody. *See* TEX. HEALTH & SAFETY CODE § 574.022. Van Kirk's suggestion that Jones's affidavit, if it mentioned only "threats" of elopement instead of "attempts," would not been enough to justify the protective-custody order is irreducible speculation that cannot establish traceability. *Greenwald v. Murrill*, No. 24-30661, 2026 WL 500139, at *4 (5th Cir. Feb. 23, 2026) ("[T]raceability may not be based on speculation.").

34. Moreover, protective custody lasts only 72 hours. TEX. HEALTH & SAFETY CODE § 574.025. In the interim, Van Kirk was appointed a guardian ad litem to represent his interests at a probable-cause hearing at the end of that 72-hour period. *Id.* § 574.024. Van Kirk never alleges that Jones attended the probable-cause hearing. Yet the County

Probate Court evidently found probable cause, since Van Kirk says he remained at the Houston Behavioral Hospital for eleven days. ¶ 158.

35. Thus Van Kirk's psychiatric detention is not fairly traceable to gap s between Van Kirk's numerous admitted threats of eloping and Jones's statement that he attempted to elope.

**B. Van Kirk Lacks Standing to Assert *Monell* Claims Against Harris Health (12(b)(1))**

i. <u>*Monell* Liability Generally.</u>

36. Section 1983 provides a private right of action against a person (including local government units) acting under the color of state law to redress the deprivation of rights, privileges, and immunities secured by the U.S. Constitution or federal law. *See, e.g.*, 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017); *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978); *see also City of Dallas v. Saucedo-Falls*, 268 S.W.3d 653, 658 (Tex. App.—Dallas 2008, pet. denied). It is not a source of substantive rights but a remedial statute designed to vindicate federal rights conferred elsewhere. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *see also Wilkinson v. Dallas/Ft. Worth Int'l Airport Bd.*, 54 S.W.3d 1, 20 (Tex. App.—Dallas 2001, pet. denied).

37. There are two elements to a § 1983 action: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights secured by the Constitution or the laws of the United States. *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004).

38. To satisfy the first prong of a § 1983 claim against a hospital district, a plaintiff must show that "the District had a policy or custom that caused [a] constitutional deprivation." *Okon v. Harris Cty. Hosp. Dist.*, 426 F. App'x 312, 316 (5th Cir. 2011). "This means that to succeed on her claim . . . , [a plaintiff] must (a) identify a policymaker, (b) identify an official policy or custom, and (c) demonstrate that the official policy or custom was a moving force behind the violation of her constitutional rights." *Wade v. Montgomery Cnty., Tex.*, No. 4:17-CV-1040, 2019 WL 5653878, at *3 (S.D. Tex. Sept. 30, 2019) (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).

ii. Van Kirk Lacks Standing to Assert his *Monell* Theories.

39. Van Kirk lacks standing to assert most of his *Monell* claims against Harris Health because he never suffered an injury-in-fact and, in one case, because traceability is lacking. To fully explain why, it is necessary to set forth the elaborately titled and confusing "customs" pled in the SAC.

40. The first is "Custom 1," namely "punitive blanket protocols and "'restraint as coercion,'" which relate to Van Kirk's complaints that he was given psychoactive medication and was placed under 1:1 observation as a suicide precaution. ¶ 194.

41. The problem with Custom 1, however, is that he never alleges an injury that resulted from Harris Health's decision to have someone observe him during his emergency detention. He claims that being placed on observation was unwarranted (*see* ¶ 194), but that is not an allegation that he was actually injured by that observation.[4]

[4] The medication issue fails for other reasons as discussed below.

42. Custom 2 is a confusing pastiche of various complaints. As best Harris Health can tell, Van Kirk alleges that because his NED was not immediately scanned into his medical record, Harris Health staff "rel[ied] on the police narrative without independently reviewing the instrument's stated factual basis." ¶ 198. But he did not suffer an injury-in-fact from this supposed custom. ¶ 200. Van Kirk never claims that Harris Health should not have admitted him for emergently detention, making the entire issue of the scanned NED moot. At most, he appears to suggest that relying on law enforcement narratives somehow led to "chemical restraint,"[5] but the SAC never says how such restraint is traceable to the unscanned NED.

