United States Courts
Southern District of Texas
FILED
OCT - 5 2026
Nathan Ochsner, Clerk of Court

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| Robert W. Van Kirk, | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 4:26-cv-02517 |
| *v.* | § | |
| | § | Honorable George C. Hanks, Jr. |
| Officer Hernandez, et al., | § | |
| *Defendants.* | § | |

**PLAINTIFF'S RESPONSE TO THE CITY OF HOUSTON AND OFFICER HERNANDEZ'S MOTION TO DISMISS**

## TABLE OF CONTENTS


I. Introduction 3

II. Governing Standards and Scope of the Claims 4

III. Count I Plausibly Alleges the Absence of Arguable Probable Cause 6

A. Chapter 573 required a factual basis for both mental illness and serious-harm risk 6

B. The Notification identifies psychiatric concerns, not facts establishing the required serious-harm risk 8

C. Hernandez omitted context he obtained before handcuffing and transport 10

D. The alleged right was clearly established in the specific context 14

E. A later order does not dispense with independence and materiality 15

IV. The SAC Plausibly Alleges Disability-Based Denial of Equal Complaint Processing 18

A. Count II seeks equal report processing, not a guaranteed investigative result 18

B. The alleged service decision turned on perceived impairment 20

C. Hainze turns on an unsecured, potentially life-threatening scene, not an outdoor location 22

D. Title II does not require a Monell policy or policymaker 23

V. Arguments against disclaimed theories do not dispose of Counts I and II 24

VI. Requested Disposition 24

## I. INTRODUCTION

**Nature and stage of the proceeding.** Plaintiff Robert W. Van Kirk, proceeding pro se, responds to the City of Houston and Officer M. Hernandez's motion to dismiss the operative Second Amended Complaint, Dkt. 45 as clarified by Dkt. 46, under Rules 12(b)(1) and 12(b)(6). Dkt. 50. Plaintiff requests that the Court deny dismissal of Count I against Hernandez and Count II against the City. Alternatively, Plaintiff requests an opportunity to seek narrowly tailored leave to cure any identified pleading deficiency.

On August 26, Plaintiff and his mother were driving home from a Verizon store with a new phone, account, and number. Plaintiff says the phone began receiving bursts of three broken-image messages followed by incoming calls displaying the exact number he had most recently dialed; each paused during a legitimate call, resumed after it ended, disconnected when answered without a voice or recorded message, and left no call-history entry. His mother could hear the calls and see the caller ID through her vehicle's Bluetooth connection. The pattern began only as Plaintiff neared his home. Based on this timing, Plaintiff felt unsafe returning home without first seeking law-enforcement assistance; his mother pulled over, and he called 911. After that call ended, the phone rang again displaying "911" and disconnected when answered. SAC ¶¶24–27. The SAC alleges that Plaintiff reported an apparent impersonation of emergency services. It does not deny that he expressed concern about the 911 call taker; it disputes the Notification's omission of the incoming-call sequence that gave that concern context. Id. ¶¶44, 46.

Seeing Hernandez stationed at a nearby intersection, Plaintiff crossed the street on foot to report the active attack. He offered the device, answered questions, and complied with instructions. Id. ¶¶28–36. Plaintiff alleges a particular new report, not merely a request to

confirm the earlier case. After beginning the detention process, Hernandez found the open Cybercrimes case and asked Plaintiff, "Why didn't you tell me you had an open case with Cybercrimes?" Id. ¶37. He had also interviewed Plaintiff's mother, yet proceeded to handcuff and transport Plaintiff. Id. ¶¶39–43, 51.

Count I challenges only Hernandez's initial field seizure, handcuffing, and transport. Id. ¶¶206–10. Count II alleges that the City, through Hernandez, used actual or perceived disability to replace ordinary processing of the August 26 report with psychiatric detention. Id. ¶¶211–17. It does not demand a successful investigation or prosecution. The SAC asserts no City Monell, standalone TPIA, failure-to-train, ratification, discipline, evidence-refusal, or retaliation claim. Id. ¶¶189–92, 210.

**Summary of argument.** The pleaded facts may have warranted questions, but Count I alleges they did not supply even arguable probable cause for immediate serious-harm restraint. The Notification identifies no threat, attempt, violent act, or specific loss of functioning. Count II alleges that Hernandez replaced equal processing of Plaintiff's August 26 report with psychiatric detention because of actual or perceived disability. The motion cannot resolve those disputes by treating the challenged Notification or later clinical and probate events as conclusive proof of the field encounter. SAC ¶¶40–51, 206–17.

## II. GOVERNING STANDARDS AND SCOPE OF THE CLAIMS

**Issues presented and standards of review.** The Court must decide whether the SAC plausibly alleges a Fourth Amendment violation of clearly established law sufficient to overcome Hernandez's qualified-immunity defense under Rule 12(b)(6), and whether it alleges a personal, disability-based denial of City services sufficient for Article III standing and a Title II claim under Rules 12(b)(1) and 12(b)(6). *Backe v. LeBlanc*, 691 F.3d 645, 648

(5th Cir. 2012); *Windham v. Harris County*, 875 F.3d 229, 235 (5th Cir. 2017). The Court accepts well-pleaded facts and reasonable inferences for Plaintiff when assessing plausibility; a genuine factual jurisdictional dispute may be resolved under Rule 12(b)(1), but intertwined merits issues may not be decided against the claim under that label. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Montez v. Department of the Navy*, 392 F.3d 147, 149–50 (5th Cir. 2004).