43. The last custom is "Custom 3," which confusingly treads some of the same ground as Custom 2. ¶ 201. This is a supposed custom of allowing "unsupported behavioral descriptions to move from clinical notes into sworn commitment instruments without a documented reconciliation against contemporaneous clinical records." *Id.* Custom 3 also mentions "retroactive record modification." *Id.*

44. But again he fails to plead any injury. He does not, and indeed cannot, plead injury from the record "modification," which he acknowledges is simply a complaint about when the NED was scanned into his medical record. Because Van Kirk does not contest the validity of his emergency detention, the time at which the NED was scanned into his electronic medical record is simply immaterial. And with respect to the supposedly

[5] The SAC's allegations on this point are confusing. Paragraph 198 describes not scanning the NED, but paragraph 200 detours into discussion about staff "lacking mandatory photo badges" or 911 being "blocked." What these have to do with the NED is not clear. Regardless, as the SAC acknowledges, those two issues are matters of Texas, not federal, law.

"unsupported" behavioral assertions, he cannot establish traceability for the reasons discussed above with respect to Jones.

### C. Van Kirk Does Not Plead Facts Underlying Any Alleged Customs (12(b)(6))

45. Within the context of § 1983, a "custom" is "a persistent, widespread practice of [municipal] officials or employees" that "is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (citation omitted). One incident does not show a custom. *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753–54 (5th Cir. 2009); *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002).

46. Van Kirk's Complaint relates only to one incident—*his* emergency detention. His entire lawsuit is premised on objections to the psychiatric and medical care that he received during his single, 24-hour stay at Ben Taub. He entirely fails to plead anything close to the common or well-settled custom that might undergird § 1983 liability.

47. His attempts to overcome this fundamental problem fall entirely flat.[6] He says that Custom 1 is supported by a CMS determination of jeopardy against Harris Health in 2019. ¶ 195. This single, years-old document is not enough to establish a "custom" under § 1983. And the jeopardy determination is not only stale but irrelevant. As Van Kirk relates, the jeopardy determination was about administering injections before physician authorization, but here he pleads that Dr. Contreras authorized his medication.

---

[6] Van Kirk mentions in passing a 2022 "Board packet" that documented "throughput issues in the emergency room," but he does not make a serious attempt to connect that document to his allegations. ¶ 195. It would make no sense for Harris Health to admit and treat him if it wanted to increase emergency-room throughput.

¶ 86. He also notes that the CMS determination was about bypassing informed consent, but Van Kirk does not allege that informed consent (or lack thereof) played any role in Custom 1 or any of his other *Monell* theories.[7]

48. He also mentions a 2022 credentialing document that references "chemical restraint for agitation" in an attempt to alleged that Harris Health had a custom of deploying restraints "punitively." ¶ 195. He acknowledges that that document deals with physician credentials; it does not mandate the treatment of him or anyone else. *See id.* Regardless, the Court may take judicial notice of two things that vitiate whatever relevance this reference might have. First, "chemical restraint" is a term used in 42 C.F.R. § 460.114, which *authorizes* the use of such restraints to certain patients in distress. Thus from the vantage point of federal law, it can be an appropriate medical intervention. Second, "agitation" is a medical term-of-art defined as "excessive motor activity" that is "usually nonproductive and repetitious . . . and consists of . . . pacing, fidgeting, wringing of the hands, pulling of clothes, and inability to sit still." AM. PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 827 (Am. Psychiatric Assoc. 5th ed. 2013). Since "agitation" is a recognized medical diagnosis, and chemical restraint is an acknowledged means of treatment, Van Kirk presents nothing to suggest that including this credentialing standard is inappropriate in any way.

49. He also says that Custom 1 is supported by prior litigation, but again Van Kirk is simply wrong. ¶ 196. The *Mitchell* case was dismissed on Harris Health's motion.

---

[7] Administering psychoactive medications in response to a psychiatric emergency does not require consent. *See, e.g.*, 26 TEX. ADMIN. CODE § 320.61(a).