Qualified immunity requires Plaintiff to plead facts supporting a constitutional violation and showing that the right was clearly established in the specific context. *Backe*, 691 F.3d at 648. It does not permit the Court to choose Hernandez's version of disputed facts merely because that version appears in a document referenced by the complaint. The Notification establishes what Hernandez recorded—not the truth of every disputed assertion or the immateriality of every alleged omission.

*Scanlan v. Texas A&M University*, 343 F.3d 533, 536–37 (5th Cir. 2003), distinguishes consideration of a document from acceptance of its disputed contents. There, the Fifth Circuit rejected use of a disputed investigative report to resolve allegations against the plaintiffs. The same principle applies here. Materials outside the permissible pleading record cannot be used to resolve those disputes without Rule 12(d)'s conversion and reasonable-opportunity protections.

The motion also invokes Rule 12(b)(1). Plaintiff bears the standing burden. The motion accepts standing to challenge the emergency detention and transport, but disputes standing for unequal report processing. Dkt. 50 at 9–10. Count II alleges that Plaintiff personally sought and was denied equal access to an existing City service during a completed encounter. SAC ¶¶211–17. Whether disability caused that treatment overlaps the merits. When jurisdictional facts are intertwined with a federal claim, the Court should not assume the

disputed merits against the plaintiff to dismiss for lack of jurisdiction. *Montez*, 392 F.3d at 149–50; *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981).

Plaintiff alleges that he refused voluntary transport, was directed to a wall, and complied; Hernandez then interviewed his mother and located the Cybercrimes case before handcuffing and transport. SAC ¶¶34–39, 51. A show of authority effects a seizure only upon submission. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Information learned later cannot retroactively justify the initial directive, but bears on the later restraint. Count I distinguishes those stages.

The document called an "EDO" in the pleading is Hernandez's Notification of Emergency Detention. Section 573.001 permits warrantless apprehension when its conditions are met, and §573.002(a) requires the officer to file the Notification with the facility after transport. Plaintiff therefore does not argue that a judicial warrant or completed Notification was always required before apprehension. The Notification matters as Hernandez's contemporaneous account of the facts he claimed justified the seizure, not as a fictional pre-seizure warrant.

## III. COUNT I PLAUSIBLY ALLEGES THE ABSENCE OF ARGUABLE PROBABLE CAUSE

### A. Chapter 573 required a factual basis for both mental illness and serious-harm risk

The City correctly recognizes that a Chapter 573 apprehension is a Fourth Amendment seizure. Dkt. 50 at 12–13. Probable cause exists when the facts and circumstances known at seizure would permit a reasonable person to conclude that the individual is mentally ill and

poses a substantial risk of serious harm. *Cantrell v. City of Murphy*, 666 F.3d 911, 923 (5th Cir. 2012).

The version of §573.001 in force on August 26, 2024, required a reasonable belief that the person had a mental illness and, because of that illness, presented a substantial risk of serious harm unless immediately restrained. For a warrantless apprehension, the officer also had to believe there was insufficient time to obtain a warrant. Tex. Health & Safety Code §573.001(a)(1)(A)–(B), (a)(2) (2024). The required risk could be demonstrated by the person's behavior or by evidence of severe emotional distress and deterioration to the extent that the person could not remain at liberty. Id. §573.001(b). Information could come from a credible person's representations, the person's conduct, or surrounding circumstances, but the information still had to support the required serious-harm finding. Id. §573.001(c).

Plaintiff does not contend that danger must always be shown by a weapon, assault, or express suicide threat. In *Cantrell*, repeated suicidal statements—including a request for an officer's gun to commit suicide—directly supported the serious-harm inference. 666 F.3d at 916, 923. In *Rich v. Palko*, caretakers reported increasing physical and verbal aggression, threats to staff and children, repeated efforts to run away, self-soiling, refusal to bathe, and failure to follow instructions; a treating psychiatrist and hospital had recommended evaluation. 920 F.3d 288, 291–92, 294–96 (5th Cir. 2019). Those observations supported risk to others and deterioration to the point that the person could not remain at liberty. Id. at 295–96.

The SAC alleges materially different facts: voluntary contact with police, cooperation, compliance, no threat or violence, no self-harm statement, no resistance, and no identified inability to care for himself or remain at liberty. SAC ¶¶24–39, 45, 48–51, 209. Plaintiff acknowledges poor sleep, a missed medication dose, disclosed diagnoses, caffeine use, and

feeling unsafe in connection with the reported calls. Id. ¶¶26, 31–32, 47. The issue is not whether those facts justified further questions. The Notification's characterization of Plaintiff's report as paranoia is disputed. Even assuming Hernandez reasonably suspected mental illness, the separate question remains whether the totality supplied an objectively reasonable basis to find a substantial risk of serious harm requiring immediate involuntary restraint.