*See* 4:20-cv-00142, ECF No. 61. The *Slayton* case is a prisoner case about deliberate indifference and prescription medications, not about anything that Van Kirk is asserting. And lastly, *McGregor* is also a prisoner case about an alleged failure to attend to a mentally-ill prisoner, precisely the opposite of Van Kirk's complaints, which are about what he believes was faulty psychiatric treatment.

50. The scattershot "Custom 2" is likewise unsupported by any actual facts. ¶ 198. Van Kirk cites no other cases, other than his, concerning photo ID badges, telephone calls, or NED scanning. *Id.* Van Kirk's claims that prior litigation supports the existence of "Custom 2" are frivolous. ¶ 199. He cites two *qui tam* cases, *Strawn* and *Vaughn*, which have nothing to do with his assertions. *Id.* Then he cites *Rodgers*, which was a First-Amendment case that Harris Health won on summary judgment. 4:24-cv-00032, ECF No. 38. Next, he cites the *Ohakweh* cases, which were also dismissed. *Id.* Finally, he cites to *Byrd*, a prisoner complaint that has never even been served on Harris Health.

51. The last custom is "Custom 3," regarding behavioral assertions and "record modification." ¶ 201. Again, lacking any actual facts to support these customs, Van Kirk reaches for litigation. ¶ 202. He cites two cases from over a decade ago that he admits were dismissed on Harris Health's motion—*Wilkerson* and *Gatlin*. *Id.* Then he cites *Borchgrevink*, a prisoner case about insulin orders in which the spoliation was alleged against Harris *County* or its agents. *Id.* To conclude he again cites *Mitchell*, which was as noted above was dismissed on a motion to dismiss.

52. A claim based on a widespread practice "requires similarity and specificity; [p]rior indications cannot simply be for any and all bad or unwise acts, but rather must

point to the *specific violation* in question." *Peterson v. City of Ft. Worth*, 588 F.3d 838, 851 (5th Cir. 2009) (emphasis added; internal quotation marks omitted). Van Kirk fails to plead any the existence of Harris Health customs that led to the deprivation of his rights.

**D. The Alleged Customs Do Not Implicate Constitutional Rights (12(b)(6))**

53. The other basic problem with Van Kirk's *Monell* claims is that none of the alleged customs implicate his federal constitutional rights. For example, there is no federal right to have hospital staff wear photo ID badges.

54. Similarly, Van Kirk's right of access to an attorney is a product of Texas, not federal law, a fact that he acknowledges when he says that they are "state-created liberty interests." ¶ 204; TEX. HEALTH & SAFETY CODE § 573.025(a)(2). In fact, his allegations surrounding his right to an attorney would fail even if they were treated as Sixth-Amendment claims. In *Sullivan v. County of Hunt, Texas*, the Fifth Circuit considered whether failure to inform a patient of their right to counsel under Texas Health and Safety Code § 573.025(b)(1) violated the Sixth Amendment. 106 F. App'x 215, 220 (5th Cir. 2004). The Fifth Circuit court held that it did not because the Sixth Amendment's right to counsel does not arise until a complainant is charged "with a criminal offense by the state." *Id.* The same concepts apply with greater force here since Van Kirk was never charged criminally and Harris Health granted him an opportunity to call an attorney. SAC at ¶ 12.

55. Any allegations about customs surrounding unwarranted psychoactive medications or physical holds fail because they are allegations of medical negligence. Section 1983 imposes liability for violation of rights protected by the Constitution, not for violations of duties arising out of tort law. *Baker v. McCollan*, 443 U.S. 137, 146 (1979).

Medical negligence, malpractice, or unsuccessful medical treatment do not "give rise to a § 1983 cause of action." *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (per curiam) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). Van Kirk cannot state a constitutional claim based on any medical care he receives, including the administration of drugs in response to his paranoia. His remedy is a state-law negligence claim.