Section 573.002 requires the Notification to describe the risk, identify recent behavior or threats supporting the officer's belief, describe that conduct, and identify reporters or observers. Tex. Health & Safety Code §573.002(b)(3), (5)–(7) (2024). A documentation defect alone is not the federal claim; the form matters as Hernandez's stated basis. HPD General Order 500-12 likewise requires "specific and detailed information" showing imminent substantial risk. Dkt. 45-1, Ex. 25, §6. Plaintiff cites the order as context, not as a separate policy claim. SAC ¶191.

## B. The Notification identifies psychiatric concerns, not facts establishing the required serious-harm risk

The motion correctly points to Item 2, not just Item 4, as Hernandez's stated factual basis. Dkt. 50 at 14–16. Item 2 lists Plaintiff's reports of a cyberattack, identity theft, a hacked phone, a "911 CALL TAKER" who was "NOT REAL," and wiretapping, along with a statement that he had not slept "in days," disclosed diagnoses of depression, anxiety, and ADHD, and said he had missed medication that day. SAC ¶40; Dkt. 45-1, Ex. 1. Poor sleep, a missed dose, and unusual reports could prompt questions about mental illness or safety; they do not by themselves identify how mental illness created a substantial risk of serious harm requiring immediate restraint.

Defendants state that Plaintiff "does not dispute the factual grounds" for detention. Dkt. 50 at 15. Plaintiff acknowledges what Hernandez recorded, not that every entry was accurate or that the account was complete or sufficient. He recalls acknowledging poor sleep but does not recall saying he had not slept "in days." SAC ¶47. That challenges the Notification's categorical wording, not Plaintiff's recollection of the entire encounter. The Court may consider the document without treating its disputed account or Defendants' inference as conceded. Id. ¶¶27, 31, 40–47, 206–09.

The City reasons from those entries to "severe emotional distress" and deterioration. Dkt. 50 at 15. Under §573.001(b), behavior must demonstrate the required serious-harm risk, or there must be evidence of both severe emotional distress and deterioration to the extent the person cannot remain at liberty. Item 2 describes reported beliefs and clinical history, but no conduct showing what serious harm Plaintiff was likely to cause or suffer if not immediately restrained. Nor does Item 2 describe how poor sleep or one missed dose manifested in severe emotional distress *and* deterioration preventing liberty. The SAC alleges that Hernandez did not know Plaintiff's medication, dosage, or whether a single missed dose carried clinical significance. SAC ¶49. That disclosure remains part of the totality; the alleged gap is its connection to the required serious-harm risk. Plaintiff sought help, offered the device, and complied without threatening or resisting. SAC ¶¶28–32, 36, 39, 51. Those allegations do not preclude a mental-health concern; they bear on whether the further inference of serious-harm risk was objectively reasonable.

Item 3 asserts that the risk was imminent. Item 4 expressly attributes Hernandez's belief to Plaintiff's statements and concludes he showed "MENTALL [sic] CAPACITY DETERIORATION." SAC ¶40; Dkt. 45-1, Ex. 2. But it identifies no threat, attempt, violent act, or specific loss of functioning supporting that conclusion. Item 5 names no

reporting or observing person: "None." The Notification thus identifies no clinician's warning or independent danger report as its stated basis. The motion's reliance on a later physician's description of "severe emotional distress" and a later medical examination, Dkt. 50 at 15–16, cannot establish what Hernandez knew before the field seizure. The question is not whether the form used enough words, but whether the pleaded facts, including Item 2, supported the required inference at the time of each restraint.

The City's assertion that Hernandez's observations and good-faith belief suffice, Dkt. 50 at 16, collapses subjective belief into objective probable cause. *Cantrell* asks whether the facts and circumstances known at seizure would permit a reasonable person to find both mental illness and a substantial risk of serious harm. 666 F.3d at 923. Qualified immunity protects reasonable mistakes, but good faith cannot supply an element absent from the alleged facts and the officer's stated basis.

## C. Hernandez omitted context he obtained before handcuffing and transport

Before handcuffing and transport, Hernandez allegedly knew the following:

- **An interviewed eyewitness.** Plaintiff's mother allegedly witnessed the incoming-call pattern, remained in her vehicle within feet of the encounter with the window down, heard and observed Hernandez's questioning, and was within sight and hearing when he asked about diagnoses. SAC ¶¶1, 24–29, 32, 42. Hernandez then interviewed her separately. Id. ¶¶1, 28, 42. Her knowledge bore on both the reported events and the very statements Hernandez later cited as grounds for detention.

- **An existing police record.** Hernandez allegedly located an active HPD Cybercrimes incident concerning the underlying subject matter and asked Plaintiff, "Why didn't you tell me you had an open case with Cybercrimes?" Id. ¶¶37, 43. The question does

more than establish access to a file: viewed favorably to Plaintiff, it suggests Hernandez recognized the open case bore on his interpretation of the report. Hernandez learned of it before handcuffing and transport, then omitted it from the Notification. Id. ¶¶39–46, 51. He allegedly did not contact Cybercrimes before proceeding. SAC ¶¶2, 38. Plaintiff does not assert a freestanding duty to make that call; the allegation bears on how Hernandez handled the context he had obtained. A reasonable inference is that he recognized potentially qualifying context yet left it out; the quote does not establish that he knew the legal probable-cause standard was unmet.