56. Finally, the "fabrications and retroactive alteration" custom fails to implicate any federal rights because it makes no sense. ¶ 199. If Harris Health wanted to buttress the officer's reasons for emergently detaining Van Kirk, it would have discarded the original NED and replaced it with a NED that described his behavior in some starker detail. But the reality, reflected both in exhibits to the SAC and in Van Kirk's medical record, is that an NED was placed in his medical record in August 29, 2024. SAC, Ex. 1. The NED is dated August 26, 2024 at 8:03 p.m. SAC, Ex. 1. A near-identical NED was placed in his record months later. SAC, Exhibit 2. Yet that one was also dated August 26, 2024 at 8:03 p.m. and says the exact same things as the earlier one. *Id.* Both NEDs (if one considers them as separate documents) are in his medical record. SAC, Exs. 1 & 2. These facts do not permit any inference that Van Kirk's federal rights were violated. Moreover, to the extent he claims that the NED should have been placed in his medical record at a certain time, such a complaint is about Harris Health not complying with Texas law, not federal law. *See* TEX. HEALTH & SAFETY CODE § 573.002(a).

**E. Jones Is Entitled to Qualified Immunity (12(b)(6))**

57. Public employees acting within the scope of their authority are generally shielded from civil liability by the doctrine of qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Turner v Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000) (governmental officials are entitled to qualified immunity for claims brought against them in their individual capacities).

58. "The doctrine of qualified immunity protects public officials from liability for civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jennings v. Patton*, 644 F.3d 297, 300 (5th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "This analysis involves two steps: (1) we must determine whether the plaintiffs suffered a violation of their rights as a matter of law, and then (2) we must decide whether the right at issue was clearly established at the time of the alleged misconduct." *Banks v. Herbrich*, 90 F.4th 407, 412 (5th Cir. 2024).

59. Qualified immunity represents the norm, and courts should deny a defendant immunity only in rare circumstances. *Angulo v. Brown*, 978 F.3d 942, 949 (5th Cir. 2020).

60. Van Kirk alleges that Jones a is personally liable under § 1983 because she swore to an affidavit that said he attempted to elope even though he claims he merely threatened to elope. ¶ 224. But it was not a violation of the Constitution for Jones to believe what is in Van Kirk's medical record. That record reflects that Van Kirk "wanted to leave" the hospital at 2:20 a.m. (¶ 78), that he was "threatening to elope" (¶ 90), and that around 3:48 a.m. he was "attempting to leave" the hospital (¶ 87). A nurse also stated that

she was "unable to reason with" Van Kirk and that he was "not redirectable." ¶ 106. Jones merely swore to the facts available at the time of her affidavit.

61. In the face of these facts, Van Kirk's theory necessarily becomes that Jones, a social worker, is constitutionally charged with double-checking the determinations or observations of medical professionals. No authority supports that theory. If medical negligence itself cannot support a § 1983 claim, then neither can a social worker's failure to uncover another's medical negligence. *See Varnado*, 920 F.2d at 321.

62. Moreover, Van Kirk cannot establish that any action by Jones led to any violation of due process. Jones's affidavit is part of a comprehensive system governing court-ordered mental-health treatment in Texas. TEX. HEALTH & SAFETY CODE, Ch. 574. Those provisions provide for robust due process, all of which Van Kirk received and none of which he alleges he failed to receive. *See, e.g.*, TEX. HEALTH & SAFETY CODE § 574.024 (providing for a guardian ad litem).

63. Accordingly, Jones is entitled to qualified immunity.

## VI. CONCLUSION

64. Van Kirk lacks standing to assert claims against Defendants. He also failed to plead facts to support *Monell* liability against Harris Health or to overcome Jones's qualified immunity. More broadly, his allegations fail to satisfy the requirements of Rule 12. For these reasons, Defendants ask that all of his claims be dismissed.

Date: September 14, 2026

Respectfully submitted,

THE OFFICE OF THE
HARRIS COUNTY ATTORNEY
By: */s/ Michael D. Fritz*
Michael D. Fritz
Sr. Assistant County Attorney
Texas Bar No. 24083029
S.D. Texas ID No. 2440934
*Michael.Fritz@harrishealth.org*
4800 Fournace Place
Sixth Floor, East Wing
Houston, Texas 77401
(346) 426-0326 (telephone)
(713) 566-6558 (facsimile)

*Attorney-in-Charge for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 14, 2026, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and also emailed it to Plaintiff.

*/s/ Michael D. Fritz*
Michael D. Fritz