- **The reported callback sequence.** Plaintiff alleges that he completed a 911 call and then received incoming calls displaying "911"; each disconnected when answered. SAC ¶27. The Notification records that he believed the "911 CALL TAKER IS NOT REAL," but omits that sequence. Id. ¶¶40, 44, 46. Restoring the sequence matters because the compressed account was used as evidence of paranoia; it does not require resolving how the calls occurred.

- **No identified dangerous conduct.** Plaintiff made no threat, committed no violent act, carried no weapon, and made no self-harm statement. Hernandez identified no facts showing deterioration to the extent Plaintiff could not remain at liberty. Hernandez also had time to question Plaintiff, interview his mother, await backup, and search RMS. Id. ¶¶37–39, 45, 48, 51.

The City argues that an actual crime and a concurrent psychiatric crisis could coexist. Dkt. 50 at 16. Plaintiff does not dispute that possibility. The issue is what supported the crisis inference here: Hernandez allegedly treated the electronic-intrusion report as evidence of paranoia while omitting the eyewitness observations and existing investigation he had personally obtained. SAC ¶¶37–46. Neither the investigation nor the witness conclusively

resolved the report's technical explanation. But their significance cannot be dismissed merely by observing that crime and crisis can coexist.

The City argues Plaintiff's mother was not an EDO "reporting witness," was absent for part of the encounter, and was later considered as a possible "shared delusion" witness. Dkt. 50 at 16. Item 5 asks who "reported or observed" relevant conduct—not who requested detention or witnessed every stage. SAC ¶40. Plaintiff alleges she observed his statements and behavior and Hernandez interviewed her. Id. ¶¶1, 32, 34, 42. A tentative next-morning "?folie a deux" notation does not establish what Hernandez knew when he entered "None." Id. ¶¶132–34; Dkt. 45-1, Exs. 19, 21.

The sequence also offers a pleaded explanation for the omission without requiring a separate retaliation claim. Hernandez made unclear statements about Plaintiff's medical care. Plaintiff asked whether Hernandez meant an emergency, involuntary psychiatric detention; after Hernandez confirmed, Plaintiff refused voluntary transport, stated that he did not consent to a seizure, and told Hernandez to "cease and desist." Hernandez then directed Plaintiff to stand by the wall and initiated the EDO process. SAC ¶¶34–36. Before handcuffing Plaintiff, Hernandez allegedly interviewed the eyewitness and confirmed the existing Cybercrimes case, yet the Notification omitted both. Id. ¶¶37–43, 51. Those facts bear directly on whether the information known to Hernandez supported a serious-harm risk. The Notification's conclusion cannot resolve that issue at the pleading stage. Refusal of voluntary transport, without more, does not establish that predicate.

The dispute over "in days" does not carry the claim alone. SAC ¶¶31, 47, 62–64. The corrected account retains the poor sleep, missed dose, diagnoses, and unsafe feeling while restoring the call sequence, cooperation, and absence of identified danger. Later information cannot justify the initial directive retroactively, but bears on handcuffing and transport. *Beck*

*v. Ohio*, 379 U.S. 89, 91 (1964); *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008). At each stage, Plaintiff alleges the facts supported inquiry, not arguable probable cause of serious-harm risk.

*Winfrey v. Rogers*, 901 F.3d 483, 494–97 (5th Cir. 2018), and *Loftin v. City of Prentiss*, 33 F. 4th 774, 782–83 (5th Cir. 2022), require a corrected-account materiality inquiry when probable cause rests on alleged falsehoods or omissions. *Loftin* rejected liability because the corrected account still established probable cause. Plaintiff asks the Court to conduct that analysis here, while recognizing that Hernandez's document was a post-transport Notification rather than a pre-seizure warrant. Defendants cannot establish arguable probable cause merely by reproducing the challenged narrative.

Plaintiff's refusal and "cease and desist" instruction contrast with the later handoff record; he alleges he never told Hernandez or Rodriguez that he was willing to enter a locked unit. SAC ¶¶34–36, 55. The 19:53 triage note begins an officer-handoff passage with "HPD officer Hernandez 8324 States" and an opening quotation before "patient is getting worse." The passage continues through "Patient states took caffeine pills" and "States is willing to go to a locked unit" without a visible closing quotation. Id. ¶¶54–55; Dkt. 45-1, Ex. 5. Hernandez's Notification, timed at 20:03, records neither willingness to enter a locked unit nor caffeine use. SAC ¶¶58, 61, 64. The discrepancy does not establish who supplied every phrase, but it prevents treating the handoff record as an undisputed statement of Plaintiff's willingness. Read with the alleged field refusal, it bears on the reliability of the account attributed to Hernandez.

The caffeine narrative likewise requires attention to its source. Plaintiff alleges that, when asked about supplements, he told Hernandez he had taken caffeine supplements, which he had used instead of morning coffee for years. SAC ¶31. Caffeine appears in the earlier

officer-handoff passage, while the separate patient-attributed entry says he "did not feel safe to go to sleep." Id. ¶¶54, 63. A later entry, introduced as "Per report," characterizes the same caffeine use as driven by paranoia; paragraph 62 attributes that report to Hernandez because Plaintiff arrived in police custody. That pleaded attribution is supported by caffeine's appearance in the earlier officer-handoff passage. Whether the account reached the nurse through intervening staff or the chart remains unresolved. The reported characterization cannot be treated as an undisputed admission by Plaintiff or retroactively establish what Hernandez knew in the field. The Notification itself contains no caffeine statement. Id. ¶64. Intake observations of no acute distress, steady gait, compliance, and BARS 4 do not decide the field encounter, but they do not make the officer's "getting worse" characterization conclusive either. Id. ¶¶45, 53–58, 209.

## D. The alleged right was clearly established in the specific context

*Cantrell* established before this incident that a mental-health seizure required facts supporting both mental illness and substantial serious-harm risk. 666 F.3d at 923. *Rich* confirmed that deterioration can satisfy the standard, but did so based on concrete threats, aggression, self-neglect, repeated flight, and professional recommendations. 920 F.3d at 291–96. Neither case permits emergency seizure based on diagnosis or unusual statements without facts connecting the perceived illness to serious harm.

*Reitz v. Woods*, 85 F.4th 780, 791–93 (5th Cir. 2023), provides additional notice about psychiatric history and information dissipating probable cause. After an asserted emergency had dissipated, officers continued a detention based partly on psychiatric visits and a neighbor's statement that Reitz acted "weird." The Fifth Circuit denied qualified immunity, explaining that mental-health treatment had to be connected to the particular concern and that officers could not disregard facts tending to dissipate probable cause. Id. at 791–93.

*Reitz* involved criminal detention and is analogous only for the requirement to connect psychiatric information to the asserted ground and account for facts undermining it. Plaintiff claims no prior case on this exact symptom combination. *Cantrell* and *Rich* granted immunity on materially more dangerous facts; they state the governing test: whether known facts would lead a reasonable person to find mental illness and substantial serious-harm risk. *Cantrell*, 666 F.3d at 923; *Rich*, 920 F.3d at 294–97.

*Rich* permits reliance on credible reports of statutory criteria, but Hernandez allegedly relied on Plaintiff's spoofed-call report and his mother's corroboration; the Notification identifies no threat or act. SAC ¶¶37–46, 51. Prior decisions need not be factually identical to give fair warning. *Hope v. Pelzer*, 536 U.S. 730, 740 (2002). The wall directive turns on then-known facts; later handcuffing and transport include what Hernandez learned afterward. *Cf. Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023).

The City's reliance on the presumptive validity of state law does not answer this claim. Dkt. 50 at 17. Plaintiff does not challenge Chapter 573's validity. He alleges that the known facts did not supply even an arguable basis for invoking it. The existence of statutory authority does not establish that its factual predicates existed in this encounter.

## E. A later order does not dispense with independence and materiality

The intermediary defense depends on an independent determination, not merely the existence of a later order. The motion calls the doctrine an "absolute bar," even if Plaintiff alleged knowing material misstatements. Dkt. 50 at 17. It is not absolute. Fifth Circuit cases state distinct standards for false statements and omissions in warrant proceedings: an officer may be liable for deliberately or recklessly providing false, material information for use in an affidavit, while an omission-based theory requires knowing and intentional omissions that result in a warrant being issued without probable cause. *Anokwuru v. City of Houston*, 990 F.

3d 956, 963–64 (5th Cir. 2021) (quoting *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)); see also *Buehler v. City of Austin/Austin Police Department*, 824 F.3d 548, 555–56 (5th Cir. 2016) (omissions of exculpatory information must be knowing). *Terwilliger v. Reyna*, 4 F.4th 270, 281–85 (5th Cir. 2021), likewise recognizes that material falsehoods or omissions may taint an intermediary's decision. Those cases concern warrants; Plaintiff invokes their distinction by analogy to the later probate process. The pleaded omission claim is that Hernandez knowingly left material context out of his sworn Notification before it entered that process—not merely that the form was incomplete. The defense therefore turns on whether the probate court made the pertinent determination on untainted information sufficient to support it.

Timing alone does not defeat the defense. *Buehler*, 824 F.3d at 554–56, applies the doctrine when an intermediary acts after arrest. But the doctrine protects an officer only when a truly independent intermediary breaks the chain of causation; an intermediary whose deliberations were "in some way tainted by the actions of the defendant" does not. *Wilson v. Stroman*, 33 F.4th 202, 208 (5th Cir. 2022) (quoting *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009)). Count I's injury—Hernandez's completed field seizure—did not depend on any later determination. The later probate process addressed a different question through different instruments. Chapter 574 requires a motion for protective custody to be accompanied by a physician's certificate of medical examination, and permits the judge or magistrate to determine from the application and certificate alone that the criteria are met if their conclusions are adequately supported. Tex. Health & Safety Code §§ 574.021(d), 574.022(a), (c) (2024). The probate decision addressed continued restraint pending examination—not whether Hernandez had grounds to seize Plaintiff on the street. The Supreme Court treats the roadside seizure and detention under later legal process as

separately challengeable restraints. *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017); *Wallace v. Kato*, 549 U.S. 384, 388–92 (2007).

The motion argues that the probate order rested on the physician's and social worker's submissions, not Hernandez's Notification. Dkt. 50 at 4, 17. Count I challenges Hernandez's antecedent seizure, handcuffing, and transport, not the later order or independent providers' conduct. SAC ¶¶206–10. Those submissions may bear on later custody but cannot retroactively justify the field seizure; Plaintiff does not ask the Court to find them false or independently insufficient.

The SAC alleges the Notification first entered Harris Health's electronic record 176 days after detention, when Health Information Management scanned a copy allegedly supplied by HPD. The scanned and probate versions differ in signature and formatting, though both signatures appear to be Hernandez's. SAC ¶¶164, 166–67; Dkt. 45-1, Exs. 1–3. Their provenance is disputed, so neither version is conclusive at Rule 12. *Scanlan*, 343 F.3d at 536–37; *Bosarge v. Mississippi Bureau of Narcotics*, 796 F.3d 435, 440–41 (5th Cir. 2015); *Hughes v. Garcia*, 100 F.4th 611, 619–23 (5th Cir. 2024).

Plaintiff does not allege that any defect automatically establishes taint. The exception requires materiality and a connection to the intermediary's decision; malice alone is insufficient. *Terwilliger*, 4 F.4th at 281–85; *Buehler*, 824 F.3d at 555–56. But at the pleading stage, taint need not be proved. The Fifth Circuit has held that allegations of taint "may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin v. Ard*, 866 F.3d 682, 690 (5th Cir. 2017). The SAC supplies such facts: the "None" entry despite Hernandez's own interview, the omitted police case he located, the altered presentation of the call report, and a Notification that exists in two materially different versions bearing different signatures. SAC ¶¶40–46, 164–67, 207–09.

Whether an intermediary ultimately acted on sufficient independent information is a developed-record question; the City cannot obtain dismissal through an "absolute bar" while the pleaded facts support the taint inference.

The separate allegations against Jones and Contreras do not expand Count I or make Hernandez responsible for their submissions.

## IV. THE SAC PLAUSIBLY ALLEGES DISABILITY-BASED DENIAL OF EQUAL COMPLAINT PROCESSING

### A. Count II seeks equal report processing, not a guaranteed investigative result

Count II concerns access to report processing, not an entitlement to a successful investigation. Plaintiff approached Hernandez to report a new event; Count II alleges that Hernandez treated the report as evidence of impairment instead of processing it on equal terms. SAC ¶¶211–16.

Title II provides that no qualified individual with a disability shall, by reason of disability, be excluded from or denied the benefits of a public entity's services, programs, or activities, or otherwise subjected to discrimination. 42 U.S.C. §12132. *Windham*, 875 F.3d at 235, identifies the qualification, service-denial or discrimination, and disability-causation elements.

Paragraph 212 identifies the City service as receiving, documenting, assessing, and routing reports of suspected crime. Plaintiff crossed the street on foot to approach Hernandez, who was stationed at a nearby intersection. Plaintiff reported the new incoming-call event, supplied incident information, and offered the device. SAC ¶¶24–32, 212. The City describes Plaintiff as "flagging down a patrol officer on the road," Dkt. 50 at 10, 20. The

SAC instead alleges that Plaintiff crossed the street on foot to approach an officer stationed at a nearby intersection. SAC ¶28. According to the SAC, Hernandez stopped asking about the perpetrators, did not document a crime report, and turned to medical history, sleep, safety, medication adherence, and supplements. Id. ¶30. Count II alleges that perceived impairment displaced ordinary processing of that report, not merely that Hernandez asked medical questions. Id. ¶¶213–16.

That theory does not require acceptance of Plaintiff's technical explanation, assignment of a chosen detective, prosecution, or a successful investigation. No comparator is required to survive dismissal. *Pickett v. Texas Tech University Health Sciences Center*, 37 F.4th 1013, 1034–35 (5th Cir. 2022). The SAC nevertheless alleges that HPD routinely handles similar reports from non-disabled complainants without first questioning them about psychiatric diagnoses. SAC ¶33. That allegation is supporting context; the principal basis for discriminatory intent remains Hernandez's alleged use of the disclosures during this encounter. The benchmark is a complainant presenting the same report and conduct without the disability-based characterization—not a person presenting an actual serious-harm risk. A nondiscriminatory referral or limitation on patrol responsibilities is not the alleged violation. The alleged violation is undertaking the encounter, interviewing its participants, consulting HPD records, and then replacing complaint processing with psychiatric detention because of perceived impairment.

The City's observation that HPD accepted earlier reports, Dkt. 50 at 19–20, does not answer whether Hernandez handled the later, different report unequally. Nor does the existence of the August 23 investigation create retroactive causation. That case supplied context Hernandez allegedly learned during the August 26 encounter; Count II challenges his treatment of the new report after Plaintiff disclosed diagnoses and Hernandez

characterized its subject matter as psychiatric evidence. SAC ¶¶23–43, 213–16. The alleged injury is the loss of equal report processing during this encounter, not the underlying electronic intrusion or an investigator's failure to solve it.

*DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989), and *Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005), do not resolve this statutory claim. Plaintiff asserts no constitutional entitlement to police protection or prosecution. He alleges discrimination in an existing public service.

*Luke v. Texas*, 46 F.4th 301, 305–07 & n.4 (5th Cir. 2022), likewise distinguishes denial of meaningful access from an additional adverse outcome, reversing dismissal of a Title II claim despite successful completion of the underlying proceedings. Although *Luke* involved interpreter access, it refutes the premise that discriminatory denial of service is actionable only when the proceeding or investigation ultimately fails. Plaintiff alleges a personal, completed service denial, not a generalized interest in law enforcement.

The pleaded injury is traceable to the challenged encounter. Count II seeks only relief legally available for that completed service violation and excludes emotional-distress and punitive damages, cryptocurrency loss, and prospective relief. SAC ¶217. Disputes about the amount or availability of damages do not erase the alleged completed discrimination or Plaintiff's alternative request for nominal relief if legally available.

## B. The alleged service decision turned on perceived impairment

Count II rests on Hernandez's alleged use of perceived impairment in the service decision, not simply on diagnosis followed by detention. After turning to psychiatric history, he allegedly cited Plaintiff's disclosed diagnoses as a basis for detention. SAC ¶¶30–32. He then characterized the report as paranoia and deterioration rather than documenting and routing it, and maintained that interpretation after interviewing the eyewitness and finding

the existing case. Id. ¶¶37–46, 51, 213–16. Paragraph 216 alleges that perceived impairment was a motivating and but-for cause of unequal processing. The facts supporting that inference are the sequence and use of the disclosures, not the bare fact that Plaintiff has diagnoses.

The "regarded as" theory requires no showing that the perceived impairment substantially limited a major life activity, and because Count II alleges disparate treatment rather than failure to accommodate, coverage is assessed on that prong alone. 42 U.S.C. §§12102(1)(C), (3)(A), 12201(h); 28 C.F.R. §35.108(a)(2)(iii), (f). Coverage is not causation: *J.W. v. Paley*, 81 F.4th 440, 449–53 (5th Cir. 2023), held, at summary judgment, that treatment informed by a perceived safety vulnerability, even if poorly judged, did not prove intentional discrimination. The SAC alleges more: Hernandez stopped taking the report once diagnoses were disclosed, recast it as psychiatric evidence, and kept that course after finding the existing case and hearing Plaintiff's mother corroborate the calls, recording neither. SAC ¶¶30, 37–46, 215–16. A departure from ordinary procedure after disclosure can make motive plausible without a comparator, and disability need only have a determinative influence, not be the sole cause. *Pickett*, 37 F.4th at 1033–35.

The City argues actual cybercrime and mental-health crisis could coexist. Dkt. 50 at 16. That does not explain why suspected impairment allegedly displaced complaint processing. HPD General Order 500-12 directs officers to "thoroughly investigate all reported crimes," while recognizing the two concerns can coexist. Dkt. 45-1, Ex. 25, §3; SAC ¶¶191, 211–12. Plaintiff invokes it as context, not an entitlement to a particular investigation. Count II does not turn every safety mistake into discrimination; safety requirements must rest on actual risks, not stereotypes. 28 C.F.R. §35.130(h). The pleaded sequence—diagnosis disclosure,

recasting the report, then maintaining that course after the witness interview and RMS check—supports discriminatory causation. SAC ¶¶30–46, 215–16.

### C. *Hainze* turns on an unsecured, potentially life-threatening scene, not an outdoor location

*Hainze v. Richards*, 207 F.3d 795, 801 (5th Cir. 2000), held that Title II does not apply to an officer's on-the-street response before securing the scene and ensuring that there is no threat to human life. It does not create a categorical "outdoor exception." *Hainze* involved a reported suicide threat and an armed subject advancing toward an officer; its rule turns on the immediate safety circumstances.

The relevant time is the opportunity to receive, assess, document, or refer the August 26 report, not every moment of the later detention. The SAC alleges no weapon, threat, violent behavior, or resistance when Plaintiff approached; it alleges time for Hernandez to question him, interview his mother, await additional officers, and check HPD records before handcuffing and transport. SAC ¶¶24–39, 51, 212–15. Poor sleep, disclosed diagnoses, and the reported calls could warrant safety questions, and elapsed time alone does not establish a secure scene. But the motion's description of this as an "on-the-street" response does not establish that a potentially life-threatening exigency persisted throughout the alleged assessment and report-processing interval. The pleaded combination of no identified threat or resistance and time for questioning, witness interview, and a records check supports an inference that the exigency had dissipated before the later restraint decisions.

*Wilson v. City of Southlake*, 936 F.3d 326, 330–33 (5th Cir. 2019), refused to extend *Hainze* to circumstances without a potentially life-threatening situation or real danger of physical harm. The Fifth Circuit examined the actual alleged danger rather than the defendants'

characterization of an object as a weapon. Id. at 331. *Windham* likewise recognizes Title II's application to police interactions outside exigent circumstances. 875 F.3d at 235.

*Allen v. Hays*, 65 F.4th 736, 752 (5th Cir. 2023), confirms that *Hainze* remains controlling at Rule 12. Plaintiff does not argue that an unreasonable seizure automatically establishes an ADA violation. The pleaded absence of potentially life-threatening conduct and the intervening assessment opportunities distinguish this encounter.

## D. Title II does not require a Monell policy or policymaker

The motion argues that Count II fails because Plaintiff does not allege discrimination by an official policymaker or through an official policy. Dkt. 50 at 4, 20. *Delano-Pyle v. Victoria County*, 302 F.3d 567, 574–75 (5th Cir. 2002), rejects that requirement and recognizes public-entity liability for an employee's Title II violation. *Paley*, 81 F.4th at 449–50, likewise recognizes vicarious public-entity liability. Plaintiff need not convert Count II into a Monell claim.

That rule does not impose strict liability. Compensatory damages require intentional discrimination. *Delano-Pyle*, 302 F.3d at 574; *Miraglia v. Board of Supervisors of the Louisiana State Museum*, 901 F.3d 565, 574–76 (5th Cir. 2018). *Paley* also recognizes that safety-based treatment is not necessarily discriminatory. 81 F.4th at 451–53. The SAC alleges intentional use of perceived impairment, not mere error: Hernandez allegedly used the disclosures and omitted known context in replacing report processing, for the reasons given in Part IV.B. SAC ¶¶30–51, 213–16. Whether that inference or the City's safety explanation is ultimately correct is a merits question.

## V. ARGUMENTS AGAINST DISCLAIMED THEORIES DO NOT DISPOSE OF COUNTS I AND II

The SAC disclaims separate City Monell, failure-to-train, ratification, discipline, evidence-refusal, and TPIA claims. SAC ¶¶189–92. Authorities addressing those claims do not defeat Counts I and II.

The SAC identifies body-camera, CAD/911, preservation, and possible CIRT records as evidence relevant to Counts I–II, not a separate TPIA claim. SAC ¶¶5–8, 50, 171–73, 183, 192. Plaintiff requested CAD dispatch records, but HPD did not produce them; its § 552.108 response instead said it withheld "911 information" for incident 121581524. Dkt. 45-1, Ex. 7. A separate 911 request was denied under the same exemption as an open Cybercrimes case, incident 1198816-24. Id. Ex. 8. The mismatch bears on record provenance and preservation; it does not establish that CAD was produced, a crime occurred, an investigation was active, or Hernandez's knowledge or motive. Plaintiff relies on this as context, not a standalone records-access claim or substitute for pleading elements.

Hernandez's TCOLE credentials and course completions do not establish what he knew or did during this encounter, supply grounds for emergency restraint, or negate intentional discrimination. Plaintiff need not challenge those qualifications to preserve Counts I and II.

## VI. REQUESTED DISPOSITION

Plaintiff requests that the Court deny Dkt. 50 as to Count I against Hernandez and Count II against the City. The SAC alleges specific facts that, taken as true, support the absence of arguable probable cause and disability-based unequal service. Defendants' competing

account may be tested on an appropriate record, but it cannot be treated as conclusively established at Rule 12.

If the Court identifies a curable pleading deficiency, Plaintiff alternatively requests an opportunity to seek narrowly tailored leave under Rule 15(a)(2). *Foman v. Davis*, 371 U.S. 178, 182 (1962). Any proposed amendment would address the identified defect with facts Plaintiff can responsibly allege; this request does not add a claim through briefing or seek unlimited amendment.

Respectfully submitted,

Dated: October 5, 2026

Robert W. Van Kirk

**Robert W. Van Kirk**
*Plaintiff, Pro Se*
7366 Brace St., Houston, TX 77061
(832) 428-2882
robertwaynevankirk@gmail.com

## CERTIFICATE OF SERVICE

I certify that on October 5, 2026, I filed the foregoing response in paper form with the Clerk of Court and delivered a true and correct copy to all counsel of record: to Melissa Azadeh, Senior Assistant City Attorney, City of Houston Legal Department, counsel for Defendants City of Houston and Officer M. Hernandez, at melissa.azadeh@houstontx.gov, by email; to Michael D. Fritz, Senior Assistant County Attorney, counsel for Defendants Harris County Hospital District d/b/a Harris Health System and Monique Jones, at Michael.Fritz@harrishealth.org, by email; and to E. Dale Burrus and Colin P. Goodman, Spencer Fane LLP, counsel for Defendant Valeria M. Contreras, M.D., at dburrus@spencerfane.com and cgoodman@spencerfane.com, by email.

Robert W. Van Kirk

**Robert W. Van Kirk**